**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP.<br><br>and<br><br>INTERNATIONAL FIDELITY INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 03-1953C<br>(Senior Judge Margolis) |

**SECOND AMENDED COMPLAINT**

COME NOW the Plaintiffs, Advanced Technology Systems Integrators Corp. ("ATSIC") and International Fidelity Insurance Company ("International"), by and through their undersigned counsel, by way of their Second Amended Complaint against the Defendant, the United States of America ("United States"), and state as follows:

**JURISDICTION AND PARTIES**

1. Jurisdiction is conferred on this Court by the Contract Disputes Act of 1978, 41, U.S.C. § 601, et seq., and 28 U.S.C. § 1491. Plaintiffs bring their appeal and claims in this action by virtue of being in privity of contract with the Defendant and based on the rights associated with the doctrine of equitable subrogation.

2. Plaintiff ATSIC is a corporation organized under the laws of the State of Florida specializing in the installation of security systems.

3. Plaintiff International is a surety bonding company organized under the laws of

the State of New Jersey with an office and principal place of business at One Newark Center, Twentieth Floor, Newark, New Jersey, 07102. Plaintiff International is in the business of, among other things, issuing Miller Act surety bonds for federal construction projects.

4. Defendant United States is the duly-constituted government acting by and through the United States Postal Service ("USPS").

**FACTUAL BACKGROUND**

5. The claims of ATSIC, as set forth with more specificity below, arise out of its performance under Contract No. 123125-00-B-3154 - Project H54096 (the "Contract"), also known as the Miami P&DC Security & Access Control (the "Project") issued by the USPS to ATSIC.

6. The claims of International, as set forth with more specificity below, arise out of its issuance of payment and performance bonds for ATSIC, including bonding for the Project naming ATSIC as principal and USPS as obligee, International's payment of claims under its bonds, and International's attorney-in-fact status relating to ATSIC.

7. On October 3, 2000, the USPS issued its Formal Notice to Proceed for the Project as of January 15, 2001. The Contract provided a performance time of 230 days; the Notice specified a contract duration of 230 days and a completion date of September 2, 2001.

8. The initial contract amount was $1,308,990.00.

9. During the period that ATSIC was performing work under the Contract, USPS required and/or directed changed, extra, or additional work, requiring modification to the initial Contract. ATSIC submitted it proposed change orders for processing of the USPS-directed

modifications to the Contract in which ATSIC requested both (i) an equitable adjustment of the compensation for the extra work required by USPS to be performed under the Contract and (ii) equitable time extensions to perform that work. USPS failed to properly process the proposed change orders and requests for the USPS-directed modifications. It was not until May 29, 2002, by the issuance of Modification No. 11, that USPS finally resolved issues raised in Modifications 3, 4, and 5.

10. On January 4, 2002, one hundred twenty four (124) days after the specified Contract completion date, the USPS gave ATSIC its first Show Cause letter, which warned ATSIC of possible termination of the Contract for failure to timely complete the project. The Contract contains a time is of the essence clause and a liquidated damages clause. When a due date has passed and the contract has not been terminated for default within a reasonable time, an inference is created that time is no longer of the essence. *DeVito v. U.S.*, 413 F.2d 1147 (Ct. Cl. 1969). ATSIC relied on this inference and continued performing under the Contract. The USPS did not terminate ATSIC at this time. By its failure to terminate ATSIC for default when USPS arguably had the right to do so, the USPS waived its right to enforce the time of performance clause and the liquidated damages clause contained in the Contract. ATSIC relied on this waiver.

11. On March 12, 2002, USPS, by and through its Contracting Officer, executed Contract Modification No. Eight (8), which indicated an increase in the contract price to $1,351,961.14, but did not grant an extension of time to complete the project. Instead, by executing Contract Modification No. Eight (8), the Contracting Officer explicitly acknowledged

that ATSIC's work on the Project was approximately six months beyond the required (but abandoned) completion date for the project. By executing Contract Modification No. Eight (8), USPS indicated its intention to waive the time of performance clause and liquidated damages clause in the Contract. ATSIC relied on this waiver.

