UNITED STATES POSTAL SERVICE

Facilities Department

expected to occur in the ordinary manufacture of materials must be repaired.

e. Any Postal Service Property furnished for this project must be used and maintained by the Contractor in a manner consistent with good operating practices.

**G.30 Use Of Building Facilities (Clause FB-259) (June 1994)**

a. Where available, utility services of the building will be used in this work. When toilet facilities are available on the site, they will be used by Contractor employees, subject to the regulations of the Postal Service. No cleaning of tools, including painting equipment/brushes, is permitted in the toilet facilities.

b. Any temporary use of an existing elevator shall be by prior arrangement with the building manager of the building and subject to the building manager's control. The Contractor shall provide and maintain suitable and adequate protective coverings for the elevator machinery, the hatchway entrances, and the interior of the elevator during the period of temporary use. Loads in excess of the rated capacity of the elevator shall not be permitted. The Postal Service will bear the cost of the electric current for the operation of the elevator. On completion of the work, the Contractor shall remove the protective coverings together with any resultant dirt and debris, and leave the equipment in a condition equal to the condition it was in at the time the Contractor commenced using the elevator.

**G.31 Builder's Risk Insurance (Clause FB-263) (March 1989)**

The Postal Service does not carry Builder's Risk Insurance coverage. The Contractor, at its own option and expense, may elect to provide this insurance for its work.

**G.32 Subcontracts (Clause FB-312) (December 1995)**

a. Nothing in this contract may be construed to create any contractual relationship between any subcontractor and the Postal Service. The divisions or sections of the specifications are not intended to control the Contractor in dividing the work among subcontractors, or to limit the work performed by any trade.

b. The Contractor is responsible to the Postal Service for acts and omissions of its own employees and of subcontractors and their employees. The Contractor is also responsible for the coordination of the work of the trades, subcontractors, and suppliers.

c. The Postal Service will not undertake to settle any differences among the Contractor, subcontractors, or suppliers.

d. The Contractor must take quotations from at least three (3) firms for all subcontracts or purchases of equipment and materials where the cost exceeds $50,000. All quotations may be reviewed by the Contracting Officer prior to award. Copies of all subcontracts and purchase orders, including all modifications thereto, must be furnished to the Contracting Officer.

**G.33 Access To Site (Clause OB-44) (June 1988)**

The Contractor's access to the site and use of existing roads will be as directed by the Contracting Officer or a designee.

**G.34 Identification Of Contractor's Vehicles (Clause OB-45) (June 1988)**

After contract award, the Contractor will coordinate with the security officer for the issuance of vehicle passes for construction and private vehicles.

**G.35 Control Of Erosion, Sedimentation, And Pollution (Clause OB-49) (June 1988)**

a. Operations must be scheduled and conducted to minimize erosion of soils and to prevent silting and muddying of streams, rivers, irrigation systems, and impoundments (lakes, reservoirs, and the like).

b. Pollutants such as fuels, lubricants, bitumens, raw sewage, and other harmful materials must not be discharged onto the ground, into or near rivers, streams, and impoundments, and natural or man-made channels. Wash water or waste from concrete or aggregate operations must not be allowed to enter live streams before treatment by filtration, settling, or other means sufficient to reduce the sediment content to not more than that of the stream into which it is discharged.

c. Mechanized equipment must not be operated in live streams without written approval by the Contracting Officer.

## Section H-General Clauses

**H.1 Definitions (Clause B-1) (January 1997)**

As used in this contract, the following terms have the following meanings:

a. Contracting officer. The person executing this contract on behalf of the Postal Service, and any other officer or employee who is a properly designated contracting officer; the term includes, except as otherwise provided in the contract, the authorized representative of a contracting officer acting within the limits of the authority conferred upon that person.

b. Subcontracts. Except as otherwise provided in the contract, the term includes purchase orders under this contract.

**H.2 Assignment Of Claims (Clause B-8) (January 1997)**

a. If this contract provides for payments aggregating $10,000 or more, claims for monies due or to become due from the Postal Service under it may be assigned to a bank, trust company, or other financing institution, including any federal lending agency, and may thereafter be further assigned and reassigned to any such institution. Any assignment or reassignment must cover all amounts payable and must not be made to more than one party, except that assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in financing this contract. No assignment or reassignment will be recognized as valid and binding upon the Postal Service unless a written notice of the assignment or reassignment, together with a true copy of the instrument of assignment, is filed with:

(1) The contracting officer;

(2) The surety or sureties upon any bond; and

(3) The office, if any, designated to make payment, and the contracting officer has acknowledged the assignment in writing.

