SEC

February 8, 2002

EXHIBIT
56 for ID
4-9-06

Mr. W. Jerry Goddard, R.A.
Architect/Project Manager
United States Postal Service
Facilities Service Office
Building 300 - Suite 300
4000 DeKalb Technology Parkway
Atlanta, Georgia 30340-2799

## FIELD INVESTIGATION REPORT

Project: U. S. Postal Service - Process and Distribution Center (P&DC)
Facility and Employee Security Upgrades
City of Miami, Florida
SEC Project No. USPS-0101

Dear Mr. Goddard,

Please accept this letter as confirmation that Stuhl Engineering Consultants, Inc. (SEC) perform an interim inspection of the construction at the above referenced project site. On Wednesday, February 6, 2002, I was present at the site to inspect the construction in progress. The following is offered to document my observations and to forward our recommendations for your consideration. In general, the contractor has made little progress at this facility from the time of our last inspection on January 24, 2002.

*Electrical Observations and Recommendations:*

Item #1 During our inspection of this facility, Mr. Jose' Zamora brought to our attention that one (1) of the conduits shown on Sheet E-8, the "Overall Site Plan - Proximity Card System", was not properly sized for the number of conductors to be installed. The drawing shows a single (1) one inch (1") conduit (hex note #5) being routed from the grade mounted pull box (hex note #8) between Gates No. 1 and No. 2 into the VMF for connection of the Access Control System (ACS) devices at the two (2) gates to IFP No. 1 and No. 2. There is a total of fourteen (14) cables shown to be installed for the ACS devices at these gates to the IFP's in the VMF. This is an error in our drawings and the contractor will be required to provide and install two (2) new two and one-half inch (2-1/2") conduits from the pull box referenced above to the IFP's referenced above. We are requesting that ATC provide us with a cost for installation of these two (2) conduits.



ATSIC document production - March 4, 20[illegible]
0000721

85

SEC



Item #2 During our previous inspection of this facility, Mr. John Costanzo of ATC brought up a valid point regarding the installation of Gate No. 6. The existing chain link fence between the employee parking lot and the truckers service road has been partially pushed over by employee vehicles backing into the parking spaces along the fence. The fence needs to be repaired and concrete tire stops need to be installed to prevent the employee vehicles from further damaging the fence. This is of concern to us because the proposed cantilevered gate will operated along the line of the fence and can not be installed at this time because the fence encroaches on the path of the gate. The fence must be removed and replaced to avoid damage to the new gate. We request that ATC provide us with a cost for the installation of six (6) new concrete tire stops to be installed in the first six (6) parking spaces to the north of the gate. Additionally, we request that ATC provide us with a cost to remove and replace the existing chain link fence the length of the six (6) parking spaces reference herein.

Item #3 During our inspection of this facility, it was observed that the same five (5) sections of console are still in the new control room for the Postal Police. This item was addressed in Item #3 of our "Field Investigation Report", dated January 24, 2002. We have not received the requested elevation or floor plan for the console to be installed. By copy of this report, we request that ATC stop work on the console until we have received all of the required drawings and information for this room.

Item #4 During our inspection of this facility, it was observed that ATC had a computer in the control room for the Postal Police. The computer we observed is not manufactured by Dell as required by Hirsch Electronics. Direction was given to ATC by Mr. Goddard and myself that they may use this computer to test the system, but the required Dell computer must be provided prior to programming of the ACS system.

Item #5 During our inspection of this facility, it was observed that all of the required lightning protection has not been installed. Refer to Amendment No. 1, Item #5 for the required lightning protection. Mr. Jose' Zamora of ATC stated that they are aware of this requirement and will provide the lightning protection.

Item #6 During our inspection of this facility, SEC, again, requested a manufacturer's cut sheet for the proposed flashing light to be installed at each end of the gate islands. Mr. Jose' Zamora of ATC requested that SEC provide him with a manufacturer's catalogue number. SEC referenced the description given in Item #6 of Amendment No. 1 to the contract documents. ATC shall provide SEC with a cut sheet for this item as soon as possible to allow us to review and approve or reject the light.

Item #7 During our inspection of this facility, it was observed that the new wall in the control room has been completed. SEC observed that the contractor needs to patch the wall around the conduits which ATC installed. This item was referenced in our January 24, 2002 "Field Investigation Report" and remains uncompleted.

SEC



Item #8 During our previous inspection of this facility on January 24, 2002, ATC provided SEC with a copy of a manufacturer's cut sheet for the bullet-proof window to be installed in the new control room. During this inspection ATC requested clarification about the mounting of the window. It was observed that there is a concrete beam along the top of the area where the window will be installed. Mr. Goddard asked the size of the window and stated that the window could be raised to the ADA approved "Side Access" level, if necessary, to allow the console sections to be located below the window, if necessary. SEC has reviewed the information provided by ATC for the level 3 window. The information faxed to SEC shows forty-eight inches (48") by forty-two inches (42"), but does not identify height or width. A cash tray is identified as standard, but the depth of the tray is not identified. Please provide a copy of the manufacturer's data and identify the missing items above. We strongly recommend that the height of the concrete beam be measured as soon as possible to determine the maximum size for the height of this window.

