IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP. and INTERNATIONAL FIDELITY INSURANCE COMPANY, Plaintiffs, v. THE UNITED STATES, Defendant. | No. 03-1953C (Senior Judge Margolis) |

DEFENDANT'S MOTION TO DISMISS
AND MOTION FOR PARTIAL SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Class. Unit 8th Floor
1100 L St., N.W.
Washington, D.C. 20530

OF COUNSEL:

STEPHEN D. LOBAUGH
Attorney
Law Department – Civil Practice
Commercial & Appellate Litigation
United States Postal Service
475 L'Enfant Plaza SW
Washington, DC 20260

April 28, 2006

Attorneys for Defendant

TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . 1

DEFENDANT'S BRIEF . . . . . 2

STATEMENT OF THE ISSUES . . . . . 2

STATEMENT OF THE CASE . . . . . 2

I. Nature of the Case . . . . . 2

II. Statement of Facts . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . 3

ARGUMENT . . . . . 4

I. Standards of Review . . . . . 4

II. International Should Be Dismissed For Lack Of Jurisdiction And Failure To State A Claim . . . . . 5

III. Defendant Is Entitled To Summary Judgment As To Counts I & II Of The Complaint . . . . . 8

A. The Government Is Entitled To Summary Judgment For Any Claims Arising Prior To Modification Number 11 . . . . . 8

B. ATSIC's Claims For Excusable Delay Based Upon Events After Modification Number 11 Fail As A Matter Of Law . . . . . 9

1. ATSIC Cannot Establish That It Was Delayed Due to Unforeseeable Weather Conditions . . . . . 11

2. ATSIC Cannot Establish That It Was Delayed Due To The Government's Conduct With Respect To Payments And Contract Modifications . . . . . 13

3. ATSIC Was Not Entitled To An Extension For Excusable Delay Based Upon The Timing Of The Stop Work Order . . . . . 15

TABLE OF CONTENTS (con't)

PAGE(S)

4. ATSIC Cannot Establish Any Other Basis For Excusable Delay . . . . . 17

C. The Termination For Default Was Not Procedurally Defective . . . . . 19

IV. Count III of The Complaint Should Be Dismissed, Or In The Alternative, This Court_Should Grant Summary Judgment As To Count III . . . . . 22

CONCLUSION . . . . . 24

# TABLE OF AUTHORITIES

CASES PAGES(S)

Admiralty Contr., Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Appeal of Meyer Labs, Inc., ASBCA 18033,
1973 WL 1683 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Appeals of Essential Constr. Co., Inc., ASBCA 18491,
1978 WL 2282 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Asco-Falcon II Shipping Co. v. United States,
32 Fed. Cl. 595 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Banknote Corp. of Am., Inc. v. United States,
365 F.3d 1345 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CJP Contractors, Inc. v. United States,
45 Fed.Cl. 343 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Chambery v. United States,
54 Fed. Cl. 2 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

D.V. Gonzalez Elec. & Gen. Contractors, Inc. v. United States,
55 Fed. Cl. 447 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

Discount Co., Inc. v. United States,
213 Ct. C 554 F.2d 435 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

George W. Kane, Inc. v. United States,
26 Cl. Ct. 655, 657 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fru-Con Constr. Corp. v. United States,
44 Fed. Cl. 298 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

TABLE OF AUTHORITIES (con't)

CASES PAGE(S)

Insurance Co. of the West,
243 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . 7

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . 5

Morganti Nat'l, Inc. v. United States,
49 Fed. Cl. 110 (2001) . . . . . . . . . . 10

National Surety Corp. v. United States,
20 Cl. Ct. 407, 409 (1990) . . . . . . . . . . 4

New Valley Corp. v. United States,
119 F.3d 1576 (Fed. Cir. 1997) . . . . . . . . . . 4

Pasco Enterprises v. United States,
13 Cl. Ct. 302, 305 (1987) . . . . . . . . . . 4

Plumley v. United States,
226 U.S. 545 (1913) . . . . . . . . . . 19

R.P. Wallace, Inc. v. United States,
63 Fed. Cl. 402 (2004) . . . . . . . . . . 9, 10

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 4, 5

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . 4

Short Brothers, PLC v. United States,
65 Fed. Cl. 695 (2005) . . . . . . . . . . 6, 22

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 5

TGC Contracting Corp. v. United States,
736 F.2d 1512 (Fed. Cir. 1984) . . . . . . . . . . 13, 14

TABLE OF AUTHORITIES (con't)

CASES PAGE(S)

United States v. Munsey Trust Co. of D.C.,
332 U.S. 234 (1947) . . . . . . . . . . 7, 8

Willems Industries, Inc. v. United States,
155 Ct. Cl. 360, 295 F.2d 822 (1962) . . . . . . . . . . 13

Xtra Lease, Inc. v. United States,
50 Fed. Cl. 612 (2001) . . . . . . . . . . 21

STATUTES

39 U.S.C. § 410(a) . . . . . . . . . . 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP. and INTERNATIONAL FIDELITY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 03-1953C<br>(Senior Judge Margolis) |

