IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP. and INTERNATIONAL FIDELITY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 03-1953C<br>(Senior Judge Margolis) |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56 of the Rules of this Court, defendant respectfully submits the following proposed findings of uncontroverted fact:

1. On September 8, 2000, Advanced Technologies Systems Integrators Corp. ("ATSIC") and the United States Postal Service ("USPS") entered into a fixed price construction contract, number 123125-00-B-3154, for the construction and installation of security improvements for the USPS's Processing and Distribution Center, Miami, Florida ("P&DC"). App. 1 (Goddard Aff. ¶ 2), App. 13. The P&DC facility is also sometimes referred to as the General Mail Facility ("GMF"). App. 1 (Goddard Aff. ¶ 2). The P&DC is the central distribution point for USPS mail in Miami, Florida. Id.

2. At or around the same time that ATSIC and USPS entered into the P&DC contract, ATSIC and USPS also entered into a similar contract for the construction and installation of security improvements for the Miami Air Mail Center ("AMC"), which is the USPS facility in Miami which handles mail being transported by air. App. 1 (Goddard Aff. ¶ 3) The AMC contract was terminated for default in January, 2002. Id.

3. The P&DC contract required that the work to be performed under the contract must be completed within 230 days. App. 2 (Goddard Aff. ¶ 5), App. 13. On October 3, 2000, USPS issued its Formal Notice to Proceed for the Project, with a start date of January 15, 2001. App. 2 (Goddard Aff. ¶ 5), App. 13. Based upon a 230-day period for completion, the required contract completion date was September 2, 2001. App. 2 (Goddard Aff. ¶ 5), App. 13.

4. The work required to be performed by ATSIC in connection with the P&DC facility ("Project") included the installation of a closed-circuit television system and cameras to provide remote monitoring of activities, exterior gates and vehicle barrier controls, exterior fencing, an access control system using proximity card readers to limit access to the P&DC building to authorized personnel, and turnstiles to limit access to, and egress from, the P&DC building. App. 2 (Goddard Aff. ¶ 6), App. 9-11A (Stuhl Aff. ¶ 4), App. 13.

5. By letter dated August 2, 2001, from Ronald Grzymala to ATSIC, Mr. Grzymala notified ATSIC of USPS's concerns regarding ATSIC's progress on the Project, and requested that ATSIC's deficiencies be cured. App. 2 (Goddard Aff. ¶ 7), App. 43. The letter states, in part,

> The Notice to Proceed on the above referenced project was issued on January 15, 2001, with a 230 day construction term and a contract completion date of September 2, 2001. As of your last pay request on June 25, 2001, you were at 38% complete.
>
> This letter is to notify you that the Postal Service considers your failing to adhere to the approved project schedule and not providing submittals on a timely basis, a condition that is endangering perfomance of the contract in accordance with its terms. Therefore, unless such condition is cured or you can provide information explaining how the project might be brought back on schedule, within ten (10) days after the receipt of this letter, the Postal Service may terminate subject contract for default

> under the provisions provided in h.6 Termination for Default
> (clause B-13).

App. 43.

6. ATSIC did not complete the project by the completion date of September 2, 2001. App. 2 (Goddard Aff. ¶ 8).

7. The sole owner and Chief Executive Officer of ATSIC was Vincent Vento. Vento Tr. 11-12.[1] In late 2001, Mr. Vento decided that ATSIC was "no longer viable." Id. at 51. Because he believed that ATSIC was no longer viable, in 2002 ATSIC did not seek additional credit from any financial institution to support its financial needs. Id. at 50-52. In addition, after 2001, ATSIC did not seek any new business for the company. Id. at 48-49. Mr. Vento anticipated in late 2001 that the USPS P&DC Project would be ATSIC's last project. Id. Following ATSIC's termination from the AMC USPS project, ATSIC's last, and only, project was the P&DC Project. Id. at 49; App. 141-42.

8. In February, 2002, Jerry Goddard was assigned as the contracting officer for the project in lieu of Mr. Grzymala. App. 2 (Goddard Aff. ¶ 9).

