Exhibit B

ATLANTA FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

October 3, 2000

Advanced Technology Systems Integrators Corp.
9100 S. Dadeland Blvd. Ste. 907
Miami, FL 33156-7815

RE: Miami, FL - GMF
Security and Access Control System
Contract # 123125-00-B-3154

This is your **FORMAL NOTICE TO PROCEED** with the work covered under referenced contract as of January 15, 2001.

In accordance with the terms and conditions contained in your contract, the work will be completed within 230 **calendar days** after receipt, with the completion date **established as September 2, 2001.**

Sincerely,

W. Jerry Goddard
Contracting Officer

**Receipt of Notice to Proceed is acknowledged:**

**Advanced Technology Systems Integrators Corp.**

10/16/00
**Date**

cc: **Manager ASO**
**Postmaster**
**A/E, Jose E. Blanco Architect, 8490 SW 116 Street, Miami, FL 33156-4345**
**File**

4000 DEKALB TECHNOLOGY PARKWAY BLDG 300 - SUITE 300
ATLANTA GA 30340-2799
(770) 454-0629
FAX: (770) 454-0608

Exhibit C

ATLANTA FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

CERTIFIED MAIL
7000 1530 0003 1123 2277

August 2, 2001

Mr. Vincent Vento
Advanced Technologies Systems Integrators
9100 S. Dadeland Blvd. Ste. 907
Miami, FL 33156-7815

RE: Contract 123125-00-B-3154
Miami, FL GMF - Security and Access Control System

Dear Mr. Vento:

The Notice to Proceed on the above referenced project was issued on January 15,2001, with a 230 day construction term and a contract completion date of September 2, 2001. As of your last pay request on June 25, 2001, you were at 38% complete.

This letter is to notify you that the Postal Service considers your failing to adhere to the approved project schedule and not providing submittals on a timely basis, a condition that is endangering performance of the contract in accordance with its terms. Therefore, unless such condition is cured or you can provide information explaining how the project might be brought back on schedule, within ten (10) days after the receipt of this letter, the Postal Service may terminate subject contract for default under the provisions provided in h.6 Termination for Default (clause B-13).

If you have questions regarding this issue, please contact Jerry Goddard at (770) 454-0629.

Sincerely,

Ronald J. Grzymala
Contracting Officer

Cc International Fidelity Insurance Company
1211 N. Westshore Blvd. #607
Tampa, FL 33607-4622
PPB: 10-03195-0

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

7000 1530 0003 1123 2277

Postage $
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees

Postmark Here

Sent To MR. VINCENT VENTO
ADVANCED TECHNOLOGIES SYSTEMS INTEGRATORS
Street, Apt. No.; or 9100 S. DADELAND BLVD. STE. 907
City, State, ZIP+4 MIAMI, FL 33156-7815

PS Form 3800, May 2000 See Reverse for Instructions

Exhibit D

FACILITIES SERVICE OFFICE
BLDG 300 - SUITE 300
4000 DEKALB TECHNOLOGY PARKWAY
ATLANTA GA 30340-2799

UNITED STATES POSTAL SERVICE

January 4, 2002

Certified Mail 7000 1530 0003 1123 0181
Return Receipt Requested

Mr. Vince Vento
Advanced Technology Systems Integrators
9700 S. Dadeland Blvd. Ste. 907
Miami, FL 33156-7815

RE: Miami, FL -GMF – Security and Access Control System
Contract #: 123125-00-B-3154

Dear Mr. Vento:

The Notice to Proceed on the above referenced project was issued on January 15, 2001, with a 230-day construction term and a contract completion date of September 2, 2001.

Since you have failed to perform on contract 123125-00-B-3154 with respect to timeliness of submittals and failing to meet the contract completion date required by the terms thereof, the US Postal Service is considering terminating said contract pursuant to Clause B-13 (TERMINATION FOR DEFAULT). Pending a decision in this matter, it will be necessary to determine whether your failure to perform arose out of causes beyond your control and without fault or negligence on your part. Accordingly, you are hereby afforded the opportunity to present, in writing, any facts bearing on the question to Ronald J. Grzymala, 4000 DeKalb Technology Parkway, Bldg. 300, Ste. 300, Atlanta, GA 30340-2799, within ten (10) days after receipt of this notice. Your failure to present any excuses within this time may be considered as an admission that none exist. Your attention is invited to the respective rights of the contractor and the Postal Service under Clause B-13 (TERMINATION FOR DEFAULT) and the liabilities that may be invoked in the event a decision is made to terminate for default of the contractor.