12. On May 1, 2002, two hundred thirty three (233) days after the revised Contract completion date[1], USPS gave ATSIC its second Show Cause letter, which warned ATSIC of possible termination of the Contract for failure to timely complete the Project. However, USPS did not terminate ATSIC at this time. By its failure to terminate ATSIC for default when USPS arguably had the right to do so, USPS waived its right to enforce the time of performance clause and the liquidated damages clause in the Contract. ATSIC again relied on the USPS waiving its right to terminate ATSIC and continued performing under the Contract.

13. During the course of the Project, ATSIC issued and proposed approximately twelve (12) change orders or contract modifications to USPS, seeking equitable adjustments in the time of performance or the cost of the work. An ongoing dispute developed between ATSIC, on the one hand, and the USPS and its Project Engineer, on the other hand, regarding these issues. On June 20, 2002, ATSIC and USPS compromised and settled their dispute by execution of Contract Modification No. 11, which established a new contract completion date of July 15, 2002, thereby extending the original contract completion date by 316[2] calendar days. Contract Modification No. 11 further provided that "[i]f ATC has not completed the project by

---

[1] USPS states that the revised completion date was actually September 10, 2001.

[2] Modification No. 11 recites that the Contract is extended by 293 calendar days for a revised completion date of 6/30/02. This discrepancy is partially explained by the interlineation of the completion date to 7/15/02.

7/15/02, Liquidated Damages of $100/day will be reinstated beginning on 7/15/02 and continuing until building acceptance." A true copy of Contract Modification No. 11 is attached as **Exhibit 1**, and incorporated herein by this reference.

14. USPS had previously waived the original contract completion date. By entering into Contract Modification No. 11, the parties agreed, *inter alia*, to a new failure of completion remedy. By virtue of Contract Modification No. 11, USPS reinstated its right to liquidated damages beginning on July 15, 2002, as its exclusive remedy for failure of completion. USPS did nothing to reinstate the waived contract provision permitting the USPS to enforce the time of performance clause by terminating ATSIC for default. The choice of termination for default due to failure of timely completion was both passively waived by USPS inactivity and then affirmatively superseded by USPS's execution of Contract Modification No.11.

15. Prior to execution of Contract Modification No. 11, on various occasions during the course of ATSIC's work on the Project, delay in performance was caused by the USPS, by and through its authorized representatives, including, by way of example but not of limitation, the Project Architect and the Project Engineer. On January 18, 2002, six months prior to the Government's "stop work" order, ATSIC met with the Project Engineer, and then wrote the Project Engineer, with a copy to the Contract Officer, explaining critical path decisions that the Government had to make before ATSIC could complete the last portion of the Project. The Government's delay in making such decisions was the principal reason for months of delay. Indeed, the delays caused by the USPS were the principal reason for ATSIC's failure to complete the Project on time. At all times relevant herein, ATSIC attempted to work with the

representatives of the USPS to make sure the Contract was properly and fully completed. However, the plans prepared by the Project Architect or Project Engineer contained numerous defects and deficiencies. Moreover, the Project Engineer, who provided professional services during the construction phase, routinely failed to adequately perform his duties. Because the delays in completing the work under the Contract were caused, in whole or part, by the USPS, during the relevant time, any resulting delays were excused.

16. ATSIC's performance of the work on the Project was substantially delayed by:

a) defects and deficiencies in the plans and specifications provided by the USPS,

b) over-inspection and active interference in the Project by USPS's Project Engineer,

c) poor and untimely communication and contract administration by the Project Engineer and the Contracting Officer,

d) changes and constructive changes in the work of the Project,

e) the failure of USPS or its agent, the Project Engineer, to provide adequate and complete plans and specifications,

f) the failure of USPS or its agent, the Project Engineer, to respond or to timely respond to ATSIC's requests for information,

g) the failure of USPS or its agent, the Project Engineer, to respond or timely respond to ATSIC's submittals, including technical data and shop drawings,

h) the failure of USPS or its agent, the Project Engineer, to respond or timely

respond to ATSIC's request for change orders or contract modifications,

i) the failure of USPS or its agent, the Project Engineer, to respond to and process ATSIC's payment applications,

j) the failure of USPS to make payment or to timely make payment to ATSIC in violation of USPS Facilities Department Contract Requirement Section F.4a.3.[3]

All acts of the Contracting Offices in administering the Contract that suspended, delayed, or interrupted ATSIC's work under the Contract requires the Contracting Officer to extend the delivery or performance dates accordingly. F.D. §C2a.