UNITED STATES POSTAL SERVICE

Facilities Department

b. Assignment of this contract or any interest in this contract other than in accordance with the provisions of this clause will be grounds for termination of the contract for default at the option of the Postal Service.

H.3 Claims And Disputes (Clause B-9) (January 1997)

a. This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601–613) ("the Act").

b. Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

c. "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the supplier seeking the payment of money exceeding $100,000 is not a claim under the Act until certified as required by subparagraph d.2 below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount is not acted upon in a reasonable time.

d.

(1) A claim by the supplier must be made in writing and submitted to the contracting officer for a written decision. A claim by the Postal Service against the supplier is subject to a written decision by the contracting officer.

(2) For supplier claims exceeding $100,000, the supplier must submit with the claim the following certification:

"I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the supplier believes the Postal Service is liable, and that I am duly authorized to certify the claim on behalf of the supplier."

(3) The certification may be executed by any person duly authorized to bind the supplier with respect to the claim.

e. For supplier claims of $100.000 or less, the contracting officer must, if requested in writing by the supplier, render a decision within 60 days of the request. For supplier–certified claims over $100,000, the contracting officer must, within 60 days, decide the claim or notify the supplier of the date by which the decision will be made.

f. The contracting officer's decision is final unless the supplier appeals or files a suit as provided in the Act.

g. When a claim is submitted by or against a supplier, the parties by mutual consent may agree to use an alternative dispute resolution (ADR) process to assist in resolving the claim. A certification as described in d(2) of this clause must be provided for any claim, regardless of dollar amount, before ADR is used.

h. The Postal Service will pay interest in the amount found due and unpaid from:

(1) The date the contracting officer receives the claim (properly certified, if required); or

(2) The date payment otherwise would be due, if that date is later, until the date of payment.

i. Simple interest on claims will be paid at a rate determined in accordance with the Interest clause.

j. The supplier must proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the contracting officer.

**H.4 Pricing Of Adjustments (Clause B-10) (January 1997)**

When costs are a factor in determining any contract price adjustment under the Changes clause or any other provision of this contract, chapter 5 of the USPS Purchasing Manual in effect on the date of this contract will serve as a guide in negotiating the adjustment.

**H.5 Termination For Convenience (Clause B-11) (January 1997)**

a. Performance under this contract may be terminated by the Postal Service in whole or in part whenever the contracting officer determines that termination is in the interest of the Postal Service. A termination may be effected by delivery to the supplier of a notice of termination specifying the extent of work terminated, and the effective date of the termination.

b. Upon receipt of a notice of termination, unless otherwise directed by the contracting officer, the supplier must take the following actions:

(1) Stop work to the extent specified in the notice.

(2) Place no further orders or subcontracts for materials, services, or facilities except as may be necessary for completion of the unterminated work.

(3) Terminate all orders and subcontracts to the extent that they relate to the work terminated.

(4) Assign to the Postal Service, as directed by the contracting officer, all right, title, and interest of the supplier under the orders and subcontracts terminated. The Postal Service has the right, in its discretion, to settle or pay claims arising out of these terminations.

(5) Settle all outstanding liabilities and claims arising out of the termination of orders and subcontracts, with the approval or ratification of the contracting officer. The contracting officer's decision is final for the purposes of this clause.

(6) Transfer title to the Postal Service and deliver as directed by the contracting officer:

(a) Work in process, completed work, and other material produced as a part of or acquired for the work terminated; and

(b) The completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would have been furnished to the Postal Service.

(7) Use its best efforts to sell as directed by the contracting officer any property of the types referred to in subparagraph b.6 above, provided that the supplier may acquire property under the

UNITED STATES POSTAL SERVICE

Facilities Department

conditions prescribed and at prices approved by the contracting officer, and the proceeds of any such transfer will be applied in reduction of any payments to be made by the Postal Service to the supplier, or be credited to the price or cost of the work covered by this contract, or be paid in any manner directed by the contracting officer.

(8) Complete performance of the work not terminated.