Item #9 During our inspection of this facility, SEC noted that the chamfer is missing around the concrete work completed at the gates, islands and curbs. We informed ATC of this item and I was told that the chamfers would be provided.

Item #10 During our inspection of this facility, it was observed that some of the proximity card readers for the Access Control System (ACS) have not been installed flush in the wall, as required by the construction documents for this project. Specifically, along the south wall of the workroom, we observed three (3) card readers which were installed in a cast outlet box and surface mounted on the wall. The contractor will need to remove any assembly which has been surface mounted and which is required by the construction documents to be flushed. This item was referenced in our January 24, 2002 "Field Investigation Report" and remains uncompleted.

Item #11 During our inspection of this facility, it was observed that the batteries have not been installed in the Altronics control cabinets. The Altronics controllers are used to operate the maglocks at the various doors. These batteries must be provided, as required by the construction documents, prior to energizing the ACS components. This item was referenced in our January 24, 2002 "Field Investigation Report" and remains uncompleted.

During our meeting in the construction trailer, we discussed the concern of SEC with the lack of information being provided for the fiber optic installation. SEC required that ATC provide complete technical data from the manufacturer of the fiber optic cable splices for our review. We have conflicting information regarding the signal losses experienced by multiple splices along cable length.

We again requested that ATC provide us with documentation of the credit due the U. S. Postal Service for allowing the use of a single (1) cable with multiple fibers in lieu of multiple cables with only two (2) fibers. We also requested the number of extension days, or credit days, be calculated for all of the change orders being requested by ATC. All of the time extension information was requested in the SEC "Request for Information" letter dated January 2, 2002, which identifies each change order and lists specific information for resubmission. We were informed by Mr. Vento that

SEC



all of the information being requested would be faxed to both SEC and Mr. Goddard on Monday, February 11, 2002. and that hard copies would follow the next day by mail.

As of this inspection, I would have to revisit my anticipated completion date for the construction at this facility. We estimate that this project will continue for, at least, another two (2) months. I hope that the information contained in this report has been useful in summarizing the events and observations of our inspection at this facility. Please let me know if you have any questions about the items in this report.

Very truly yours,

Joseph F. Stuhl, III
JFS/ash

Attachments: Manufacturer's cut sheet for control room window for Mr. Goddard review.

CC: John Costanzo, ATC

ATC SYSTEMS INTEGRATORS

ARCHITECTS OF SECURITY

obviously wrong date WS

February 11 2002

United States Postal Service
Facilities Service Office
4000DeKalb Technology Parkway
Atlanta, GA 30340-2799

Reference: Letter dated February 15, 2002, Intent to offset.

Dear Mr. Goddard,
I just returned to find your letter and I will reply in greater detail through our attorney in the next day. However this letter so exemplifies why we at ATC, our attorney and consultants all see these actions as fraudulent practices to orchestration ATCs termination at P&DC, I had to respond. You with the help of your engineer have taken a 20-30K-project completion and magnified it to a new level of creativity (something more in the realm of Stephen Spielberg). I would ask our consultants if they have ever had a two-month, sixty thousand dollar project that required thirty thousand dollars in management/engineering fees. I would ask you if this means that Jose Blanco and Joe Sthul received $269,000.00 to management ATCs $538,000.00 AMC project. Your other numbers are also without merit.

Finally and most important we discussed with you and your attorney that ATC has been waiting for signed change orders for (in some cases) over ten months. I told you "we can not move forward on this project without signed change orders" pursuant to your directives. You stated you had no argument with our pricing and the only dispute was the time, you further stated for all to here that you were signing our (five) change orders and I would have them tomorrow (last Friday). I still have not received them, where are they? You are aware these change orders are stopping ATC from completing this project, and are increasing our overhead and costs, Is that what you wish?

Thank you,

Vincent J. Vento

EXHIBIT
57 for ID
JS 1-9-06

Cc: file, IFI

Advanced Technology Systems Integrators Corporation
3500 N. Miami Ave. Miami, FL 33127 Voice (305) 670-0282 Fax (305) 670-0292

JOSE,

CALL ME WHEN YOU GET THIS

February 11, 2002

VIA FEDERAL EXPRESS

Stuhl Engineering Consultant
1860 Anzle Boulevard
Winter Park, Florida 32789

Attn: Joseph F. Stuhl
Re: P&DC Updated Schedule

Dear Joseph,

We are enclosing the Updated P&DC Schedule in outlining the Projected Scheduled dates and the Actual Completed dates.