DEFENDANT'S MOTION TO DISMISS AND
MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that this Court: (1) dismiss plaintiff International Fidelity Insurance Co. (“International”) from this suit for lack of jurisdiction and failure to state a claim upon which relief may be granted; (2) grant summary judgment in favor of the Government as to counts I and II of the second amended complaint, in which plaintiffs alleged that the termination for default of Advanced Technology Systems Integrators Corp. (“ATSIC”) was improper and that the termination for default should be treated as a termination for convenience; and (3) dismiss count III of the second amended complaint, in which plaintiffs allege a breach of the covenant of good faith and fair dealing, for failure to state a claim, and in the alternative, grant summary judgment in favor of the Government as to count III. In support of this motion, we rely upon the pleadings, the following brief, defendant’s proposed findings of uncontroverted fact, and the appendix accompanying the proposed findings.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether the surety, International, should be dismissed for lack of jurisdiction and for failure to state a claim.

2. Whether this Court should grant summary judgment in favor of the Government as to counts I and II of the second amended complaint, alleging that the termination for default was arbitrary, capricious, and an abuse of discretion, and claiming damages under the termination for convenience clause.

3. Whether count III of the second amended complaint, alleging a breach of the duty of good faith and fair dealing, should be dismissed for failure to state a claim.

4. In the alternative, whether the Government is entitled to summary judgment as to count III of the second amended complaint.

STATEMENT OF THE CASE

I. Nature of the Case

This case arises out of a termination for default of a fixed price construction contract for the Miami Processing & Distribution Center ("P&DC") for the United States Postal Service ("USPS"). Plaintiff ATSIC entered into the contract with USPS on September 8, 2000. The Notice to proceed was issued on October 16, 2000, with a start date of January 15, 2001, and a required completion date of September 2, 2001. ATSIC was unable to perform the contract by that date, and following two letters to ATSIC directing them to show cause why the contract should not be terminated, in June, 2002, the parties agreed to Modification No. 11 to the contract, which establishes a revised completion date of July 15, 2002, and provides, "By signing this mod, both parties agree that all issues through mod 11 and 5/29/02 are mutually agreed to

and will not be made a part of any claim arising out of or related to either contract 123125-00-B-3153 or 123125-00-B-3154." ATSIC did not complete the work required under the contract ("Project") by July 15, 2002. On August 16, 2002, USPS terminated ATSIC for default. ATSIC and International filed suit in this court to challenge USPS's termination for default and the assessment of excess reprocurement costs.

II. Statement of Facts

The relevant, uncontroverted facts are set forth in defendant's proposed findings of uncontroverted fact, filed concurrently with this motion.

SUMMARY OF THE ARGUMENT

International should be dismissed from this suit for lack of jurisdiction and for failure to state a claim because International asserts performance bond claims which it would only have standing to assert if International had either taken over completion of the contract or financed completion of the contract under the performance bond. However, International has neither taken over the contract nor financed the completion of the contract, therefore International should be dismissed from this suit.

This Court should also grant partial summary judgment in favor of defendant as to ATSIC's claims under counts I of the complaint,[1] in which plaintiffs allege that the default termination was improper, and count II of the complaint, in which ATSIC alleges that it is entitled to relief based upon a termination for convenience. Summary judgment is appropriate as to counts I and II because there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law. The primary basis for summary judgment as to these counts are

[1] Unless otherwise stated, all references to the "complaint" are to plaintiffs' second amended complaint, filed October 26, 2005.

that the parties waived any claims that they may have had prior to Modification No. 11 by the express terms of that modification, and plaintiffs lack sufficient evidence upon which a reasonable fact finder could find in favor of plaintiffs as to ATSIC's claim that it was excusably delayed due to rain, the timing of payments by the Government, and various other alleged causes for delay.

This Court should dismiss plaintiffs' claims under count III of the complaint, in which plaintiffs allege a breach of the duty of good faith and fair dealing. Plaintiffs fail to allege with any specificity particular acts, which if proven, could demonstrate malice or an intent to harm by the Government. In the alternative, this Court should grant summary judgment as to count III of the complaint.

## ARGUMENT

### I. Standards of Review

In considering a motion to dismiss for either lack of subject matter jurisdiction or failure to state a claim, the Court construes all allegations in the light most favorable to the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court must presume that the undisputed factual allegations included in the complaint are true. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). A motion to dismiss for failure to state a claim "is appropriate where the plaintiff cannot assert a set of facts that supports its claim." New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir. 1997).

The burden of establishing jurisdiction is borne by the plaintiff, the party asserting jurisdiction. See George W. Kane, Inc. v. United States, 26 Cl. Ct. 655, 657 (1992); National Surety Corp. v. United States, 20 Cl. Ct. 407, 409 (1990); Pasco Enterprises v. United States, 13 Cl. Ct. 302, 305 (1987). "Where the court's jurisdiction is put in question, plaintiff bears the

burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds, 846 F.2d at 748.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). It is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (citations omitted).

As the Supreme Court has found, the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [court] – that there is an absence of evidence to support the nonmoving party's case. Id. A "material fact" is one "that might affect the outcome of the suit under the governing law," and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. at 248.