9. By letter dated March 12, 2002, Mr. Goddard, as contracting officer, responded to a request for information from plaintiff International Fidelity Insurance Company ("International") regarding the status of the project. App. 2 (Goddard Aff. ¶ 10), App. 49. Mr. Goddard indicated, among other things: (1) the work performed to date was not satisfactory, the job was not

[1] "__ Tr. __" refers to the transcript of a deposition taken in this matter, included as the parties joint appendix, filed concurrently with defendant's proposed findings of uncontroverted fact. The page references with respect to the transcripts are to the page numbering of the transcript itself.

progressing on schedule, and "Project is in danger of being terminated if work does not proceed. We have ask[ed] for a new schedule but as usual have not been provided anything." App. 49.

10. On March 21, 2002, Mr. Stuhl was present at the Project site to meet with members of ATSIC and to inspect the construction in progress. App. 11A (Stuhl Aff. ¶ 5), App. 51- 52. By letter dated March 25, 2002 from Mr. Stuhl to Jerry Goddard, entitled "Field Investigation Report," Mr. Stuhl stated, in part, " My inspection revealed that minimal progress has been made from the date of our last inspection report dated February 28, 2002." App. 52.

11. On April 10, 2002, Mr. Stuhl was present at the Project site to meet with members of ATSIC and to inspect the construction in progress. App. 11B (Stuhl Aff. ¶ 7), 60-61. By letter dated April 16, 2002 from Mr. Stuhl to Jerry Goddard, entitled "Field Investigation Report," Mr. Stuhl stated, in part,

> In general, my inspection revealed that some progress has been made but [ATSIC] does not appear to be increasing their effort at this facility. Our last inspection at this facility was on April 2, 2002, and this inspection shows minimal increase in activity and progress from that date.

App. 60.

12. By letter dated May 1, 2002, entitled "2nd Show Cause: Miami, FL – GMF – Security and Access control System Contract No. 12315-00-B-3154," from Mr. Goddard to Vincent Vento ("Second Show Cause"), Mr. Goddard stated, in part,

> Since you have failed to perform on contract 123125-00-B-3154 with respect to:
> * Failure to complete project per contract completion date
> * Failure to provide submittals
> * Failure to provide back-up documentation for change requests
> * Failure to provide updated construction completion schedule
> * Failure to adequately man the project
> * Failure to supply required equipment / materials

> Therefore the US Postal Service is considering terminating said contract pursuant to Clause B-13 (TERMINATION FOR DEFAULT).

App. 3 (Goddard Aff. ¶ 11), App. 63. Mr. Goddard also indicated that ATSIC would have 10 days within which to provide a written response addressing whether ATSIC's failure to perform "arose out of causes beyond your control and without fault or negligence on your part." App. 63. This letter was sent by USPS to ATSIC on or about May 1, 2002. App. 3 (Goddard Aff. ¶ 11).

13. By letter dated May 13, 2002, ATSIC provided to USPS a revised completion schedule showing the tasks on the Project that still needed to be completed and the estimated amount of time that each task would require to be completed. App. 65-68. According to the completion schedule, the Project would be completed by June 14, 2002. App. 68.

14. On or after May 29, 2002, ATSIC submitted payment authorization No. 17 for approval by USPS. App. 3 (Goddard Aff. ¶ 12), App. 79. The amount of the payment authorization was later reduced to $63,000, and payment authorization No. 17 was approved by USPS on June 12, 2002. App. 3 (Goddard Aff. ¶ 12), App. 79. Payment authorization No. 17 was the last certified request for payment authorization submitted by ATSIC to USPS. App. 3 (Goddard Aff. ¶ 12). Payment authorization No. 17 was also the last payment authorization approved by USPS. Id.

15. Prior to June 11, 2002, representatives of ATSIC and USPS disputed a variety of items regarding the Project, including, but not limited to: (1) ATSIC's failure to complete the Project by the completion date of September 2, 2001; (2) the adequacy of ATSIC's staffing of the Project; (3) the lack of regularly updated construction schedules provided to USPS; (4) the amount of excess reprocurement costs from the AMC project and the manner in which excess

reprocurement costs from the AMC project would be paid by ATSIC; (5) the timing of approval of requested contract modifications by USPS; and (6) the timing of approval of payment authorizations by USPS. App. 3 (Goddard Aff. ¶ 13).