Any assistance rendered to you under this contract or acceptance by the Postal Service of delinquent goods or services hereunder, will be solely for the purpose of mitigating damages and is not to be construed as an intention on the part of the Postal Service to condone any delinquency, or as a waiver of any rights the Postal Service may have under subject contract.

At this time the Project is in liquidated damages of $100/day.

Ronald Grzymala
Contacting Officer

CC: International Fidelity Insurance Company
1211 N. Westshore Blvd #607
Tampa, FL 33607-4622
Attn: Frank Whelan, Bond #: SEIFSU0270990

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

Miami Fl GMF Security Access Control System
Cont # 123125-00-B-3154

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To
Mr. Vincent Vento, Advanced Tech
Street, Apt. No.; or PO Box No.
Systems Integration, 9700 S. Dadeland Blvd., Ste 907, Miami Fl 33156-7815
City, State, ZIP+4

See Reverse for Instructions

7000 1530 0003 1123 0181

Exhibit E

Surety Bond ... 904

**International Fidelity**
INSURANCE COMPANY

March 2002

Project Manager,
United States Post Office
2203 N Lois Ave
Tampa Fl 33807-7118

| | |
|---|---|
| Bond No. | 0270990 |
| Principal: | Advanced Technology Systems Interators Corps |
| Project: | #123125-00-B-3154, Security Up Grade at Main Postal Facility Bldg 300 |
| Amount: | $1,308,990.00 |

The information requested below is needed to document our files with the current job status and allow us to be in a position to *properly service all parties involved.* Please provide the information requested and return to our office via fax to (813) 281=2943.

| | | |
|---|---|---|
| **If the contract has been completed:** | Final Contract Price: | $ |
| | Date Work Completed & Accepted: | |
| **If the work is still in progress:** | Current Contract Amount: | 1,356,961.14 |
| | Probable Date of Completion: | WHO KNOWS! |
| | Amount paid to date: | $ 1,005,718.07 |

**General Information:**

| | | |
|---|---|---|
| Were/Are subs & suppliers paid timely? | { } Yes | { ✓ } No |
| Is the work satisfactory to date? | { } Yes | { ✓ } No |
| Is the job progressing on schedule? | { } Yes | { ✓ } No |
| Would you use them again on future projects? | { } Yes | { ✓ } No |

Additional Comments: CONTRACT Completion DATE IS 9-15-01 LIQUIDATED DAMAGES & PROJECT IS IN DANGER OF BEING TERMINATED IF WORK DOES NOT PROCEED.
WE HAVE ASK FOR A NEW SCHEDULE BUT AS USUAL HAVE NOT Been Provided Anything.

Please do not hesitate to contact our office should you have any questions or wish to discuss this request. Thank you for your time and attention in this regard.

Name: JERRY GIORDANO
Phone #: 770-454-0629

Title: CONTRACTING OFFICER
Date: 3-12-02

Exhibit F

SEC

March 25, 2002

Mr. W. Jerry Goddard, R.A.
Architect/Project Manager
United States Postal Service
Facilities Service Office
Building 300 - Suite 300
4000 DeKalb Technology Parkway
Atlanta, Georgia 30340-2799

EXHIBIT
24 for ID
lg 10-11-05

# FIELD INVESTIGATION REPORT

Project: U. S. Postal Service - Process and Distribution Center (P&DC)
Facility and Employee Security Upgrades
City of Miami, Florida
SEC Project No. USPS-0101

Dear Mr. Goddard,

Please accept this letter as confirmation that Stuhl Engineering Consultants, Inc. (SEC) attended a meeting and performed an interim inspection of the construction at the above referenced project site. On Thursday, March 21, 2002, Mr. Jerry Shoib and I were present at the site to meet with members of Advanced Technologies Systems Integrators Corp. (ATC) and to inspect the construction in progress. The following is offered to document the events of our meeting and my inspection and to forward our recommendations for your consideration. In general, the contractor has made no progress at this facility from the time of our inspection on January 24, 2002.