17. The failures of the USPS to process and pay timely the proper claims of ATSIC for work performed pursuant to the Contract, as modified by direction of the USPS, constituted a violation of §605(c)(5) of the Contract Disputes Act of 1978, and further constituted (i) a default by USPS prior to the extension period under the terms of the Contract, F.D. §F4, (ii) a breach of the Contract by the USPS during the extension period and (iii) a breach of the Contract by the USPS for failing to adjust the performance date, F.D. §C2a(2). On February 11, 2002, the Contract Officer explicitly informed ATSIC that approval of Pay Recommendations 15 and 16 was not forthcoming, despite no objection to the completion of the work for which payment was requested. This type of delay or refusal occurred repeatedly. When payments were finally made, USPS failed to pay interest on the late payments, as required under F.D. §F4a3. Not only was the failure to pay a breach and default of the Contract, the USPS failure to pay ATSIC constituted a

[3] USPS Facilities Department Contract Requirements shall be identified hereinafter as F.D. §___.

significant substantive basis for the failure of completion of the work under the Contract within the extension period.

18. On July 15, 2002, which was 25 days after execution of Contract Modification No. 11, USPS gave ATSIC its third Show Cause letter, which warned ATSIC of possible termination of the Contract for failure to complete the project by July 15, 2002. USPS violated the terms of the Contract by each of the following:

18.1 By issuing the Show Cause letter without extending the completion date based on USPS's failure to pay the proper claims of ATSIC.

18.2 By failing to comply with the requirements of F.D. §H6a requiring USPS to provide ATSIC no less than ten (10) days to cure "after receipt of the notice from the Contracting Officer specifying the failure."

18.3 By failing to comply with the requirements of Part 49 of the Federal Acquisition Regulations, imported by Clause B-80 of the USPS Purchasing Manual, in issuing this Show Cause letter. As stated in Paragraphs 10, 11, and 17, *supra*, USPS had taken action that "might be construed as a waiver of the Contract delivery or performance date." FAR §49.402-3(c). In order to set a new date for the Contractor to complete performance, USPS was required to send a notice to the Contractor, which notice must have reserved "the Government's rights under the Default clause." *Id*. USPS failed to give ATSIC notice of a new completion date that reserved the USPS's rights under the Default clause. Therefore, USPS had no right to enforce the default clause and had no right to terminate ATSIC for failure to meet a time of performance deadline. Even the execution of Contract Modification No. 11 is unavailing to remedy USPS's notice

failure, because Contract Modification No. 11 reinstated or created a liquidated damages provision of the Contract, which had been previously waived, but it did not reinstate the right to terminate the Contractor for default for failure of timely completion. Because of its failure to follow the FAR §49.402-3(c) procedures after action that might have been construed as a waiver, the USPS was barred from terminating ATSIC for default.

19. Simultaneously with the issuance of its third Show Cause letter, on July 15, 2002, USPS issued a second letter directing ATSIC "to immediately cease all work at the job-site until further notice." Even if the USPS did have the right to terminate ATSIC for failure to complete the work by July 15, 2002, ATSIC could not be in default until 12:01 a.m. on July 16, 2005. The USPS's letter requiring ATSIC to cease in ATSIC's attempt to complete the work was issued prior to the expiration of the contracted July 15, 2005 completion deadline. ATSIC cannot be at fault for failing to complete the work by the deadline, when the USPS ordered ATSIC to stop work prior to the deadline. Suspensions of the work by the Contracting Officer requires an extension of the Contract. F.D.§C.2a. USPS's order for ATSIC to stop work prior to the deadline, (i) made it impossible for ATSIC to have the full, contracted time to complete the job before that deadline, (ii) violated the requirement of a 10-day cure period after notice of a specified failure, and (iii) constituted a clear and direct breach by USPS of the Contract Modification No. 11 deadline executed less than a month earlier, unless the termination is construed as a termination for convenience.