(9) Take any action that may be necessary, or that the contracting officer may direct, for protecting and preserving any property related to this contract that is in the possession of the supplier and in which the Postal Service has or may acquire an interest.

c. At any time, the supplier may submit to the contracting officer a list, certified as to quantity and quality, of termination inventory not previously disposed of and may request the Postal Service to remove inventory items or enter into a storage agreement covering them. Not later than 15 days after receiving this request, the Postal Service will accept title to the items and remove them or enter into a storage agreement. The list will be subject to verification by the contracting officer upon removal of the items or, if the items are stored, within 45 days after submission of the list.

d. After termination, the supplier must submit to the contracting officer a termination claim in the form and with the certification prescribed by the contracting officer. The claim must be submitted promptly, but in no event more than one year after the effective date of termination, unless an extension in writing is granted by the contracting officer. However, if the contracting officer determines that the facts justify such action, any termination claim may be received and acted upon at any time after the one–year period. Upon failure of the supplier to submit a termination claim within the time allowed, the contracting officer may determine, on the basis of the information available, the amount, if any, due the supplier by reason of the termination and will pay that amount.

e. If the supplier and the contracting officer fail to agree on the amount to be paid to the supplier by reason of the termination, the contracting officer will determine the amount, if any, due the supplier and pay the supplier the contract price for completed and accepted supplies or services not previously paid for (adjusted for any saving of freight and other charges) and, with respect to all other contract work performed before the effective date of termination, the total of:

(1) The cost of such work;

(2) The cost of settling and paying claims arising out of the termination of work under subcontracts; and

(3) A profit on e.1 above, determined by the contracting officer to be fair and reasonable; but if it appears that the supplier would have sustained a loss on the entire contract had it been completed, no profit will be included, and an appropriate adjustment will be made reducing the amount of the settlement to reflect the indicated rate of loss.

f. The total sum to be paid to the supplier may not exceed the total contract price as reduced by the payments made and as further reduced by the contract price of work not terminated. Except for normal spoilage, and except to the extent that the Postal Service expressly assumed the risk of loss, there will be excluded from the amounts payable to the supplier under paragraph e above, the fair value, as determined by the contracting officer, of property destroyed, lost, stolen, or damaged so as to become undeliverable to the Postal Service, or to a buyer.

g. Any determination of costs will be governed by the cost principles set forth in chapter 5 of the USPS Purchasing Manual in effect on the effective date of termination.

h. The supplier has the right of review under the Claims and Disputes clause of any determination made by the contracting officer under paragraph d or e above, except that, if the supplier has failed to submit its termination claim within the time provided in paragraph d above and has failed to request an extension of time, there may be no right of review.

i. In arriving at the amount due the supplier, there must be deducted:

(1) All unliquidated advance or other payments to the supplier applicable to the terminated portion of this contract;

(2) Any claim that the Postal Service may have against the supplier under this contract; and

(3) The agreed price for or the proceeds of sale of materials, supplies, or other things kept by the supplier or sold and not recovered by or credited to the Postal Service.

j. If the termination is partial, the supplier must file with the contracting officer a request in writing for an equitable adjustment of the price specified in the contract relating to the continued portion of the contract.

k. The Postal Service may, under the terms and conditions it prescribes, make partial payments and payments on account in connection with the terminated portion of this contract whenever the aggregate of these payments is within the amount to which the supplier is entitled.

l. Unless otherwise provided in this contract, or by statute, the supplier, for a period of three years after final settlement, must preserve and make available to the Postal Service at all reasonable times at the supplier's office, all books, records, documents, and other evidence bearing on the costs and expenses of the supplier under this contract and relating to the work terminated. If the contracting officer approves, photographs, microphotographs, or other authentic reproductions may be maintained instead of the originals.

**H.6 Termination For Default (Clause B-13) (January 1997)**

a.

(1) The Postal Service may, subject to paragraphs c and d below, by written notice of default to the supplier, terminate this contract in whole or in part if the supplier fails to:

(a) Complete the requirements of this contract within the time specified in the contract or any extension;

(b) Make progress, so as to endanger performance of this contract (but see paragraph d below); or

(c) Perform any of the other provisions of this contract (but see subparagraph a.2 following).

(2) The Postal Service's right to terminate this contract under a.1(b) and (c) above may be exercised if the supplier does not cure the failure within ten days (or more if authorized in writing by the contracting officer) after receipt of the notice from the contracting officer specifying the failure.