There are items that are still in the process of completion by ATC which are at this date outstanding due to C.O. approvals by USPS and/or work that needs to be completed by USPS such as the AC duct work in the control room for ATC to achieve Final Completion of the Work.

1. The attached schedule was prepared based on the following assumptions and clarifications:

2. The Notice to Proceed was issued by USPS for a start of January 15, 2001 making the Final Completion date 320 days later on November 30, 2001. ?

3. In our OAC meeting of 00/00/01 due to delays in USPS issuing security clearances, the start date was extended by 30 days to February 15, 2001 moving the Final Completion Date to January 2, 2002.

4. At this time there are 4 Change Orders that need to be approved by USPS so that we may start the work. USPS should release the approved Change Orders with the understanding that the projected Final Completion Date can be achieved by the Week of March 31st, 2002.

EXHIBIT
58 for ID
[illegible]

There is also the matter of the current withheld funds on completed work that needs to be resolved. It is essential for ATC to expedite the work that monies withheld by USPS above and beyond the contractually agreed retainage be made available.

We look forward to resolving the issues at hand quickly and reaching the targeted Final Completion Date.

Thanking you in advance for your cooperation, I remain

Respectfully yours,

Vincent Vento
President

ATC SYSTEMS INTEGRATORS

ARCHITECTS OF SECURITY & COMMUNICATIONS

February 12, 2002

VIA "FAX" & MAIL

Mr. Ronald Grzymala
USPS
Building 300, Suite 300
4000 DeKalb Technology Parkway
Atlanta, GA 30340-2799

Dear Mr. Grzymala:

This communication is a direct response to your attempts to provide a ten-day notice of intent to terminate the P&DC contract.

First, our attorney responded to your original January 4, 2002 letter that was prepared in anticipation of terminating ATC at the January 8, 2002 meeting. The letter I am responding to was actually mailed out after that date and received by this office on January 30, 2002.

The second letter was addressed to an incorrect prior company address. We moved to our current location in December of 2000. No correspondence has been addressed to the old location since that time. The company was located at 9100, not 9700 S. Dadeland Boulevard. It appears that no only do you work for the post Office but you know how to use it to your advantage.

ATC is not in default of its contractual obligations regarding completion or timeliness of submittals. It is the US Postal Service that is in default by its failure to provide timely approval of its change orders, thereby impacting the entire flow of work progress. Not only has the Postal Service failed to provide the approval of the change orders, it has actually changed the change orders. In one instance a light pole conduit re-placement was verbally changed on no less than three occasions. Other C.O.s are still under discussion six and ten months after they were brought to your attention.

The Postal Service and its consultant have ignored certain items that are critical to project completion such as the direct burial cable issues. It is indefensible for the Postal Service to refuse to evaluate and respond to our submittals and then attempt to allege a default. ATC has tried to make every effort to complete the project and make whatever adjustments have been required. It is the Postal Service that has failed to respond.

The surety has requested information from Mr. Goddard on numerous occasions. Although, he alleged to have documentation and reports, neither International Fidelity nor ATC has received copies.

EXHIBIT 59 for ID 5-19-06

Advanced Technology Systems Integrators Corp. ATC - 3500 N Miami Ave. • Miami Fl. 33127 - (305) 670-0282 • (305) Fax 670-0292

The Postal Service is demanding performance by ATC of items outside of our contractual responsibility. Additionally, Messer's. Goddard and Sthul have directly interfered with ATC's business relationships with its vendors.

This is what seems to be the obvious use by the post office of misinformation or lack of information in an attempt to undermine the performance of ATC. This is most apparent in the constant dance that we all must attend where Mr. Stuhl receives our pay rec in advanco, waits a week meets us, walks tho jobs says "everything looks OK, but I will review it one more time" and than seven days later cuts it by now up to 80%. That is 80% of a pay requisition that he verbally said look OK a week earlier. The last two and still un-received pay requisitions which started in the accurate range of sixty and thirty thousand dollars have been cut to fourteen (14) and four (4) thousand dollars. Even through all of these obvious tactics to starve us out now by the added sudden and wrongful refusal to pay ATC any sums due to us on the P&DC project, we have remained on the Job.

There is no documentation that substantiates the decision of termination on AMC or the intention to terminate the contract at P&DC. There is no documentation that substantiates the withholding of payment due ATC and we demand that the USPS comply with its contractual obligations and make timely payments. Finally it is obvious that the lack of payment and the history of drawing out payments have impacted ATC ability to perform and have in essence caused ATC to again extend its overhead and costs.

This is typical of how this project has been handled by the USPS. We are convinced by the action of the USPS and more specifically Mr. Sthul that your intention is to develop enough issues by continuing to reject, request more and more information on P&DC and fail to respond to ATC issues and thus continue to delay the project until you can justify our termination.

In closing there is no basis in fact for termination of ATC on this project.

Sincerely,

Vincent J Vento
CEO

cc: GS, File, IFIC, Jerry Goddard