II. International Should Be Dismissed For Lack Of Jurisdiction & Failure To State A Claim

The surety, International, should be dismissed for lack of jurisdiction and failure to state a claim because: (1) International was not in privity of contract with USPS; (2) International has no standing to bring its claims based upon the performance bond; and (3) this Court would not

have jurisdiction based upon International's payment bond, and in any event International has not alleged any payment bond claims.

International has not entered into any contract with USPS regarding the Project. Def. Prop. Findings ¶ 26. Because International does not have any contract with USPS, there is no contract upon which a duty of good faith and fair dealing to International could arise. See Short Brothers, PLC v. United States, 65 Fed. Cl. 695, 799 (2005) (describing the duty of good faith and fair dealing as an implied "promise by each party not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.") (emphasis added). Therefore, International's claim of a breach of good faith and fair dealing (count III) should be dismissed for failure to state a claim upon which relief may be granted.

Furthermore, because International is not a party to a contract with the Government and is not otherwise in privity of contract with USPS, International may not rely upon privity of contract to support its remaining claims: count I (appeal of the default termination); and count IV (appeal of reprocurement costs). Counts I and IV are claims which could potentially be brought under a surety's performance bond based upon the doctrine of equitable subrogation. However, in order to have standing to bring such claims, International would have to have either entered into a takeover agreement with USPS or financed completion of the contract pursuant to the performance bond. "[T]o maintain a claim for equitable subrogation, a surety must either take over contract performance or finance the completion of the defaulted contract under its performance bond." Admiralty Contr., Inc. v. Dalton, 156 F.3d 1217, 1222 (Fed. Cir. 1998) (finding that surety could not bring claim against the Government under the doctrine of equitable subrogation because it did not take over the contract nor finance completion; the only payments

made by the surety were under the payment bond). International neither took over completion of the contract, nor financed completion of the contract pursuant to its performance bond. Def. Prop. Findings ¶ 26. Therefore the doctrine of equitable subrogation does not give International standing to assert claims under the performance bond.

International also invokes payments pursuant to the payment bond as a source of its standing to assert its claims. Compl. ¶ 6. However, this Court lacks jurisdiction to entertain such claims, and in any event, International has not alleged any payment bond claims. While International may have made payments to ATSIC's subcontractors after the termination for default, International's position falls within the

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the [G]overnment.

Insurance Co. of the West, 243 F.3d 1367, 1371 (2001) (emphasis added). This conclusion is consistent with the Supreme Court's decision in United States v. Munsey Trust Co. of D.C., 332 U.S. 234 (1947), upon which the court of appeals relied, and in which the Supreme Court concluded:

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation.

332 U.S. at 241. Therefore, where the surety pays the subcontractors and suppliers, its recourse is the same as that of the subcontractors and suppliers: against the prime contractor, not the Government. In other words, "[the surety] cannot acquire by subrogation what [the subcontractor,] whose rights he claims[,] did not have." Munsey Trust Co., 332 U.S. at 242.

In any event, International has not alleged any claims pursuant to the payment bond. Count I (appeal of the default termination) and count IV (appeal of reprocurement costs) are traditional performance bond claims. Count III (breach of good faith and fair dealing) is based upon similar allegations as Count I. See Compl. ¶ 51 (alleging a breach of the duty of good faith and fair dealing based upon delays allegedly caused by the Government, an alleged failure to properly process ATSIC's requested modifications, and "misleading" ATSIC). Therefore, International's claims should be dismissed.

## III. Defendant Is Entitled To Summary Judgment As To Counts I And II Of The Complaint

### A. The Government Is Entitled To Summary Judgment For Any Claims Arising Prior To Modification Number 11

In our answer to plaintiffs' second amended complaint, we asserted an affirmative defense which bars some, if not most, of plaintiffs' claims in this suit. This affirmative defense is that any of plaintiffs' claims which arose prior to Modification No. 11 have been waived by that modification, which was signed by both parties between June 11, 2002 and June 20, 2002.[2] Def. Prop. Findings ¶ 17, App. 100. Modification No. 11 established the revised completion date of July 15, 2002, and states that it is a "Settlement of issues through ATC proposed mod 9 and USPS mod 10 & 11." Id. Modification No. 11 further provides, "By signing this mod, both parties agree that all issues through mod 11 and 5/29/02 are mutually agreed to and will not be

[2] It is impossible to determine at this point how much of plaintiffs' allegations are barred by Modification No. 11 due to the conclusory nature of some of plaintiffs' claims in the complaint and in response to interrogatories. The conclusory nature of these allegations make it difficult to determine whether plaintiffs are claiming, for example, that the termination for default was improper due to events prior to Modification No. 11, or events following Modification No. 11. See e.g. Compl. ¶ 17 (suggesting that plaintiffs' claims are based in part upon the Government's conduct prior to Modification No. 11).

made a part of any claim arising out of or related to either contract 123125-00-B-3153 or 123125-00-B-3154." (underlying in original). Id.