16. The parties entered into a settlement agreement regarding the excess reprocurement costs for the AMC project. App. 3 (Goddard Aff. ¶ 14), App. 94. This settlement agreement was signed by Vincent Vento, CEO of ATSIC, and Jerry Goddard on behalf of USPS. App. 94. Mr. Vento's signature is dated June 11, 2002, and Jerry Goddard signed the settlement agreement on June 19, 2002. Id. The settlement agreement provides, in part, that the termination for default of the AMC project would be converted to a mutual termination, that ATSIC and USPS "agree that [ATISC] will not be due any compensation and will in fact owe the Postal Service the sum of $52,137.10 which will be withheld from" the P&DC Project. Id. In addition, the parties memorialized the $52,137 offset to the P&DC contract in Modification No. 10 to the P&DC contract. App. 3 (Goddard Aff. ¶ 14), App. 96. The parties also memorialized the amount of the offset in Modification No. 2 to the AMC contract. App. 4 (Goddard Aff. ¶ 14), App. 98.

17. In June, 2002, ATSIC and USPS executed Modification No. 11 to the P&DC contract, which was described as "Settlement of Issues through ATC proposed mod 9 and USPS issued mod 10 & 11." (underscoring in original). App. 4 (Goddard Aff. ¶ 15), 100. This modification established a revised completion date for the contract of July 15, 2002. App. 4 (Goddard Aff. ¶ 15), 100. The typed portion of Modification No. 11, showing a revised completion date of June 30, 2002, was based upon the date ATSIC had earlier requested as the revised completion date. App. 4 (Goddard Aff. ¶ 15). Some time prior to the execution of Modification No. 11, ATSIC requested that the revised completion date be changed to July 15,

2002. Id. Thereafter, the parties struck the June 30, 2002 revised completion date and instead agreed to make the revised completion date July 15, 2002. Id. Modification No. 11 also states, "By signing this mod, both parties agree that all issues through mod 11 and 5/29/02 are mutually agreed to and will not be made a part of any claim arising out of or related to either contract 123125-00-B-3153 or 123125-00-B-3154." App. 100. Jerry Goddard signed Modification No. 11 on behalf of USPS on June 20, 2002. App. 4 (Goddard Aff. ¶ 15), 100. Mr. Vento signed Modification No. 11 on behalf of ATSIC, and his signature is dated June 11, 2002. App. 4 (Goddard Aff. ¶ 15), App. 100. ATSIC did not make any requests to USPS for modification, other than the request for an extension of time submitted on July 17, 2002, after Modification No. 11. App. 4 (Goddard Aff. ¶ 15).

18. As of July 15, 2002, ATSIC had not completed the Project. App. 4 (Goddard Aff. ¶ 16), App. 11B (Stuhl Aff. ¶ 11).

19. By letter dated July 15, 2002, from Jerry Goddard to Vincent Vento, USPS issued its third show cause to ATSIC ("Third Show Cause"). App. 4 (Goddard Aff. ¶ 17), App. 102. The Third Show Cause states, in part,

> The Notice to Proceed on the above referenced project was issued on January 15, 2001, with a 230-day construction term. The revised completion date is now July 15, 2002.
>
> Since you have failed to perform on contract 123125-00-B-3154 with respect to:
> * Failure to compete project per revised completion date
>
> Therefore the US Postal Service is considering terminating said contract pursuant to Clause B-13 (TERMINATION FOR DEFAULT). Pending a decision in this matter, it will be necessary to determine whether your failure to perform arose out of causes beyond your control and without fault or negligence on your part.

App. 102. The Third Show Cause further states that ATSIC would have ten days to respond. ATSIC received this letter on or before July 19, 2002. Id.