The purpose of the meeting was to review the project completion schedule proposed by ATC for the above referenced project and to discuss the project in general. Mr. Greg Warren opened the meeting by explaining his new position within ATC and informed us that he and Mr. Jose' Zamora have been evaluating their position relative to this project. Mr. Warren stated that ATC will require, approximately, two (2) more months to complete their work at this facility.

Mr. Shoib and I stressed the need to secure this facility. We directed the contractor to make his main effort the gates, fencing and Access Control System (ACS) as it relates to the gates. Mr. Warren informed us that the asphalt paving would begin on Monday, March 25, 2002, and that the gate installation would begin on Wednesday, March 27, 2002. Mr. Shoib specifically instructed ATC that all work which would involve an entrance to be shut-down should be scheduled with Mr. Joseph Giambrone, the Manager of Maintenance at this facility. The telephone number for Mr. Giambrone is 305-470-0282 and his fax number is 305-470-0888.

Stuhl Engineering Consultants, Inc.
1860 Anzle Avenue • Winter Park, Florida 32789 • Telephone (407) 645-5815 • Facsimile (407) 645-5812

SEC



During our meeting, ATC presented me with a packet of information containing letters of response to the claims made by SEC regarding the monies due the U. S. Postal Service for the work which was not completed on the Air Mail Center (AMC) project. The letters of response prepared by ATC, basically, request that the dollar amounts be reduced and provide their justifications for a reduction in the amounts defined by SEC in our three (3) letters. SEC will review the items provided in the ATC package and we will issue a letter of response to each items.

*Electrical Observations and Recommendations:*

My inspection revealed that minimal progress has been made from the date of our last inspection report dated February 28, 2002. ATC has not been staffing this project, as confirmed by Captain Hanson of the U. S. Postal Police and Mr. Jerry Shoib and Mr. Joseph Giambrone at this facility. I am scheduled to return to this site on Thursday, March 28, 2002 to, again, inspect the work in progress and meet with ATC to discuss the letters of response from ATC for the AMC project.

I hope that the information contained in this report has been useful in summarizing the events and observations of our meeting and my inspection at this facility. Please let me know if you have any questions about the items in this report.

Very truly yours,

Joseph F. Stuhl, III
JFS/ash

CC: Jose' Zamora, ATC

F:\OFFICE\DATA\U. S. POSTAL SERVICE\2001\0101\INSPECTION-7

Exhibit G

SEC

April 4, 2002

Mr. W. Jerry Goddard, R.A.
Architect/Project Manager
United States Postal Service
Facilities Service Office
Building 300 - Suite 300
4000 DeKalb Technology Parkway
Atlanta, Georgia 30340-2799

# FIELD INVESTIGATION REPORT

Project: U. S. Postal Service - Process and Distribution Center (P&DC)
Facility and Employee Security Upgrades
City of Miami, Florida
SEC Project No. USPS-0101

Dear Mr. Goddard,

Please accept this letter as confirmation that Stuhl Engineering Consultants, Inc. (SEC) attended a meeting and performed an interim inspection of the construction at the above referenced project site. On Tuesday, April 2, 2002, I was present at the site to meet with you and members of Advanced Technologies Systems Integrators Corp. (ATC), the contractor. The following is offered to document the discussions which took place in our meeting, to document the observations made during our inspection and to forward our recommendations for your consideration. In general, the contractor has made very little progress at this facility from the time of our inspection on January 24, 2002.

The purpose of our meeting was to review the status of this project and the completion schedule proposed by ATC, to discuss the project in general, and to discuss the remaining monies for this project and the Air Mail Center (AMC) project. Mr. Greg Warren of ATC requested that we discuss the credits, overpayments and completion costs associated with the AMC. These items are defined in the three (3) letters authored by SEC and dated January 29, 2002. The following represents the conclusions and agreements reached:

*Letter - Estimated Costs to Complete Construction - Dated 01/29/02*

Item #1 - Upon completion of the work at the AMC by Tri-state Life Safety and Electric System, Inc. (TLS), and with the written permission of the U. S. Postal Service, we will provide ATC with any documentation available for their perusal.