20. As required by FAR §§49.402-3(e)(1), and consistent both with the course of dealing between the parties and the Excusable Delays provision of the Contract, F.D. §C3, the

July 15, 2002, Show Cause letter offered ATSIC the opportunity to show facts indicating that ATSIC's delay in completing the project arose out of causes beyond ATSIC's control and without fault or negligence by ATSIC. On July 19, 2002, ATSIC provided a letter to USPS showing (i) that its work had been delayed because of nearly continuous rain during June and early July, 2002, and (ii) because of USPS's failure to timely process payment applications. The letter included, *inter alia*, National Weather Service records showing rain on 37 of the previous 48 days and delays due to the Government's failure to pay outstanding invoices. This uncontroverted information required the Contract Officer (i) to extend the delivery schedule accordingly, and (ii) to recognize that, in the event of termination, "the supplier will not be in default." F.D. §C3a.

21. On August 16, 2002, USPS issued its Termination for Default, effective July 31, 2002. From July 15, 2005 to July 31, 2005, it was impossible for ATSIC to complete the work, because ATSIC remained under the USPS order to "cease all work."

22. In issuing its Termination for Default, USPS again violated the Contract and the Federal Acquisition Regulations by failing to consider the USPS premature termination of ATSIC's work, and failing to properly consider critical factors in determining whether to terminate the Contract for default, as follows:

22.1. The Contracting Officer failed to properly consider the fact that ATSIC was entitled to an equitable extension of the time of performance because of excessive rain, which delayed its work. F.D. §C3a; FAR §49.402-3(f)(1). Significant and persistent rain, which effectively halted the installation and

testing of the electronic security components to be installed by ATSIC under the Contract, rendered timely completion impossible.

22.2. The Contracting Officer failed to properly consider the fact that ATSIC was delayed by the USPS's delays in making payment in violation of the payment provisions under the Contract. F.D. §C4a; FAR §49.402-3(f)(1). During the extension period, the USPS continued to delay processing of the modifications for additional work, making timely completion of the Project impossible.

22.3. The Contracting Officer failed to properly consider the cost and the period of time required to obtain completion of the Contract by other means as compared to completion of the work by ATSIC. FAR §49.402-3(f)(4).

23. By June 20, 2002, the USPS had paid approximately $1,078,719.20 under the Contract, excluding retainage as provided for by the Contract. Thus, by no later than June 20, 2002, more than 82 percent of the Contract value had been earned and paid to ATSIC under the Contract. Moreover, additional work in the amount of approximately $116, 392.81 had been completed by May 20, 2002, but not yet paid. Thus, the total of the work completed by that date was $1,195,112.01, which constituted over 91% of the original Contract amount.

24. After issuing the Termination for Default on August 16, 2002, USPS made a demand for damages relating to its costs of completion of the Contract in the amount of $900,939.30. Despite over 91% percent completion of the Contract at the time of the default termination, USPS claimed that it cost more than 65 percent of the initial Contract amount to complete the work.

25. At the time the Contracting Officer issued the final decision to terminate the Contract, Contract funds in the amount of $269,671.61 remained, which was more than enough to complete the remaining Contract work.

26. The decision of the Contracting Officer to terminate the Contractor for default was arbitrary, capricious, and an abuse of discretion. The excessive rain, noted above, constituted a good and sufficient basis for a further extension of the Contact completion date. Furthermore, the Contract was substantially completed, and the termination led to the USPS incurring, by its own calculation, approximately $900,000.00 in costs to complete 5 percent of the work. The decision to terminate the Contract for default was not in the best interest of the USPS, was not based on the merits, was not free from outside influence, and was without due consideration to other available alternatives which would have mitigated damages to the USPS, if any.

27. Under the Contract, the USPS was authorized to terminate the Contract for convenience at any time. Because the Contracting Officer improperly terminated the Contract for cause, the termination was actually for convenience. F.D. §H6g.

28. The original "final decision" of the Contracting Officer regarding termination, dated August 16, 2002, was received by ATSIC no earlier than August 20, 2002. A revised "final decision," dated September 26, 2003, was received by ATSIC's president shortly after September 26, 2003. Accordingly, this action was timely filed.