USPS Production of Documents 00213

27

UNITED STATES POSTAL SERVICE

Facilities Department

b. If the Postal Service terminates this contract in whole or in part, it may acquire similar supplies or services or complete the work, and the supplier will be liable to the Postal Service for any excess costs. However, the supplier must continue the work not terminated.

c. Except for defaults of subcontractors at any tier, the supplier is not liable for any excess costs if the failure to perform the contract arises from causes beyond the control and without the fault or negligence of the supplier.

d. If the failure to perform is caused by the default of a subcontractor at any tier, and if the cause of the default is beyond the control of both the supplier and subcontractor, and without the fault or negligence of either, the supplier is not liable for any excess costs for failure to perform, unless the subcontractor supplies or services were obtainable from other sources in sufficient time for the supplier to meet the required delivery schedule.

e. If this contract is terminated for default, the Postal Service may require the supplier to transfer title and deliver to the Postal Service, as directed by the contracting officer, any completed supplies, partially completed supplies, and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights that the supplier has specifically produced or acquired for the terminated portion of this contract. Upon direction of the contracting officer, the supplier must also protect and preserve property in its possession in which the Postal Service has an interest.

f. The Postal Service will pay the contract price for completed items delivered and accepted. The supplier and contracting officer may agree on the amount of payment for items delivered and accepted under paragraph e above for the protection and preservation of the property. Failure to agree will be a dispute under the Claims and Disputes clause. The Postal Service may withhold from these amounts any sum the contracting officer determines to be necessary to protect the Postal Service against loss because of outstanding claims.

g. If, after termination, it is determined that the supplier was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for convenience.

h. The rights and remedies of the Postal Service under this clause are in addition to any other rights and remedies provided by law or under this contract.

### H.7 Examination Of Records (Clause B-14) (January 1997)

a. The Postal Service and its authorized representatives will, until three years after final payment under this contract, or for any shorter period specified for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the supplier involving transactions related to this contract.

b. The supplier agrees to include in all subcontracts under this contract a provision to the effect that the Postal Service and its authorized representatives will, until three years after final payment under the subcontract, or for any shorter specified period for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the subcontractor involving transactions related to the subcontract. The term subcontract as used in this clause excludes:

(1) Purchase orders; and

(2) Subcontracts for public utility services at rates established for uniform applicability to the general public.

### H.8 Change-Order Accounting (Clause B-21) (January 1997)

The Contracting Officer may require change-order accounting whenever the estimated cost of a change or series of related changes exceeds $100,000. The Contractor, for each change or series of related changes, must maintain separate accounts, by job order or other suitable accounting procedure, of all incurred segregable, direct costs (less allocable credits) of work, both changed and not changed, allocable to the change. The Contractor will maintain such accounts until the parties agree to an equitable adjustment for the changes ordered by the Contracting Officer or the matter is finally disposed of in accordance with the Claims and Disputes clause.

### H.9 Advertising Of Contract Awards (Clause B-25) (January 1997)

Except with the contracting officer's prior approval, the supplier agrees not to refer in its commercial advertising to the fact that it was awarded a Postal Service contract or to imply in any manner that the Postal Service endorses its products.

### H.10 Order Of Precedence (Clause B-29) (January 1997)

Any inconsistency in the provisions of a solicitation, a contract awarded under solicitation, or a contract awarded without the issuance of a written solicitation will be resolved by giving precedence in the following order:

a. The Schedule.

b. The solicitation provisions and instructions.

c. Special clauses and general clauses.

d. Provisions contained in attachments or incorporated by reference.

### H.11 Gratuities Or Gifts (Clause 1-5) (January 1997)

a. The Postal Service may terminate this contract for default if, after notice and a hearing, the Postal Service Board of Contract Appeals determines that the supplier or the supplier's agent or other representative:

(1) Offered or gave a gratuity or gift (as defined in 5 CFR 2635) to an officer or employee of the Postal Service; and

(2) Intended by the gratuity or gift to obtain a contract or favorable treatment under a contract.

b. The rights and remedies of the Postal Service provided in this clause are in addition to any other rights and remedies provided by law or under this contract.

### H.12 Contingent Fees (Clause 1-6) (January 1997)

a. The supplier warrants that no person or selling agency has been employed or retained to solicit or obtain this contract for a commission, percentage, brokerage, or contingent fee, except bona fide employees

ATLANTA FACILITIES SERVICE OFFICE

**UNITED STATES POSTAL SERVICE**

October 3, 2000

Advanced Technology Systems Integrators Corp.
9100 S. Dadeland Blvd. Ste. 907
Miami, FL 33156-7815

RE: Miami, FL - GMF
Security and Access Control System
Contract # 123125-00-B-3154

This is your **FORMAL NOTICE TO PROCEED** with the work covered under referenced contract as of January 15, 2001.