Therefore, by the express terms of Modification No. 11, any claims that may be raised based upon requests for modification, payment requests, causes for delay, etc. that predate Modification No. 11 are barred. Modification No. 11 represents an accord and satisfaction of as to any claims that the parties could have brought prior to Modification No. 11.

As the ASBCA noted in rejecting claims that predated a similar contract modification:

> Regardless of the merits, or lack of merits, of [the contractor's] excuses, the salient fact is that they all predated the establishment of the final delivery schedule which was proposed by appellant, and accepted by the Government . . . . [The contractor] effectively waived the prior caused of Governmental delay, if any. In accepting this revised schedule, the Government absolved the appellant of all prior sins of non-performance. In effect, there was a fresh beginning of the contract."

Appeal of Meyer Labs, Inc., ASBCA 18033, 1973 WL 1683 (1973). Modification No. 11 represents a similar "fresh beginning of the contract." Therefore, the Government is entitled to summary judgment as to its affirmative defense and as to any of plaintiffs' claims that arose prior to Modification No. 11.

B. ATSIC's Claims For Excusable Delay Based Upon Events After Modification Number 11 Fail As A Matter Of Law

ATSIC failed to complete the project by the revised completion date of July 15, 2002. Therefore, ATSIC has the burden of demonstrating that the contracting officer's decision to terminate was arbitrary, capricious, or an abuse of discretion based upon excusable delay. R.P. Wallace, Inc. v. United States, 63 Fed. Cl. 402, 409 (2004). As this court has stated in describing the contractor's burden of proof with respect to excusable delay:

> When a contractor is seeking extensions of contract time, for changes and excusable delay, which will relieve it from the consequences of having failed to complete the work within the time allowed for performance, it has the burden of establishing by a preponderance of the evidence not only the existence of an excusable cause of delay but also the extent to which completion of the contract work as a whole was delayed thereby.

Id.; accord Morganti Nat'l, Inc. v. United States, 49 Fed. Cl. 110, 132-33 (2001). Furthermore, "[t]he contractor must prove that the excusable event proximately caused a delay to the overall completion of the contract, i.e., that the delay affected activities on the critical path." R.P. Wallace, 63 Fed. Cl. at 409; accord CJP Contractors, Inc. v. United States, 45 Fed. Cl. 343, 372 (1999). And it must also establish the extent to which completion of the work was delayed – it "is entitled to only so much time extension as the excusable cause actually delayed performance." R.P. Wallace, 63 Fed. Cl. at 409; Morganti, 49 Fed. Cl. at 132. The contractor must show that the delay was beyond its control and that it was not caused by the contractor's fault or negligence. CJP Contractors, Inc. v. United States, 45 Fed. Cl. 343, 372 (1999). In addition, the cause of delay must not have been foreseeable. Id.; Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 314 (1999).

ATSIC alleges that the contract completion date should have been extended for excusable delay based upon the weather in June and July of 2002, based upon the Postal Service's actions or inactions with respect to payment requests and contract modifications, and based upon a variety of other alleged causes of delay. ATSIC cannot meet this burden of proof with respect to excusable delay, therefore summary judgment in favor of the Government is appropriate with

respect to count I (appeal of termination for default) and count II (seeking relief for termination for convenience) of the complaint.[3]

1. ATSIC Cannot Establish That It Was Delayed Due to Unforeseeable Weather Conditions

Plaintiffs claim that ATSIC was entitled to an extension of the completion date based upon unusual rainfall during June and July, 2002. Compl. ¶ 20, 36. A contractor may be entitled to an extension based upon weather conditions which were unusually severe so as to be unforeseeable. Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 314 (1999); Appeals of Essential Constr. Co., Inc., ASBCA 18491, 1978 WL 2282 (1978) (finding that contractor was not entitled to additional days for completion due to the contractor's failure to establish it encountered unusually severe weather). However, in order to be entitled to such an extension, the plaintiff must also show that the unusually severe weather "actually had an adverse impact on critical work." Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 314 (1999). As this Court has emphasized,

> Demonstration of an adverse impact is critical to plaintiff's recovery. [T]he mere comparison of past statistical averages with weather during the period of performance without considering the actual impact on the work has been criticized as an unacceptable basis. Moreover, [i]t is not sufficient to establish that some work was prevented; the work prevented must be work that will delay the overall completion of the job.

Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 314 (1999) (citations and quotations omitted).

[3] If the Government is entitled to summary judgment as to count I (appeal of the termination for default), then the Government is also entitled to summary judgment as to count II (seeking relief based upon a termination for convenience), because if the termination for default was valid, then the termination for default would not be converted into a termination for convenience.