20. ATSIC responded to the Third Show Cause by letter dated July 19, 2002, from Gregory Warren on behalf of ATSIC to Jerry Goddard. App. 104-09. In ATSIC's July 19, 2002 letter, ATSIC requested an extension of time to complete the project to August 16, 2002. App. 104. ATSIC claimed that it was delayed 37 days due to rain on 37 of the past 48 days. Id. In addition, ATSIC claimed that it was delayed 24 days for lack of cash flow. Id.

21. On July 24, 2002, Jerry Goddard and Joseph Stuhl met with Jose Zamora to inspect the construction in progress for the Project. App. 11B (Stuhl Aff. ¶ 12). By letter dated July 25, 2002, from Joseph Stuhl to Jerry Goddard, Mr. Stuhl provided a Field Investigation Report covering the 49-day period from June 6, 2002, through July 25, 2002. App. 11B (Stuhl Aff. ¶ 12), App. 113-16. The letter states, in part, "In general, both of my inspections revealed that very little progress has been made by ATC during the period covered by this report." App. 113. The letter also estimates that the access control system is only 75 percent complete and that the CCTV system is only 80 percent complete. App. 114.

22. At a meeting held at approximately 1:00 pm at the Project site on July 31, 2002, Jerry Goddard, on behalf of USPS, issued a stop work order to representatives of ATSIC, including Greg Warren and Jose Zamora. App. 4-5 (Goddard Aff. ¶ 19), App. 11B-11C (Stuhl Aff. ¶ 13), App. 111, 118. Other individuals present at this meeting included the project engineer, Joseph Stuhl, and Sgt. Perry P. Puglisi of the Postal Police Department. App. 4-5 (Goddard Aff. ¶ 19), App. 11B-11C (Stuhl Aff. ¶ 13), App. 118. Mr. Warren refused to sign receipt of the stop work order, therefore Sgt. Puglisi wrote on the stop work order that Mr. Warren refused to sign for

receipt. App. 4-5 (Goddard Aff. ¶ 19), App. 11B-11C (Stuhl Aff. ¶ 13), App. 111. ATSIC was not told by USPS to stop work prior to being given this stop work order on July 31, 2002. App. 4-5 (Goddard Aff. ¶ 19), Zamora Tr. 50-51. ATSIC had not completed the Project by July 31, 2002. App. 5 (Goddard Aff. ¶ 19), App. 11C (Stuhl Aff. ¶ 13).

23. By letter dated August 16, 2002, from Jerry Goddard to Vincent Vento, USPS terminated ATSIC for default. App. 5 (Goddard Aff. ¶ 20), 121-22. The letter states that the termination is based upon, but not limited to the following:

> * Contract is delinquent; Contract completion date is July 15, 2002.
> * The progress on the project is not satisfactory.
> * The project is not adequately manned.

App. 121.

24. By letter dated July 31, 2003, from Jerry Goddard to ATSIC, USPS informed ATSIC that USPS calculated excess reprocurement costs to be $683,404.69. App. 5 (Goddard Aff. ¶ 21), App. 124-26.

25. By letter dated September 26, 2003, from Jerry Goddard to Vincent Vento, USPS issued its final decision with respect to excess reprocurement costs for the project, demanding payment in the amount of $683,404.69 for excess reprocurement costs. App. 5 (Goddard Aff. ¶ 22), App. 128-30.

26. International is not a party to any agreement with USPS regarding the Project. App. 6 (Goddard Aff. ¶ 23). International did not enter into a take over agreement with respect to the Project, and International did not otherwise take over completion of the project. Id. International has not financed the completion of the project under any performance bond. Id. International did

not request that USPS withhold payment from ATSIC prior to USPS's approval and payment of any progress payments or other payments to ATSIC. Id.

27. "Clause B-80 of the USPS Purchasing Manual," identified by plaintiffs in paragraph 18.3 of the second amended complaint, is not a part of the P&DC contract. App. 6 (Goddard Aff. ¶ 24). A true and correct copy of relevant portions of the P&DC contract is provided as exhibit A. Id., App. 13-41.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Michael J. Dierberg
MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Class. Unit 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Phone: (202) 353-0536
Fax: (202) 305-7643

April 28, 2006

Attorneys for Defendant