SEC



Item #2 - Mr. Warren of ATC stated that he would be providing us with a letter from Doortech Sales and Service, Inc. (DSS) to remove the cost associated with this item. We look forward to receiving this letter.

Item #3 - Upon completion of our work at the AMC, and with the written permission of the U. S. Postal Service, SEC will provide ATC with any documentation available for their perusal.

*Letter - Report of Monies Over-Paid to ATC - Dated 01/29/02*

Item #1 - ATC requested that the status of this item be changed to "Value Engineering" and that their recently obtained quotation from The Winsted Corporation be used to establish the value of this item. ATC has provided us with a quotation for the console sections. The quotation provided reflects a cost of four thousand, nine hundred and ninety dollars seven cents ($4,990.07). With contractor's twenty-percent (20%) mark up, we estimate the total cost for this item at, approximately, five thousand, nine hundred eighty-eight dollars and eight cents ($5,988.08). SEC recommends that Mr. Goddard accept the new cost for this item based on the quotation provided. SEC does not recommend that the status of this item be change from being "Over-Paid" to "Value Engineering" because no direction was given to proceed, no credit was received and there was no benefit to the U. S. Postal Service. Mr. Goddard will notify us of his decision after consultation with members of his staff.

Item #2 - ATC requested that the status of this item be change to "Value Engineering" and reduce the cost to a total of two thousand, four hundred forty dollars ($2,440.00). Although we never issued direction for this change to be made, the change has not effected the operation of the CCTV system and there is some benefit to the U. S. Postal Service in the form of easier maintenance. SEC recommends that Mr. Goddard accept the change in status to "Value Engineering" and accept a total cost of two thousand, four hundred forty dollars ($2,440.00) for this item. Mr. Goddard will notify us of his decision after consultation with members of his staff.

Item #3 - SEC requested that we contact Mr. Scott Elliott of Hirsch Electronics to determine if there were a need for the additional Access Control System (ACS) Server Software associated with this item. Mr. Elliott informed us that no additional software was required. This item and its associated cost stand as reported by SEC in this letter.

*Letter - Report of Credits Due - Dated 01/29/02*

Item #1 - ATC stated that they are willing to accept the estimate established in the SEC report for a total credit due of five thousand dollars ($5,000.00).

Item #2 - ATC has provided us with a copy of their Change Order No. 2 which identifies a total credit of three thousand; eight hundred twenty-six dollars and twenty-five cents ($3,826.25) for this item. SEC recommends that Mr. Goddard accept the documentation provided by ATC and that a total of one thousand, nine hundred thirteen dollars and twelve cents ($1,913.12) be received for this item. Mr. Goddard will notify us of his decision after consultation with members of his staff.

SEC



Item #3 - Mr. Warren stated that it was the position of ATC that they provided equipment equal to the specified products and that ATC was entitled to use one of the four (4) manufacturers listed in Section 13701, 2.1 of the project specifications. SEC stated that, although use of the Hirsch equipment was directed by a higher authority within the U. S. Postal Service, a credit was due for the savings realized by ATC in their substitution of the less expensive equipment. Mr. Goddard will notify us of his decision after consultation with members of his staff.

During our meeting, Mr. Warren of ATC showed us a partial schedule for this project and we were given Pay Application No. 16 for our review. Mr. Warren stated that ATC was still in the process of assigning specific time lines to the tasks required to complete the work at this facility. We were not given a copy of the schedule nor a specific date for completion of the schedule. Mr. Warren confirmed that ATC will be finished within the two (2) months noted in the SEC "Field Investigation Report", dated March 25, 2002. Discussion of Pay Applications No. 16 included the modifications which have been approved and the need for SEC to return when the turn-stiles arrive. ATC will confirm the scheduled arrival date for the turn-stiles and notify SEC so that we may visually inspect them and approve the ATC pay application for this item. We adjourned to inspect the site and review the items requested in Pay Application No. 16.

*Electrical Observations and Recommendations:*

My inspection revealed that some progress is being made and that ATC appears to be increasing their staff at this facility. Our last inspection at this facility was on March 21, 2002, and this inspection shows an increase in activity and progress from that date. The following documents our specific observations and recommendations.