29. By letter dated July 17, 2003, the Contracting Officer outlined the reprocurement and completion costs incurred by USPS, following the wrongful termination of ATSIC. The

Contracting Officer demanded payment from ATSIC in the amount of $683,404.69. By letter dated September 26, 2003, when the Contracting Officer issued the revised "final decision" regarding the additional costs to complete the Project incurred by USPS following the termination of ATSIC, the Contracting Officer again demanded payment of $683,404.69 from ATSIC for the alleged excess reprocurement costs incurred by USPS for the Project. By letter dated September 9, 2005, the Government provided a "revised calculation of excess reprocurement costs" in which it presented a revised total of $624,449.80.

30. The unpaid sum on the original Contract was $269,671.71, which should have been a credit for ATSIC against the alleged reprocurement costs. However, the Contracting Officer reduced this credit to $217,534.61 by including in the demanded payment the sum of $52,137.10 that was not related to the Contract, but was based on an Agreement of Settlement Between the Parties ("Settlement Agreement") allegedly authorizing such reduction. However, the Settlement Agreement explicitly provided that the only method by which the Postal Service could obtain the $52,137.10 was by such sum being "withheld from [this Contract]." Because the USPS has not agreed to pay any additional sum to ATSIC from this Contract, there is no sum from which the $52,137.10 may be withheld.

31. All conditions precedent to this action have occurred, have been waived or have been satisfied.

32. ATSIC has retained E. Scott Golden & Associates, in conjunction with Stroop Construction Law Firm, P.A., to represent it in this matter and has agreed to pay a reasonable fee for such representation.

33. International has retained Henrichsen Siegel, P.L.L.C. to represent it in this matter

and has agreed to pay a reasonable fee for such representation.

**COUNT I**
**(Appeal of Improper Default Termination)**

34. Plaintiffs hereby restate and incorporate the allegations contained in Paragraphs 1 through 33, above, as if fully set forth herein.

35. ATSIC performed its work on the Contract in a competent and professional manner.

36. Delays in the project were caused by the USPS, it agents, and by the weather, and, therefore, the delays were excused.

37. USPS prevented ATSIC from completing the work by ordering ATSIC to stop work prior to the contractual project completion date.

38. USPS waived its right to enforce the termination for default provisions of the Contract, and ATSIC relied on this waiver.

39. Pursuant to Contract Modification No. 11, the parties modified the Contract to provide that USPS's exclusive remedy for delayed completion of the project was liquidated damages.

40. USPS failed to provide ATSIC with ten (10) days' written notice to cure a specified failure, as required by F.D. §6a(2).

41. USPS failed to reinstate any right to terminate for default in accordance with the FAR §49.402-3(c).

42. Based upon the foregoing, the termination for default of ATSIC under the Contract was improper and should be overruled.

43. ATSIC is entitled to attorneys fees pursuant to the Equal Access to Justice Act, 5 USCA §504 and 28 USCA §2412.

**WHEREFORE**, Plaintiffs respectfully request that this honorable Court grant judgment in favor of the Plaintiffs on their appeal of the termination for fault, order that the determination to terminate ATSIC for fault was improper, declare that USPS wrongfully terminated the Contract, declare USPS liable to ATSIC for the costs of unaccepted work at the time of termination, declare that neither ATSIC nor International is liable for excess costs of reprocurement or completion of the Contract, declare that neither ATSIC nor International is liable for liquidated damages, if any, award Plaintiffs attorneys fees and costs associated with this action as provided by law, and award such other and further relief as is just and proper

**COUNT II**
**(Affirmative Damages Based on Termination for Convenience)**

44. Plaintiffs hereby restate and incorporate the allegations contained in Paragraphs 1 through 33, above, as if fully set forth herein.

45. Because ATSIC was not in default under the terms of the Contract as modified, the USPS termination of ATSIC must be construed as a termination for convenience. F.D. §H6g. ATSIC made payment requests, all or a portion of which were in dispute or not acted upon by the Contracting Officer within a reasonable time, in each case the disputed sum being less than $100,000.00. Such disputed requests constituted claims, and USPS's failure to issue a decision violated Section 605(c)(5) of the Contract Disputes Act of 1978. ATSIC is authorized, and required, to file suit to protect its right to payment for work completed and unpaid under the Contract, as modified. *Accord* Part 31, Federal Acquisition Regulations.