In accordance with the terms and conditions contained in your contract, the work will be completed within 230 **calendar days** after receipt, with the completion date **established as September 2, 2001**.

Sincerely,

W. Jerry Goddard
Contracting Officer

**Receipt of Notice to Proceed is acknowledged:**

**Advanced Technology Systems Integrators Corp.**

10/16/00
**Date**

cc: **Manager ASO**
**Postmaster**
**A/E, Jose E. Blanco Architect, 8490 SW 116 Street, Miami, FL 33156-4345**
**File**

4000 DEKALB TECHNOLOGY PARKWAY BLDG 300 - SUITE 300
ATLANTA GA 30340-2799
(770) 454-0629
FAX: (770) 454-0608

FACILITIES SERVICE OFFICE
BLDG 300 - SUITE 300
4000 DEKALB TECHNOLOGY PARKWAY
ATLANTA GA 30340-2799

UNITED STATES POSTAL SERVICE

January 4, 2002

Certified Mail 7000 1530 0003 1123 0181
Return Receipt Requested

Mr. Vince Vento
Advanced Technology Systems Integrators
9700 S. Dadeland Blvd. Ste. 907
Miami, FL 33156-7815

RE: Miami, FL -GMF – Security and Access Control System
Contract #: 123125-00-B-3154

Dear Mr. Vento:

The Notice to Proceed on the above referenced project was issued on January 15, 2001, with a 230-day construction term and a contract completion date of September 2, 2001.

Since you have failed to perform on contract 123125-00-B-3154 with respect to timeliness of submittals and failing to meet the contract completion date required by the terms thereof, the US Postal Service is considering terminating said contract pursuant to Clause B-13 (TERMINATION FOR DEFAULT). Pending a decision in this matter, it will be necessary to determine whether your failure to perform arose out of causes beyond your control and without fault or negligence on your part. Accordingly, you are hereby afforded the opportunity to present, in writing, any facts bearing on the question to Ronald J. Grzymala, 4000 DeKalb Technology Parkway, Bldg. 300, Ste. 300, Atlanta, GA 30340-2799, within ten (10) days after receipt of this notice. Your failure to present any excuses within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of the contractor and the Postal Service under Clause B-13 (TERMINATION FOR DEFAULT) and the liabilities that may be invoked in the event a decision is made to terminate for default of the contractor.

Any assistance rendered to you under this contract or acceptance by the Postal Service of delinquent goods or services hereunder, will be solely for the purpose of mitigating damages and is not to be construed as an intention on the part of the Postal Service to condone any delinquency, or as a waiver of any rights the Postal Service may have under subject contract.

At this time the Project is in liquidated damages of $100/day.

USPS Production of Documents
02633

Ronald Grzymala
Contacting Officer

CC: International Fidelity Insurance Company
1211 N. Westshore Blvd #607
Tampa, FL 33607-4622
Attn: Frank Whelan, Bond #: SEIFSU0270990

U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

Miami Fl GMF-Security Access Control System Cont #123125-00 B-3154

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To: Mr Vince Vento, Advanced Tech
Street, Apt. No.; or PO Box No.: Systems Integrators 9700 S Dadela Blvd. Ste 907
City, State, ZIP+4: Miami Fl 33156-7815

PS Form 3800, May 2000 See Reverse for Instructions

7000 1530 0003 1123 0181

EXHIBIT 3

30

# U.S. Postal Service: Contract Modification

1. **Modification No.:** Eight **To Contract No.:** 123125-00-B-3154

2. **Project Name & Location:** Miami - P&DC

3. **Date Issued:** 2-12-02

4. **Contractor:** Advanced Technology Systems Intergrators Corp 3500 n Miami Ave Miami, Fl. 33127-3112

**Attn:** Jose Zamora, Project Manager

5. **Issued By:** Facilities Service Office 4000 DeKalb Tech. Parkway Building 300 Suite 300 Atlanta, Ga. 30340 - 2799

**For More Info Call:**

6. The above numbered contract is modifies as set forth in Block 7, by supplemental agreement entered into pursuant to authority of PM 6.5.1. The contractor is required to sign and return three ( 3 ) copies of this modification to the Issue Office ( See Block 5 )