As an initial matter, ATSIC is not entitled to any extension based upon foreseeable rain. See Warren Depo. at 89 (statement by representative of ATSIC that the time period for which ATSIC requested an extension due to rain is part of south Florida's rainy season.); App. 89 (attachment to ATSIC letter suggesting that the average rainfall for the month of June in Miami is over 8 inches of rain.). Plaintiffs' claim for excusable delay based upon unforeseeable rain fails as a matter of law because plaintiffs lack competent evidence upon which they could establish: (1) that unforeseeable rain caused ATSIC to be unable to complete work on Project tasks; (2) that the failure to complete these tasks as scheduled or planned caused an overall delay in completion of the Project; and (3) even if unforeseeable rain caused some amount of delay, the number of days of delay. Plaintiffs have not produced any documents to the Government from which ATSIC might be able to establish a daily or weekly record of activities on the Project in June and July of 2002 which one could compare to weather records for that time period. Plaintiffs have also not produced any construction schedules updated in June and July of 2002.[4] Nor have plaintiffs produced any other documents from which one could establish that a particular activity was scheduled to take place on a certain day, but could not be completed due to unforeseeable weather conditions. Not surprisingly, representatives of ATSIC, including the project manager, could not recall specifically when tasks were to be performed, or what activity occurred on each day. Zamora Tr. 51, 55-57; Warren Tr. 86, 91-96; Vento Tr. 115-16. Without a daily record of activities or an updated construction schedule, plaintiffs cannot establish that unforeseeable rain prevented scheduled work on tasks on the critical path such that the overall

[4] The last construction schedule for the Project that we are aware of was produced on or before May 13, 2002. See App. 68. This schedule, described in a note at the bottom of the page as a "proposed schedule to complete," indicates that the Project would be complete by June 14, 2002. Id.

project could not be completed on time due to rain. See Appeals of Essential Constr. Co., Inc., ASBCA 18491 ("Without any information concerning the amount of lost time because of severe weather that should have been foreseen and that which in fact occurred, we are unable to determine whether the Government's allowance of 21 days was accurate, generous or inadequate. . . . The appellant has failed to establish that it is entitled to further extensions of time."). Therefore, the Government is entitled to summary judgment as to plaintiffs claim for excusable delay based upon rain.

2. ATSIC Cannot Establish That It Was Delayed Due To The Government's Conduct With Respect To Payments And Contract Modifications

This Court should grant summary judgment as to plaintiffs' claim that the contract should have been extended for excusable delay based upon the Government's conduct. Plaintiffs contend that the Government failed to make timely payments, which caused financial difficulties for ATSIC, preventing it from completing the Project by the required completion date. These allegations fail as a matter of law.

It is "well established that the poor financial condition or insolvency of a contractor ordinarily is not a sufficient excuse for a contractor's default in the performance of a contract." TGC Contracting Corp. v. United States, 736 F.2d 1512, 1515 (Fed. Cir. 1984). However, an exception applies when the contractor's financial difficulties are caused by the acts or omissions of the Government. Discount Co., Inc. v. United States, 213 Ct. Cl. 567, 554 F.2d 435, 442 (1977); see also Willems Industries, Inc. v. United States, 155 Ct. Cl. 360, 295 F.2d 822, 829 (1962) (holding that the contractor was not entitled to delay based upon its poor financial condition which could not be attributed to the Government's actions). "[W]hen the contractor claims that his financial inability to perform is due to the government's failure to make the

required progress payments, the burden is on the contractor to establish that the progress payments were erroneously withheld and that the withholding of such progress payments was the primary or controlling cause of the contractor's default. TGC Contracting Corp., 736 F.2d at 1515.

ATSIC’s claim for excusable delay based upon the timeliness of payments by USPS fails because ATSIC waived any claims that it may have had prior to Modification No. 11, and ATSIC did not submit any requests for payment between Modification No. 11 and the revised contract completion date of July 15, 2002, nor were any payment requests pending during this period. Def. Prop. Findings ¶ 14. Therefore, ATSIC cannot excuse its failure to complete the project during June and the first half of July upon the Government’s handling of any payment requests, since it did not submit any payment requests during this applicable period, and there were no payment requests pending during this period. Whatever issues ATSIC might have had with payment requests prior to Modification Number 11, ATSIC waived those issues in Modification No. 11. Furthermore, while ATSIC contends that it submitted a payment request after the required completion date, on July 17, 2002, in the amount of $ 38,250, even assuming that this was presented to the contracting officer on July 17, 2002, and, and even if USPS had approved such a request, ATSIC would not have been entitled to payment pursuant to that

request until on or after July 31, 2002, more than two weeks after the revised contract completion date. See App. 28 (Section F.4 of the P&DC Contract).[5]

3. ATSIC Was Not Entitled To An Extension For Excusable Delay Based Upon The Timing Of The Stop Work Order

ATSIC also contends that it would be entitled to an extension of the contract, presumably of one day, because the Government allegedly provided a stop work order to ATSIC on the day of the required completion date, July 15, 2002, rather than the day after the required completion date. Compl. ¶ 19. ATSIC's claim for excusable delay based upon the stop work order fails as a matter of law because no reasonable fact finder could find that the stop work order was issued on July 15, 2002.