Item #1 It was observed that the contractor was beginning to install asphalt at Gates No. 1 and No. 2. We requested confirmation of the amount and type of asphalt to insure that enough of the correct type is being installed at each specific gate. Section 02743, 1.4 of the project specifications defines the requirements for submittals. It is our recommendation that ATC be required to provide confirmation, in the form of receipts, for the materials which were provided specifically for this project. We request that these receipts be faxed to our office for review prior to April 5, 2002.

Item #2 It was observed that the contractor was beginning to install poles for the fencing at Gates No. 1 and No. 2, and the fencing required along the west side of the Vehicle Maintenance Facility (VMF) parking area. Poles were being set in the ground and being made ready for the concrete base. Mr. Zamora of ATC stated that a concrete truck would be ordered when all of the pole bases were ready and that the curbs were framed. No schedule was given for this item.

Item #3 It was observed that the contractor has begun to activate the ACS at this facility. It was observed that several proximity card readers have been placed on-line, but the ACS computers have not been installed. In a later discussion with Mr. Zamora, I informed him of our decision to allow ATC to proceed with the purchase, set-up and installation of the ACS computers. The ACS installations I observed appear to be getting better and progress is being made on having this system operational. I

SEC



also informed Mr. Zamora that SEC would provide him with a list of items to aid him in the installation and programming of the ACS computers and access points. SEC requests that a specific meeting be scheduled with Mr. Jerry Shoib, Mr. Joseph Giambrone, Captain Kenneth Hanson, Mr. Zamora and myself to establish the door and gate grouping assignments and the levels of access for the ACS computers. SEC will contact Mr. Shoib, when he returns next week, to set a date for this meeting.

<u>Item #4</u> It was observed that the contractor has begun to install the lightning protection system for the existing poles at this facility. Mr. Zamora showed me where they have begun to install the grade mounted junction box for the ground rods.

<u>Item #5</u> It was observed that the contractor had not installed the batteries required for the Altronix maglock control cabinets. Mr. Zamora acknowledged that these batteries will be provided.

<u>Item #6</u> During our inspection of this facility, we observed that most of the work associated with Modification No. 2 was complete. The work associated with this modification includes the addition of a new pole mounted lighting fixture at the entrance to the BMEU area and installation of new conduit and conductors for reconnecting the existing and new lighting along the north end of this property. I observed that the new lighting fixture has not been completed and we were not able to observe an operational test of the lighting. This item needs to be completed prior to requesting additional money in future pay applications.

<u>Item #7</u> It was observed that most of the ACS proximity card readers have been installed and the contractor has corrected the mounting of the readers which were required to be flush mounted. There are a number of proximity card readers which have not been installed around the area of the maintenance office. Mr. Zamora stated that ATC will coordinate with the maintenance staff for the installations required in this area.

<u>Item #8</u> It was observed that the console is beginning to become covered in debris and dust from construction in the control room and the surrounding areas. We strongly recommend that the contractor provide a plastic cover over the console and its components to prevent damage to these items.

<u>Item #9</u> It was observed that the contractor has not begun installation of the air conditioning for the control room. This modification was approved and the work should be scheduled to avoid causing any damage to the console and its equipment as referenced in Item #8 above. Please provide SEC with a schedule for this event.

The contractor's Pay Application No. 16 was discussed during the above referenced inspection and all of the percentages were acceptable except those referenced below. ATC will change the following items, as required by SEC and resubmit.

Item #9 - Change from sixty-six percent (66%) to sixty percent (60%)

SEC



Item #13 - Change from eight-five percent (85%) to eighty percent (80%)
Item #18b - Change from fifty-nine percent (59%) to fifty percent (50%)
Item #19 - Change the percentage of this item to reflect the revised total of the percentages listed above.

I am scheduled to return to this site the week of April 8, 2002, to inspect the work in progress and observe the turn-stiles for this project. I hope that the information contained in this report has been useful in summarizing the events and observations of our meeting and my inspection at this facility. Please let me know if you have any questions about the items in this report.

Very truly yours,

Joseph F. Stuhl, III
JFS/ash

CC: Jose' Zamora, ATC
Greg Warren, ATC
Jerry Shoib, USPS
Inspector Eugene Payton, USPS