46. ATSIC is entitled to the sum of approximate sum of $116,392.81 for work completed for which payment has not been made, plus retainage held by the USPS for work completed, for a total sum in amount to be determined by the Court.

47. ATSIC is entitled to interest on the foregoing amount at the statutory rate from fourteen days after the date such requests for payment were submitted.

48. ATSIC is entitled to attorneys fees pursuant to the Equal Access to Justice Act, 5 USCA §504 and 28 USCA §2412.

**WHEREFORE**, Plaintiff ADVANCED TECHNOLOGIES SYSTEMS INTEGRATORS CORP. respectfully requests that this honorable Court determine that the USPS termination of ATSIC was for the convenience of USPS, award judgment for ATSIC against the United States in an amount equal to the cost of the work completed by ATSIC and unpaid prior to the termination for convenience, plus costs, interest, attorneys fees, costs, and such other and further relief as is just and proper.

**COUNT III**
**(Breach of Covenant of Good Faith and Fair Dealing)**

49. Plaintiffs hereby restate and incorporate the allegations contained in Paragraphs 1 through 33, above, as if fully set forth herein.

50. USPS is required to perform its obligations under the Contract in a competent and proper manner.

51. By causing delay on the Project, failing to properly process modifications to the Contract sought or demanded by USPS, and misleading ATSIC, the USPS acted with conscious indifference to the rights, obligations, and interests of the Plaintiffs; with improper motive; and

in a manner of unfair dealing.

52. The actions of the USPS constitute a breach of the covenant of good faith and fair dealing with regard to the Contract and the bonds issued by International for the Contract.

53. As a direct and proximate result of the breach of the covenant of good faith and fair dealing, the Plaintiffs suffered damage in that ATSIC's performance of the Contract was hindered and ultimately made impossible by the United State's lack of cooperation and indifference, ATSIC's performance of the Contract was delayed and ultimately made impossible due to the actions or inactions of the USPS, and, ultimately, the Contract was wrongfully terminated by the USPS. The termination for default of ATSIC under the Contract was improper and should be overruled.

54. ATSIC is entitled to attorneys fees pursuant to the Equal Access to Justice Act, 5 USCA §504 and 28 USCA §2412.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant judgment in favor of the Plaintiffs on their appeal of the termination for fault, order that the determination to terminate ATSIC for fault was improper, declare that the USPS wrongfully terminated the Contract, declare the USPS liable to ATSIC for the costs of unaccepted work at the time of termination, declare that neither ATSIC nor International is liable for excess costs of reprocurement or completion of the Contract, declare that neither ATSIC nor International is liable for liquidated damages, if any, award Plaintiffs attorneys fees and costs associated with this action as provided by law, and award such other and further relief as is just and proper

**COUNT IV**
**(Appeal of Reprocurement Costs Determination)**

55. Plaintiffs hereby restate and incorporate the allegations contained in Paragraphs 1 through 33, above, as if fully set forth herein.

56. By letter dated August 16, 2002, as amended by letter dated September 26, 2003, the Contracting Officer issued his final decision terminating ATSIC from the Project.

57. By letter dated August 16, 2002, the Contracting Office informed Plaintiffs of the amount of reprocurement costs claimed by USPS for completion of the Project. The Contracting Officer demanded that ATSIC pay $683,404,69 in alleged excess reprocurement costs.

58. On September 26, 2003, the Contracting Officer issued a revised final decision regarding the alleged excess reprocurement costs for completion of the Project. By letter dated September 9, 2005, the Government's counsel provided Plaintiffs with a revised calculation of Excess Reprocurement Costs in which the alleged reprocurement costs were reduced to $624,449.80, and, after credits, the alleged amount owed to the Government was reduced to $406,915.19, plus interest.