7. **Description of Modification:** Repair of fence near Gate #6

| | | |
|---|---|---|
| **Basic Contract Amount:** | $ | 1,308,990.00 |
| **Prev. Mods** 1,2,6 & 7 | $ | 39,529.35 |
| **This Mod #** Eight (8) | $ | 3,441.79 |
| **Total contract to Date:** | $ | 1,351,961.14 |

**With extension of** 0 **Days for revision completion date of** 9/10/01

Compensation provided by this modification for time extension to the contract constitutes full and complete satisfaction for all direct cost, indirect costs, and interest which has been or will be incurred during the period covered by this modification, except as provided herein, all terms and conditions of the documents referenced in Block 1, as heretofore changed, remain unchanged and in full force and effect.

| | |
|---|---|
| **8. Accounting and Fiscal Date:** | ( )unchanged ( )changed see above |
| **9. Signatures:** | |
| **Contractor** | **US Postal Service** |
| [signature] | [signature] 3-12-02 |
| **Signature** **Date** | **Signature** **Date** |

USPS Production of Documents
00105

EXHIBIT 4

(31)

# Justification Form " B " for PS Form 7330
# General Contractor's Summary Sheet

Contract: Miami - P&DC 123125-00-B-3154 Modification No.: Eight

Job Title: Security Contractor

Proposed Change: Repair of fence near Gate #6

Time Extension 0 (Zero) Days ( Must impact critical path )

Summary of Subcontractor Cost Detail ( From Form " A " ):

| A. Company | B. Category of Work | C. Total Fica/Futa | D. Total Price less Fica/ Futa |
|---|---|---|---|
| ATC Systems | Change #8 | $66.34 | $2,812.87 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | |
|---|---|---|
| 1. Sub's Totals | C. $66.34 | D. $2,812.87 |
| 2. Contractor's Commission on Column D Total ( Maximum 5% Overhead / 5 % Profit ) | | $ 562.58 |
| 3. Total Fica / Futa From Column C ( Do not include Overhead / Profit on Sub's Fica/Futa | | $ $66.34 |
| 4. Contractor's work on this Mod ( From Form " A " ) | | $ 0.00 |
| Contractor's Total Increase / Decrease ( Items 1. D+2+3+4 ) | | $ 3,441.79 |

# Change Order

ATC Systems Integrators
3500 N. Miami Ave.
Miami, Fl. 33127
Office (305)670-0282 Fax (305)670-0292

| | |
|---|---|
| C0 # | Eight (8) |
| Date: | 2/19/2002 |
| # of Pages | 1 of 1 |
| Project: | USPS - P&DC |

1: Repair of fence near Gate No. 6.
2: Addittion of parking space Car Stops for Six parking spaces

5 Days to Complete Work

| Description | Materials | | | | Labor | | | | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Description | Cost Per Unit | # Of Units | Total Price | Trade | Cost Per Hour | # Of Hours | Total Price | |
| Labor & Materials | Removal of existing Fence | | | | Laborer | $ 8.70 | 8 | $69.60 | $69.60 |
| | Boring for new Poles | $62.50 | 8 | $500.00 | Contractor | $ 8.70 | 4 | $34.80 | $534.80 |
| | New Poles | $75.00 | 8 | $600.00 | Laborer | $ 8.70 | 4 | $34.80 | $634.80 |
| | New Fencing | $6.58 | 60 | $394.80 | Installer | $ 13.81 | 8 | $110.48 | $505.28 |
| | Wheel Stop | $65.00 | 6 | $390.00 | Installer | $ 13.81 | 4 | $55.24 | $445.24 |
| | | | | | Supervisor | $ 35.50 | 16 | $568.00 | $568.00 |
| TOTALS | | | | $1,884.80 | | | 44 | $872.92 | $2,757.72 |

| Accrual Change Order Amounts | | |
|---|---|---|
| A. | Direct Labor | $872.92 |
| B. | Insurance | $55.15 |
| C. | Materials & Equip. | $1,884.80 |
| D. | Credits / Debits | $0.00 |
| E. | Overhead 10% | $281.29 |
| F. | Profit 10% | $281.29 |
| G. | Total - FICA | $2,812.87 |
| H. | Employment Tax | $66.34 |
| | | |
| | Total | $3,441.79 |