While it is true that the date on the stop work order is dated July 15, 2002, ATSIC was not given a stop work order, and was not ordered to stop work, until July 31, 2002. Def. Prop. Findings ¶ 22. On that date, at approximately 1:00 pm, the contracting officer met with representatives of ATSIC, informed them of the stop work order, and provided a copy of the stop work order. Id. No reasonable fact finder could conclude that ATSIC was told to stop work on July 15, 2002 based upon the contemporaneous documents reflecting ATSIC's conduct after July, 15, 2002, and contemporaneous documents reflecting when the stop work order was given to ATSIC. See Id. For example, by letter dated July 19, 2002, four days after ATSIC contends it received a stop work order, ATSIC wrote to the contracting officer and stated, "We are

[5] ATSIC's letter dated July 17, 2002, from Greg Warren to Jerry Goddard, indicates that payment request number 18, in the amount of $ 38,250, is being submitted with the letter. App. 104. Mr. Goddard does not recall seeing this payment request, and the Government has been unable to locate such a payment request in its own documents and in the materials provided by plaintiffs. In any event, the last payment request authorization to be approved and paid by the Government was payment request authorization number 17, in the amount of $ 63,000, approved on June 12, 2002. Def. Prop. Findings ¶ 14.

continuing with our efforts to complete the work . . ." App. 105. Moreover, the same letter, which attempts to explain ATSIC's failure to complete the project by July 15, 2002, calculates the number of days of delay based upon rain during the 48 day period from June 1, 2002 to July 18, 2002, and includes two days of rain after July 15, 2002 in the calculation. App. 104-09. Furthermore, an ATSIC representative described when ATSIC received the stop work order as follows:

> We were asked to attend a meeting at the jobsite on 7-31-02 at 1:00pm. Mr. Goddard (USPS) and Joseph Stuhl (SEC) arrived with the postal police and handed us a letter, dated 7-15-02 . . . to stop work. They took possession of all the materials stored at the jobsite, our badges and asked us to leave the premises.

App. 118.

ATSIC's contention regarding the stop work order reflects a broader deficiency with ATSIC's claims. The contention regarding the stop work order was added as part of plaintiffs' second amended complaint, filed October 26, 2005. At that point, the parties had been engaged in discovery since at least May, 2005.[6] Yet, despite access to its own files and obtaining numerous documents from the Government and from the engineer on the Project, ATSIC cannot say with any certainty to what extent it was working on the project from July 15, 2002 to July 31, 2002, nor, if it was not performing work during that time period, the reason for not performing the work. The reason for plaintiffs' uncertainty is that they lack documents upon which one could establish ATSIC's activities during June and July of 2002. Without such documents, ATSIC cannot establish excusable delay because it cannot demonstrate: (1) that circumstances beyond its control caused ATSIC to be unable to perform a task or tasks; (2) that

[6] For example, on May 10, 2004, Plaintiffs served upon defendant their first request for production of documents to the United States.

this task was on the critical path such that the delay in the task caused an overall delay to the completion of the project; and (3) even assuming there could have been some tasks that were delayed, causing a delay to the completion of the project, the number of days of excusable delay to which the contractor is entitled.

4. ATSIC Cannot Establish Any Other Basis For Excusable Delay

In plaintiffs' second amended complaint, ATSIC provides a grab bag of other excuses for delay. Pl. Compl. ¶ 16. ATSIC contends that it was delayed due to, inter alia, "defects and deficiencies in the plans and specifications," "over inspection and active interference in the Project by USPS's Project Engineer," "poor and untimely communication," "changes and constructive changes in the work on the Project," and the manner in which the Government processed proposed contract modifications. Id.

ATSIC's claims for excusable delay based upon the other alleged causes of delay indicated in paragraph 16 of the complaint fail as a matter of law for some of the same reasons as ATSIC's claims for delay based upon the weather and its financial resources. As demonstrated above, ATSIC lacks evidence such as up-to-date schedules and a daily record of activities upon which ATSIC could establish causation (that a circumstances beyond its control caused a delay to a task, and that this delay in the task caused a delay in the overall completion of the project). Furthermore, even if ATSIC could establish that there could have been some delay to the project, ATSIC cannot establish that it was entitled to a particular number of days of delay due to ATSIC's lack of schedules and a record of its daily progress on the Project. Likewise, as demonstrated above, to the extent that ATSIC's allegations described in paragraph 16 of the complaint are based upon claims arising prior to Modification No. 11, these claims are waived by the express terms of that modification.

For example, ATSIC contends that it was entitled to an extension for excusable delay based upon the Government's failure to properly process modifications. Compl. ¶ 16(h). ATSIC's claim for excusable delay based upon the Government's handling of proposed contract modifications fails because ATSIC did not submit any requests for modifications to USPS after Modification number 11, aside from the request for an extension of time on July 17, 2002. Def. Prop. Findings ¶ 17. Therefore, it cannot blame its failure to complete the project upon the Government's handling of any proposed modifications after Modification number 11, since none were submitted to USPS which could have itself been a basis for delay. As for any concerns that ATSIC might have with the way that modifications prior to Modification No. 11 were handled by USPS, ATSIC waived any claims that it might make regarding those concerns in Modification No. 11.