59. The alleged reprocurement costs are exaggerated, inflated, or unreasonable. In particular, the sums paid to Stuhl Engineering Consultants, Inc. ("Stuhl"), for the post-termination matters are facially unreasonable, excessive, and unconscionable. Stuhl had performed a complete pre-termination assessment when the Project was deemed 95% complete. In light of this pre-termination assessment and the small proportion of the Project remaining, Stuhl's post-termination charges of more than $130,000.00 are excessive and unconscionable. Furthermore, they do not reflect the Government's responsibility to mitigate damages and to

operate in good faith and deal fairly with the Plaintiffs.

60. The final decision on the excess reprocurement costs is improper because of each and all of USPS's prior breach of the Contract, responsibility for creating a situation making completion of the Contract impossible, wrongful termination of ATSIC, failure to reprocure the same or similar supplies and services as originally contracted, and failure to mitigate its damages.

61. The parties executed as of June 19, 2002, an Agreement of Settlement Between the Parties ("Settlement Agreement") settling a dispute regarding another contract between the parties designated Contract #123125-00-3153. Under the terms of the Settlement Agreement, ATSIC (denominated in the Settlement Agreement as "ATC") was to pay Postal Service the sum of $52,137.10 solely on the condition that it "be withheld form Contract No.123125-00-B-3154." Because, under the excess reprocurement costs asserted by the USPS, no additional funds will be paid to ATSIC under the Contract No. 123125-00-B-3154 (which is the Contract at issue in this case), no pool of funds exists that complies with the sole place from which the $52,137.10 may be paid. The Settlement Agreement explicitly provides and binds the USPS that it is "intended to constitute full and final . . . disposition of all matters arising under the Contract No. 123125-00-B-3153, [and] shall constitute a full release and complete accord and satisfaction as to any and all claims, demands or causes of action, actual or constructive, legal, equitable, or contractual, either party has against the other which arise under [Contract No. 123125-00-B-3153]." Accordingly, USPS is not entitled to a reduction in the Contract amount credited to ATSIC, nor any other credit or setoff, for the $52,137.10 from the Contract No. 123125-00-B-3153.

62. The "supplier is not liable for any excess costs if the failure to perform the contract arise from causes beyond the control without the fault or negligence of the supplier." F.D. §H6c. The inclement weather, USPS's failure to make timely payments, and USPS's premature notice requiring ATSIC to cease the work, each of which was a sufficient cause of ATSIC's failure to have completed the Project by the date ATSIC was terminated, were all beyond the control and without the fault or negligence of ATSIC.

63. Accordingly, determination of excess reprocurement costs in any amount is improper and should be overruled.

64. If the determination by the USPS that the termination for cause is upheld, the determination of the amount of excess reprocurement costs is improper and should be overruled.

65. ATSIC is entitled to attorneys fees pursuant to the Equal Access to Justice Act, 5 USCA §504 and 28 USCA §2412.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant judgment in favor of the Plaintiffs on their appeal of the termination for fault, order that the determination to terminate ATSIC for fault was improper, declare that the USPS wrongfully terminated the Contract, declare the USPS liable to ATSIC for the costs of unaccepted work at the time of termination, declare that neither ATSIC nor International is liable for excess costs of reprocurement or completion of the Contract, declare that neither ATSIC nor International is liable for liquidated damages, if any, award Plaintiffs attorneys fees and costs associated with this action as provided by law, and award such other and further relief as is just and proper.

Respectfully submitted on this 18th day of October, 2005.

E. SCOTT GOLDEN & ASSOCIATES
Attorneys for Plaintiff Advanced
Technology Systems Integrators Corp.
644 S.E. Fourth Avenue
Fort Lauderdale, FL 33301
Tel.: (954) 764-6766 ext. 2
Fax: (954) 764-6789
Email: esglaw@bellsouth.net

s/E. Scott Golden
E. Scott Golden

HENRICHSEN SIEGEL, P.L.L.C.
Attorneys for Plaintiff International Fidelity Insurance Company
1648 Osceola St.
Jacksonville, FL 32204
Tel.: (904) 381-8183
Fax: (904) 381-8191
Email: Halbee@hslawyers.com

s/Helen H. Albee
Helen H. Albee

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic transmission to the following person as of this 18th day of October, 2005.

Michael J. Dierberg, Esquire
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
1100 L. Street NW, Room 12116
Washington, D.C. 20530

s/E. Scott Golden
E. Scott Golden