---

**From:** "Joseph F. Stuhl, III" <joseph@stuhlengineering.com>
**To:** <josepherickson1@netzero.net>
**Sent:** Saturday, February 21, 2004 1:16 AM
**Subject:** Re: Panic Hardware at Vault and Comments about your comments

Trying to give you an opportunity to get some extra money for the wall patching. I think that there is some extra money left in the contract and Jerry mentioned trying to help those less fortunate. You came to mind in addition to Jerry's kids. If the patching becomes a pain in the mambo let me know and it will disappear. Thanks for making this easy on me, we both know that you had a chance to take advantage of the dumb engineer.

josepherickson1@netzero.net wrote:

>Joseph,
>It occurs to me the drywall repair at the elevator probably isn't the result of anything done by ATC, the demolition is too precise. Nevertheless I'll effect the necessary repairs if you feel we should.
> Patching around PTZ-045 is news to me. As are the "some other holes" along the same wall. Nevertheless I'll ...
> Room 501, you probably did tell me about and I missed it. No problem.
> The handicapped gate bracket... yeah I needed to go back and screw that off.
> Item 10, stucco repairs behind maintenance, conveniently not included in the Proposal, because I have no easy access to a lift. Hoped that would die on the vine, nevertheless I'll.....complete these mostly additional items at no extra charge praying that this will be the last of the tasks required of me as part of the original Contract with the exception of a couple of door closers.
>
>As for additional work at the vault.....
>
>Instead of a handicap push bar, maybe a Detex device (push pad type would be cheaper and more preferable. As far as installing a handicap bar, Johnny knows how, having done the ones at the AMC, that way only one Contractor is requesting extra funds.
>
>How is a Post Office like a Payless Shoe Store? Call me for the answer.
>
>Thanks for surrogating. I owe you one.
>
>Mambo
>
>
>
>

--
Joseph F. Stuhl, III
President
Stuhl Engineering Consultants, Inc. (SEC)
1860 Anzle Avenue
Winter Park, Florida 32789

USPS Production of Documents
01505

EXHIBIT 5



34

**From:** <josepherickson1@netzero.net>
**To:** <joseph@stuhlengineering.com>
**Sent:** Sunday, February 29, 2004 8:22 PM
**Subject:** Re: Panic Hardware at Vault and Comments about your comments

Truly Sir,

You are a gentleman and a scholar. It is my privelege to know you and I commend you on your steady demeanor in the midst of chaos.

I would have thought Tri State would have used up any leftovers.

I remain willing and able to do whatever I can to facilitate a successful ending and a withdrawl with dignity for myself, yourself, and Mr. Goddard.

I'll be down there this first week of March to address the items of concern.

The answer to last weeks riddle is:

They both carry too many loafers.

---

**From:** "Joseph F. Stuhl, III" <joseph@stuhlengineering.com>
**To:** <josepherickson1@netzero.com>
**Sent:** Monday, April 05, 2004 10:39 PM
**Subject:** Re: Miami P&DC

In the immoral words of every trucker that every cruised...........10-4 good buddy. Has this gate situation not become the cluster-fuck of the century? If I did not have my %@#*&$ pride on the line, I would send Jerry a final bill and never return to the place of my birth. I have always maintained that when you are up to your ass in alligators.......drain the swamp!

josepherickson1@netzero.com wrote:

>You can lead a horticulture but you cant make her think.
>
>Officially, and unless you tell me otherwise, or Mr. G. I wish to withdraw my Proposal, submitted under duress, as required by Mr. Bejar to be a work of pure fiction, because of the fact that he is one clueless Cuban, always has been, always will be, unlike my Bueno amigo Sr. Blanco , less I be accused of bigotry or Mamboism of any kind, and invite the District to seek alternate sources of services as they deserve what they get and unless and until sane management comes to the District, hopefully about the 19 of April, I really don't need to talk to any of the equally clueless losers that occupy space south of the County Line.
>The recent offering by Mr. Giambrone that his forces did not install the sleeve anchors or drill the hoiles at the truckers turnstile pretty much ends any hope I had of reaching a reasonable ending with these %^&*()_$#@!
>
>
>

--
Joseph F. Stuhl, III
President
Stuhl Engineering Consultants, Inc. (SEC)
1860 Anzle Avenue
Winter Park, Florida 32789
Phone - 407-645-5815
Facsimile - 407-645-5815
Toll free - 888-887-4874