In addition, ATSIC cannot fault the contracting officer for not extending the contract based upon the alleged causes for delay identified in paragraph 16 of the second amended complaint because ATSIC failed to timely ask for an extension based upon these alleged excuses for delay. Prior to July 17, 2002, ATSIC did not submit a request for an extension of the revised completion date based upon excusable delay. On July 17, 2002, ATSIC submitted a request for extension based upon excusable delay, however, ATSIC based its request solely upon weather conditions and the timing of payments by the Government. App. 104-09. ATSIC did not claim that it was entitled to an excusable delay based upon such things as alleged deficiencies in the contract specifications or "over inspection" by the Project engineer. Id.[7] The contract required

---

[7] In fact, in response to defendant's first set of Interrogatories, in which defendant asked ATSIC to identify all causes of delay to the Project, ATSIC failed to identify most of the alleged causes of delay identified in paragraph 16. App. 133-34 (Pl. Resp. to Interrogatory No. 1), App. 136-37 (Pl. Resp. to Interrogatory No. 3), App. 140-41 (Pl. Resp. to Interrogatory No. 8).

ATSIC to provide notice of the delay, including "the reasons for them, and the estimated period of delay," "immediately upon becoming aware" of the delay. App. 22 (P&DC Contract, § C.1). ATSIC's failure to provide notice regarding these alleged causes of delay during the performance of the Project results in the claim for delay being barred. See Plumley v. United States, 226 U.S. 545, 547 (1913) (holding that the contractor's failure to provide notice of alleged delay at the time the delay occurred, barred the contractor's claim for delay pursuant to the applicable notice provision of the construction contract).

C. The Termination For Default Was Not Procedurally Defective

ATSIC alleges that the termination for default was improper because the Government allegedly failed to comply with the requirements of the termination for default provision of the contract, which plaintiffs contend requires "USPS to provide ATSIC no less than ten (10) days to cure 'after receipt of the notice from the Contracting Officer specifying the failure.'" Pl. Compl. ¶ 18.2. ATSIC's allegation regarding a violation of the contract's termination for default provision, fails as a matter of law because: (1) this provision does not require the Government to provide ten days to cure if the default is due to failure to complete by the required completion date; and (2) in any event, the Government provided notice to ATSIC that it was considering terminating the contract, and the grounds for termination, more than ten days prior to termination.

The termination for default provision of the contract states:

> a.(1) The Postal Service may, subject to paragraphs c and d below, by written notice of default to the supplier, terminate this contract in whole or in part if the supplier fails to:
>
> (a) Complete the requirements of this contract within the time specified in the contract or any extension;
>
> (b) Make progress, so as to endanger performance of this contract . . .; or
>
> (c) Perform any of the other provisions of this contract . . . .
>
> (2) The Postal Service's right to terminate this contract under a.1(b) and (c) above may be exercised if the supplier does not cure the failure within ten days . . . after receipt of the notice from the contracting officer specifying the failure.

App 40-41.

Based upon the express language of this provision, the Postal Service is not obligated to provide 10 days to cure in this case because such cure notice is only required for terminations based upon section a.(1)(b) (endangering performance for failure to make progress) and section a.(1)(c) (other grounds), but not section a.(1)(a) (failure to complete by the required completion). In this case, the contracting officer terminated, among other reasons, for failure to complete by the required completion date. Therefore, this provision regarding the ten day notice to cure would only be relevant if the Court were to hold that it would have been arbitrary and capricious for the contracting officer to terminate for default based upon the contracting officer's failure to complete the project by the completion date.

In any event, the Government gave ATSIC the third show cause letter, putting ATSIC on notice that it was considering terminating for default, more than ten days prior to the termination for default. The third show cause letter, dated July 15, 2002, was received by ATSIC on or

before July 19, 2002. Def. Prop. Findings ¶ 20. ATSIC responded on July 19, 2002, and the contract was not terminated for default until at least August 16, 2002. App. 104-09.

Plaintiffs further contend that the parties modified the contract in Modification No. 11 so as to make liquidated damages the "exclusive remedy" for any failure by ATSIC to complete the project. Compl. ¶ 14, 39. This allegation need not be addressed at any length, since ATSIC cannot reasonably contend that the Postal Service would modify the contract so as to eliminate the termination for default provision of the contract, thereby permitting ATSIC to take as much time as it pleased to complete the construction of the Project. In any event, there is nothing in Modification No. 11 to suggest that it was eliminating the termination for default provision from the contract. Instead, Modification No. 11 states, "Except as provided herein, all terms and conditions [of the Contract], as heretofore changed, remain unchanged and in full force and effect." App. 100.

Plaintiffs also contend that the Postal Service violated the requirements of Part 49 of the Federal Acquisition Regulations (FAR), imported by clause B-80 of the USPS Purchasing Manual" in issuing the show cause letter dated July 15, 2002. Plaintiffs' contention regarding clause B-80 is incorrect in two respects. First, clause B-80 is not part of the contract. Def. Prop. Findings ¶ 27. Furthermore, as to the applicability of the FAR to this contract, Postal Service contracts are not governed by the FAR. 39 U.S.C. § 410(a); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1349 n.1 (Fed. Cir. 2004); Xtra Lease, Inc. v. United States, 50 Fed. Cl. 612, 624 n. 25 (2001). Therefore, as a matter of law, the Postal Service could not have violated any provision of the FAR because the FAR does not apply to its contracts.

IV. Count III of The Complaint Should Be Dismissed, Or In The Alternative, This Court Should Grant Summary Judgment As To Count III

Count III of the second amended complaint alleges a breach of the duty of good faith and fair dealing. Pl. Compl. ¶ 49-54. This Court should dismiss Count III for failure to state a claim upon which relief may be granted because plaintiffs fail to allege specific acts of bad faith on the part of the Government. In the alternative, this Court should grant summary judgment as to Count III.

"It is well-settled that government officials are presumed to act conscientiously and in good faith in the discharge of their duties." Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994). Consequently, in order for this Court to find that defendant breached its duty of good faith, plaintiffs must allege and prove, by clear and strong evidence, specific acts of bad faith on the part of the government. Id.; Chambery v. United States, 54 Fed. Cl. 2, 7-8 (2002) (Margolis, J.). Indeed, it requires "well nigh irrefragable proof" for the Court to abandon the presumption of good faith and fair dealing, including proof of malice or an intent to injure. Asco-Falcon II, 32 Fed. Cl. at 604; Chambery, 54 Fed. Cl. at 7-8; Short Brothers, PLC v. United States, 65 Fed. Cl. 695, 799 (2005) (stating that a contractor's burden of proof in overcoming the presumption of good faith is "intended to be very difficult"). Therefore, "in order to state a claim premised on a violation of the obligation of good faith and fair dealing, plaintiffs must allege facts which if proved would constitute malice or an intent to injure." Asco-Falcon II, 32 Fed. Cl. at 604; D.V. Gonzalez Elec. & Gen. Contractors, Inc. v. United States, 55 Fed. Cl. 447, 457 (2003). Conclusory allegations in the complaint of malice or intent to injure are insufficient to overcome a motion to dismiss for failure to state a claim. Asco-Falcon II, 32 Fed. Cl. at 605.

Plaintiffs have not alleged in their complaint that the Postal Service acted with malice or intent to injure ATSIC. Instead, plaintiffs summarily allege:

> By causing delay on the Project, failing to properly process modifications to the Contract sought or demanded by USPS, and misleading ATSIC, the USPS acted with conscious indifference to the rights, obligations, and interests of the Plaintiffs; with improper motive; and in a manner of unfair dealing.

Compl. ¶ 51. The reference to "improper motive" is not the equivalent of an allegation of malice or intent to injure. Even if the reference to "improper motive" could be construed as an allegation that the USPS acted with malice or an intent to harm ATSIC, plaintiffs fail to allege specific facts which, if proved, would constitute malice or an intent to injure. See Asco-Falcon II, 32 Fed. Cl. at 605 (dismissing for failure to state a claim allegations of a breach of good faith and fair dealing which included the allegation that the Government acted with "legally impermissible motives"). Furthermore, plaintiffs' incorporation by reference of other portions of the complaint does not make plaintiffs' claim of a breach of the duty of good faith and fair dealing any more specific, since plaintiffs do not elsewhere allege specific facts demonstrating malice or intent to injure. Therefore, plaintiffs' conclusory assertion of a breach of good faith and fair dealing should be dismissed for failure to state a claim.

This Court has previously granted motions to dismiss for failure to state a claim based upon complaints that similarly fail to allege malice or intent to harm based upon specific facts. For example, in Asco-Falcon II, the plaintiffs alleged a breach of the duty of good faith and fair dealing based upon disparate treatment in rejecting an amendment that had been previously accepted for similarly situated companies. 32 Fed. Cl. at 604. The Court found that plaintiffs allegations in the complaint regarding the alleged breach of good faith and fair dealing lacked specific facts from which a breach of the duty could be established. Id. at 604-05. Therefore,

the Court dismissed this claim. Id. at 605; see also D.V. Gonzalez Elec., 55 Fed. Cl. at 457-58 (dismissing for failure to state a claim allegation of breach of good faith and fair dealing; stating, "even if plaintiff's allegations could surmount clear contract language to the contrary, they do not contain the necessary element of malice or specific intent to injure [plaintiff] necessary to overcome the presumption of good faith enjoyed by the government.").

Even if plaintiffs' allegation in the complaint of a breach of the duty of good faith and fair dealing states a claim upon which relief may be granted, the Government is entitled to summary judgment as to this claim. The allegations upon which plaintiffs base Count II of the complaint in paragraph 51 are the same as plaintiffs' allegations regarding the propriety of the default termination under Count I. Therefore, summary judgment would be appropriate for the same reasons identified previously with respect to Count I. For example, any claim of a breach of good faith and fair dealing based upon conduct prior to Modification No. 11 is barred by that modification.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court grant this motion and: (1) dismiss International from this suit; (2) grant summary judgment in favor of the Government as to counts I and II of the second amended complaint; and (3) dismiss count III of the second amended complaint, and in the alternative, grant summary judgment in favor of the Government as to count III.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Michael J. Dierberg
MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Class. Unit 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Phone: (202) 353-0536
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

STEPHEN D. LOBAUGH
Attorney
Law Department – Civil Practice
Commercial & Appellate Litigation
United States Postal Service
475 L'Enfant Plaza SW
Washington, DC 20260

April 28, 2006