Exhibit W

ATC INTERNATIONAL

File "Post Office"

ARCHITECTS OF SECURITY & INTEGRATION

This letter was not sent because I was told the same day as this letter that Vinco cancelled the check to Hirsch after it was sent overnight to them. It was not agreed by me.

August 2, 2002

Mr. Frank Whelan
International Fidelity Insurance Co.
One Newark Center
Newark, NJ 07102

Via: Overnight Express and Fax

Re: Bond No. SEIFS00270990
United States Post Office (GMF Security and Access Control) Miami, FL
Contract No. 123125-00-B-3154

Dear Mr. Whelan:

As you may know we are working diligently to complete the above referenced project. More importantly, please be aware that we also managed to secure a settlement agreement (see attachment "A") on the first contract (AMC Security Contract No. 123125-00-B-3153). It is significant that the USPS changed the previous termination to a mutual termination and we resolved many disputed cost items that are part of the current contract referenced above. The settlement process was predicated on a good faith understanding, between the contracting officer Mr. Jerry Goddard and myself, that in order for ATC to complete the project we needed to be paid quickly without the strict guidelines used previously by the USPS during the payment application process. The USPS did not live up to this unwritten verbal understanding and they continued to severely restrict the flow of cash and payment to our company.

As you know we received a termination-warning letter on 7-15-02 (see attachment "B") without any other warnings since our settlement agreement executed on 6-11-02. In the 7-15-02 letter the USPS requested that we respond within ten days about why we were not finished. We did so accordingly with our letter dated 7-19-02 (see attachment "C") citing the delay was caused by the lack of funding by the USPS and extreme bad weather conditions for the past one and a half months. We were then asked to attend a meeting at the jobsite on 7-31-02 at 1:00pm. Mr. Goddard (USPS) and Joseph Stuhl (SEC) arrived with the postal police and handed us a letter, dated 7-15-02 (see attachment "D"), to stop work. They took possession of all the materials stored at the jobsite, our badges and asked us to leave the premises. Mr. Goddard informed us he will be issuing a final termination letter on 8-5-02.



EXHIBIT
22 for TB
10-11-05

App. 118

In a private conversation, whereas Mr. Goddard called me on my cell phone I requested that he reconsider the termination based on the facts mentioned in my letter dated 7-19-02. I reiterated the fact that they never met the intent of the agreement, which was to expedite cash flow and payments to our company. He didn't give me any response one way or the other in our conversation, but I left it at please reconsider your course of action.

In addition I made it clear to him that if we didn't intend to finish the project we wouldn't have maintained manpower on a daily overtime basis and we wouldn't have settled certain critical accounts necessary to complete the project, like with Hirsch Electronics dated 6-27-02 (see attachment "E").

At this point, I am doubtful they will reconsider their position. We wanted to keep you informed with the latest events. We sincerely believe that the actions by the USPS and its consultant are inappropriate and inconsistent with the intent of the settlement agreement and with fair business practices.

If you require any further information please contact us.

Sincerely,

Gregory W. Warren
Chief Operating Officer
ATC International Holdings, Inc.

Cc: Vince Vento
Gail Scopinich
Steve Bodnar

Exhibit X

ATLANTA FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

CERTIFIED MAIL
7001 2510 0000 9713 2282

August 16, 2002

Mr. Vincent Vento
Advanced Technology Systems Integrators
9700 S. Dadeland Blvd. Ste. 907
Miami, FL 33156-7815

RE: Miami P & DC Security & Access Control
Contract 123125-00-B-3154- Project H54096

Dear Mr. Vento:

The Postal Service under Clause B, Contracting Officer (Termination for Default) hereby terminates Contract 123125-00-B-3154 for default effective July 31, 2002. This termination is based on but not limited to the following:

- Contract is delinquent; Contract completion date is July 15, 2002.
- The progress on the project is not satisfactory.
- The project is not adequately manned.

In addition you may be held responsible for all additional costs the Postal Service incurs in completing the project and any other damages. The Postal Service also reserves all rights and remedies provided by law under the contract.

A letter was sent to you on July 15, 2002, notifying you of the potential for Termination for Default on this contract, and requesting an explanation of your failure to perform per the contract requirements. The explanation offered by ATC, Inc. was not an acceptable cause for delay. Progress on the project was less than acceptable since the last inspection.

Any assistance rendered to you under this contract or acceptance by the Postal Service of delinquent goods or services hereunder will be solely for the purposes of mitigating damages. It is not be construed as an intention on the part of the Postal Service to condone any delinquency, or as a waiver of any rights the Postal Service may have under subject contract.

You may appeal this decision to the Postal Service Board of Contract Appeals. If you decide to appeal, mail or otherwise furnish written notice (preferably in triplicate) to the Contracting Officer within 90 days from the date you receive this decision. The notice should reference this decision and indicate an appeal is intended. Instead of appealing to the Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims within twelve (12) months from the date you receive this decision.

In taking an appeal to the Board of Contract Appeals, you may include in your notice of appeal an election to proceed under the Board's Accelerated procedure, which provides for a decision within approximately 180 days. If you do not make an election in the notice to appeal, you may do so with written notice any time thereafter.

Sincerely,

Jerry Goddard
Contracting Officer

Cc: Frank Whelan
International Fidelity Insurance Co
Bond No. SEIFSU0270990
One Newark Center
Newark, NJ 07102

Richard Sexton
Lovett Silverman Construction Consultants, Inc.
320 East South Street, Suite 160
Orlando, FL 32801-3508

DEPOSITION EXHIBIT
12
9-21-05 TL
PENGAD 800-631-6989

TERMINATION EJ 936-521-2

Is your RETURN ADDRESS completed on the reverse side?

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "*Return Receipt Requested*" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

VINCENT J. VENTO
ADVANCED TECH SYS INTEGRATORS CORP
3500 N MIAMI AVE
MIAMI FL 33127-3112

4a. Article Number
7001 2510 0000 9713 22

4b. Service Type
☐ Registered ☑ Certified
☑ Express Mail ☐ Insured
☐ Return Receipt for Merchandise ☐ COD

7. Date of Delivery
8/30/02

5. Received By: (*Print Name*)

8. Addressee's Address (*Only if requested and fee is paid*)

6. Signature: (*Addressee or Agent*)
X M. Kozmitzer

PS Form **3811**, December 1994 Domestic Return Receipt

**U.S. Postal Service**
# CERTIFIED MAIL RECEIPT
***(Domestic Mail Only; No Insurance Coverage Provided)***

7001 2510 0000 9713 2282

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here
8/16/02

Sent To
MR. VINCENT VENTO
Street, Apt. No.; or PO Box No.
ADVANCED TECHNOLOGY SYS INTEGRATORS
9700 SOUTH DADELAND BLVD. STE. 907
City, State, ZIP+4
MIAMI, FL 33156-7815

PS Form TERMINATION Instructions

Exhibit Y

SOUTHEAST FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

July 31, 2003

RETURN RECEIPT

Advanced Technology Systems Integrators
3500 N. Miami Avenue
Miami, FL 33127-3112

Attn: Vince Vento

On July 31, 2002, your contract no. 123125-00-B-3154 with the United States Postal Service, for the Security and Access Control System at the Miami, FL General Mail Facility was terminated for default.

Since that time, we have procured another contractor to complete the work. As the project is in the final stages of completion, we are now able to assess the total cost of the reprocurement effort and completion of the construction.

The reprocurement and completion cost are as follows:

| | |
|---|---|
| Over-charge for CCTV equipment | $ 41,498.21 |
| Labor and Materials to complete the original contract | $490,368.94 |
| Cost of USPS Postal Police to provide security due to removal of the perimeter gates by ATC | $209,329.64 |
| Additional engineering cost due to extended construction management time and time and effort to inventory existing conditions of the ATC contract work. | $110,000.00 |
| Cost for a warranty on the original ATC work, by the completing contractor. | $ 49,742.51 |
| TOTAL REPLACEMENT COST | $900,939.30 |
| Total remaining in original ATC contract (Amount deducted from contract at termination) | ($217,534.61) |
| TOTAL OWED TO USPS BY ATC | $683,404.69 |

1735 North Brown Road, Suite 200
Lawrenceville, GA 30043-8153

Please remit payment to the United States Postal Service Disbursing Officer at our address at 1735 North Brown Road, Suite 200, Lawrenceville, GA 30043-8153 within 14 days. If you fail to remit payment within the time indicated, the United States Postal Service will take actions against ATC to collect these funds.

If you have any questions regarding this issue, please contact me at 678-442-6029.

Sincerely,

Jerry Goddard
Contracting Officer

Cc: Frank Whelan
International Fidelity Insurance Co.
Bond No. SEIFSU0270990
One Newark Center
Newark, NJ 07102

Richard Sexton
Lovett Silverman Construction Consultants, Inc.
320 East South Street, Suite 160
Orlando, FL 32801-3508

Is your RETURN ADDRESS completed on the reverse side?

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "*Return Receipt Requested*" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:
Advanced Technology
System Integrators
ATTN: Vince Vento
3500 N. Miami Ave.
Miami, FL 33127-3112

MAIL BOXES ETC
4611 S. UNIVERSITY DR
DAVIE, FL 33328
(954) 680-9904

4a. Article Number
7001 2510 0000 9713 5917

4b. Service Type
☐ Registered ☐ Certified
☐ Express Mail ☐ Insured
☒ Return Receipt for Merchandise ☐ COD

7. Date of Delivery
8/1

5. Received By: *(Print Name)*

8. Addressee's Address *(Only if requested and fee is paid)*

6. Signature: *(Addressee or Agent)*
X

PS Form **3811**, December 1994 Domestic Return Receipt

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7001 2510 0000 9713 5917

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here
7/31/03

Sent To
Advanced Tech Systems Integrators
Street, Apt. No.; or PO Box No. ATTN: Vince Vento
3500 N. Miami Ave.
City, State, ZIP+4
Miami, FL 33127-3112

PS Form 3800, January 2001 See Reverse for Instructions

Exhibit Z

SOUTHEAST FACILITIES SERVICE OFFICE

UNITED STATES POSTAL SERVICE

September 26, 2003

RETURN RECEIPT
# 7001 2510 0000 9713 7102

Mr. Vincent Vento
Advanced Technology Systems Integrators
3500 N. Miami Avenue
Miami, FL 33127-3112

Re: Miami P&DC Security & Access Control
Contract 123125-00-B-3154 Project H54096

Dear Mr. Vento:

The Postal Service under Clause B, Contracting Officer (Termination for Default), terminated your Contract 123125-00-B-3154 for default effective July 31, 2002. This termination was based on but not limited to the following:

- Contract is delinquent; Contract completion date was July 15, 2002.
- The progress on the project was not satisfactory.
- The project was not adequately manned.

At that time you were notified that you may be held responsible for all additional costs the Postal Service incurred in completing the project and any other damages. The Postal Service also reserved all rights and remedies provided by law under the contract.

The Postal Service has calculated the additional cost of completion of this project to be $683,404.69 above the funds remaining in your original contract. You were previously notified of this cost by my July 31, 2003 letter requesting payment from Advanced Technology Systems Integrators. At this time we have not received payment therefore we again demand payment of the $683,404.69.

Please remit payment to the United States Postal Service Disbursing Officer at our address at 1735 North Brown Road, Suite 200, Lawrenceville, GA 30043-8153. If you fail to remit payment, the United States Postal Service will take actions against ATC to collect these funds.

1735 N. BROWN ROAD, SUITE 200
LAWRENCEVILLE, GA 30043-8153
678-442-6001
FAX: (678) 442-6078

This is the final decision of the Contracting Officer pursuant to the Contract Disputes Act of 1978 and the clause of your contract entitled Claims and Disputes.

You may appeal this decision to the Postal Service Board of Contract Appeals by mailing or otherwise furnishing written notice (preferably in triplicate) to the Contracting Officer within 90 days from the date you receive this decision. The notice should identify the contract by number, reference this decision, and indicate that an appeal is intended.

Alternatively, you may bring an action directly in the United States Court of Federal Claims within twelve (12) months from the date you receive this decision.

If you have any questions regarding this issue, please contact me at 678-442-6029.

Sincerely,

Jerry Goddard
Contracting Officer

JG/yt

Cc: Frank Whelan
International Fidelity Insurance Co.
Bond No. SEIFSU0270990
One Newark Center
Newark, NJ 07102

Richard Sexton
Lovett Silverman Construction Consultants, Inc.
320 East South Street, Suite 160
Orlando, FL 32801-3508

Helen H. Albee
Henrichsen Siegel Moore
200 East Forsyth Street
Jacksonville, FL 32202

1735 N. Brown Road, Suite 200
Lawrenceville, GA 30043-8153
678-442-6001
FAX: (678) 442-6078

is your RETURN ADDRESS completed on the reverse side?

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "*Return Receipt Requested*" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:
Vincent Vento
Advanced Tech Systems
3500 N. Miami Ave.
Miami, FL 33127-3112

4a. Article Number
7001 2510 0000 9713 7102

4b. Service Type
☐ Registered ☑ Certified
☐ Express Mail ☐ Insured
☐ Return Receipt for Merchandise ☐ COD

7. Date of Delivery

MAIL BOXES ETC.
4611 S. UNIVERSITY DR.
DAVIE, FL 33328
(954) 680-9904

5. Received By: *(Print Name)*

8. Addressee's Address *(Only if requested and fee is paid)*

6. Signature: *(Addressee or Agent)*
X

PS Form **3811**, December 1994 Domestic Return Receipt

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7001 2510 0000 9713 7102

| | | |
|---|---|---|
| Postage | $ | 9/29 |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

*Sent To* Vincent Vento - ATC
*Street, Apt. No.; or PO Box No.* 3500 N. Miami Ave.
*City, State, ZIP+4* Miami, FL 33127

PS Form 3800, January 2001 See Reverse for Instructions

Exhibit AA

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP.<br><br>and<br><br>INTERNATIONAL FIDELITY INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 03-1953C<br>(Senior Judge Margolis) |

**PLAINTIFF ADVANCED TECHNOLOGIES SYSTEMS INTEGRATORS CORP.'S AMENDED VERIFIED RESPONSES TO FIRST SET OF INTERROGATORIES**

Subject to and without waiving the General and specific Objections which were previously served, Plaintiff Advanced Technologies Systems Integrators, Inc. ("ATSIC"), pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims, submit the following responses to Defendant The United States of America's (the "Government") First Set of Interrogatories.

**GENERAL STATEMENT AND RESERVATION OF RIGHTS**

A. The information supplied in these Responses is not based solely upon the knowledge of Plaintiffs, but includes the knowledge of Plaintiffs' agents, representatives and, unless privileged, its attorneys.

B. Defendant's Interrogatories have been interpreted and answered in accordance with the Rules of the United States Court of Federal Claims, plain English usage, and to the extent not

specifically challenged by objection, the definitions and instructions included with the Interrogatories.

C. Plaintiff reserves the right to supplement these Responses in accordance with the Rules of the United States Court of Federal Claims.

D. No incidental or implied admissions are intended by any Response by Plaintiff to any Interrogatory. That the Plaintiff has responded to any Interrogatory is not an admission that Plaintiff accepts or admits the existence of any facts set forth or assumed by any such Interrogatory.

## RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 1:

Identify each day from May 1, 2002 to July 15, 2002 that plaintiff, any of its employees, or any other person (including but not limited to any subcontractor on the Project), was not able to perform necessary tasks on the Project due to Government conduct. For each day identified, please provide the following information: (a) the nature of the task; (b) the person or persons who were supposed to complete the task; (c) the conduct of the Government which hindered or delayed completion of the task; (d) when the task was actually completed.

**RESPONSE:**

The answer to this interrogatory may be derived or ascertained from the business records produced by ATSIC and the burden of deriving or ascertaining the answers is substantially the same for the party serving the interrogatory as the party served. Rule 33(d) RCFC. Subject to the previously served specific objections and the General Objections, Plaintiff states that ATSIC informed USPS on numerous occasions that it was experiencing difficulty performing the work

necessary to complete the Project due to the failure of the Government to make payments to ATSIC. The table, attached as **Exhibit A,** sets forth the dates of payment applications and the dates that payments were made by the Government. These data are extracted from documents previously produced to the Government (e.g. ATSIC No. 0828). It is apparent from these data that the Government effectively stopped funding the project in January, 2002, despite agreeing that the adjusted completion date was July 15, 2002. (ATSIC No. 0994). The Government's failure to make timely payment was a material breach of contract. ATSIC had difficulty obtaining materials necessary to complete the Project because suppliers were refusing to ship materials due to outstanding balances due.

INTERROGATORY NO. 2:

Identify all facts that support your contention that there was an understanding or agreement "that any delays in completion of work on the Project would not be grounds for default termination of the Contract by the United States."

**RESPONSE:**

Subject to the General Objections previously served, Plaintiff states that ATSIC was negotiating with the USPS to settle the issues arising out of the Air Mail Facility, Security Access and Control Project, Contract No. 123125-00-B-3153 ("AMF Project") during the first part of 2002. These negotiations were predicated on the representation that once the issues pertaining to the AMF Project were resolved, ATSIC would be permitted to complete the P& DC Project which may have included granting the necessary time extensions to complete the project. This is embodied in Modification No. 11. Thus, the delays would not be used as a basis for termination for default.

ATSIC relied on the USPS's representations to its detriment by entering into Modification No. 11 with USPS. Then, ATSIC was terminated for default by USPS for not completing the Project by July 15, 2002 rather than assessing liquidated damages and allowing ATSIC to complete.

On October 3, 2000, the Contracting Officer issued the Notice to Proceed setting forth a start date of January 15, 2001 and an original completion date of September 2, 2001, allowing 230 calendar days as the time of performance. (ATSIC No. 0566). During the course of the work numerous issues arose for which the contractor claimed an entitlement to an equitable adjustment in the time of performance. On June 20, 2002, the Contracting Officer extended the completion date on the project until June 30, 2002, allowing an additional 293 days to complete the work. See USPS Contract Modification No. M11. (ATSIC No. 0986). At some later date, the completion date was extended to July 15, 2002. See Jerry Goddard's July 15, 2002 Show Cause Notice (ATSIC No. 0994). During the period from September 2, 2001 (original completion date) through June 20, 2002, the Government failed to exercise its right to terminate the contract, thereby waiving its right to terminate the contract. On June 20, 2002, by extending the contract completion date to June 30, 2002, a mere ten (10) days later, the Government was either conceding that the project could be finished in approximately ten days or was evidencing an intention to extend the completion date to reflect actual job progress. It would have been an act of bad faith for the Government, on June 20, 2002, to extend the deadline to complete the work for a mere ten (10) days into the future in an attempt to revive its previously waived right to terminate the contract.

INTERROGATORY NO. 3:

Identify each request for modification that the United States failed to process properly, and identify all facts that support your contention that the United States failed to properly process the modification.

**RESPONSE:**

The answer to this interrogatory may be derived or ascertained from the business records produced by ATSIC and the burden of deriving or ascertaining the answers is substantially the same for the party serving the interrogatory as the party served. Rule 33(d) RCFC. Subject to the General and Specific Objections previously served, Plaintiff states as follows. From the beginning of the P & DC Project, a pattern emerged whereby SEC, USPS's representative, would perform Project inspections and there would be a tentative agreement with ATSIC regarding the percentage of work completed and the payment to be made by USPS. However, SEC would not agree at the time of the Project inspections to sign off on ATSIC's payment requisitions. Then, several days later, SEC would issue its Field Inspection Report which would decrease the percentage of work completed and bring up problems with the work. ATSIC's payment requisition would then be submitted for a lesser amount and would be paid by USPS after another delay of several days. This pattern impacted the modifications because the payments for the modifications would be included in ATSIC's original payment requisition. Thus, ATSIC would be performed additional work and the payment for this work would be substantially delayed.

The delays in payment severely impacted ATSIC throughout the Project and especially near the end of its involvement with the Project. ATSIC was unable to pay its subcontractors and

suppliers. As a result, materials were not supplied as needed and subcontractors stopped performing under their contracts with ATSIC.

Despite numerous requests for information, requests for change orders and requests for modifications during the period prior to June 20, 2002, the Government, by and through it authorized agents, failed and refused to properly address and resolve the requests until approximately June 20, 2002. See the June 19, 2002/June 20, 2002 Agreement of Settlement Between the Parties (ATSIC No. 0981) and the contemporaneously executed contract modifications.

<u>INTERROGATORY NO. 4</u>:

Identify all facts that support your assertion that "[t]he decision to terminate the Contract for default was not . . . free from outside influence."

**<u>RESPONSE</u>:** Subject to the General Objections set forth above, Plaintiff states as follows:

Jose A. Blanco was the original architect on the Project. Blanco hired SEC to perform the Project inspections. From the beginning of the Project, the relationship between ATSIC and SEC was strained to the point of being almost adversarial. Blanco served as a buffer between SEC and ATSIC.

However, in the Fall of 2001, Blanco was removed from the Project due to his indictment and subsequent conviction for Fraud involving his contracts with USPS. <u>USA v. Blanco</u>, United States District Court, Southern District of Florida, Case No. 2001cr964all. Following Blanco's removal, SEC was hired by USPS. ATSIC requested that USPS consider using a different engineering firm due to the adversarial relationship between SEC and ATSIC. ATSIC made this suggestion because it felt it would be in the best interests of the USPS and the Project to have a contractor and project

architect/engineering with a good working relationship. ATSIC was also concerned about SEC's close relationship with its competitor, Tri-State Life Safety. ATSIC felt that SEC would not let ATSIC complete the Project and would strongly recommend to USPS that Tri-State Life Safety be awarded the reprocurement contract. In fact, that is exactly what happened on the Project.

INTERROGATORY NO. 5:

Identify all facts that support your assertion in paragraph 26 of the amended complaint that the United States misled plaintiff.

**RESPONSE:**

Subject to the General Objections previously served, Plaintiff refers to its Response to Interrogatory No. 2. in response to this Interrogatory.

INTERROGATORY NO. 6:

Identify all facts that support your assertion that "the contract to complete the project included work not within ATSIC's original scope of work and/or included work which was not necessary to complete the work remaining the project."

**RESPONSE:** The answer to this interrogatory may be derived or ascertained from the business records produced by ATSIC and the burden of deriving or ascertaining the answers is substantially the same for the party serving the interrogatory as the party served. Rule 33(d) RCFC. Subject to the General Objections previously served, Plaintiff states as follows:

The United States Postal Services's contract with Tri-State Life Safety ("Tri-State") and all modifications to the original contract includes the following costs and/or scope of work which was not included in Plaintiff's contract:

1) the cost for replacing equipment which was stolen from the work site after the reprocurement contract was awarded to Tri-State;

2) the costs for the correction of design errors and deficiencies, i.e., the omitted graphic unit interface, numerous door closers, and additional signage necessary for safety;

3) the costs to provide labor and materials to incorporate the design changes to the gate required by Miami-Dade County Fire Rescue to allow its emergency vehicles to enter the facility;

4) the costs to provide labor and materials to repair and/or replace equipment damaged by lightning and/or vehicles while Tri-State was performing work on the Project.

The United States Postal Services's contract with Joe Erickson and all modifications to the original contract includes the following costs and/or scope of work which was not included in Plaintiff's contract:

1) the costs for the correction of design errors and deficiencies, i.e., the numerous omitted door closers, omitted badge reader posts, and additional signage necessary for safety; and

2) the costs to provide labor and materials to incorporate the design changes to the gate required by Miami-Dade County Fire Rescue to allow its emergency vehicles to enter the facility.

ATSIC specifically reserves the right to amend this response as discovery on this issue is continuing. The documents provided to date by the Government are insufficient to fully analyze the scope of work involved in Tri-State Life Safety's initial bid price and its final reprocurement contract price.

INTERROGATORY NO. 7:

Identify all facts that support plaintiff's sixth affirmative defense (promissory estoppel) in plaintiff's answer and affirmative defenses to defendant's counterclaim.

**RESPONSE:**

Subject to the General Objections previously served, Plaintiff refers to its Response to Interrogatory No. 2. in response to this Interrogatory.

INTERROGATORY NO. 8:

Identify all facts, aside from those identified in response to prior interrogatories, that in any way contributed to ATSIC's inability to complete the Project by the revised completion date, July 15, 2002.

**RESPONSE:**

The answer to this interrogatory may be derived or ascertained from the business records produced by ATSIC and the burden of deriving or ascertaining the answers is substantially the same for the party serving the interrogatory as the party served. Rule 33(d) RCFC. Subject to the General and Specific Objections previously served, ATSIC states as follows. ATSIC states that there were

delays associated with adverse weather conditions which impacted its ability to complete the Project by the revised completion date. ATSIC submitted a time extension request due to weather impacts.

On June 20, 2002, the Contracting Officer extended the completion date on the project until June 30, 2002. See USPS Contract Modification No. M11. (ATSIC No. 0986). By doing so the government effectively conceded that the project could be finished in approximately ten days. At some later date, the completion date was extended to July 15, 2002. See Jerry Goddard's July 15, 2002 Show Cause letter (ATSIC No. 0994). On July 15, 2002, the scheduled completion date, the Contracting Officer issued a Show Cause Notice. (0994) On the same day, July 15, 2002, the Contracting Officer issued a Stop Work order to the contractor. See Notice of Suspension. (ATSIC No. 1069). On July 19, 2002, ATSIC responded to the Show Cause Notice citing torrential rainfall and the government's failure to fund the project. (ATSIC No. 1061). On August 16, 2002, the Contracting Officer terminated the contract for default (issued a final decision) without providing the additional time that was properly requested on July 19, 2002. The contractor was clearly entitled to the requested adjustment in the time of completion because of weather delays and delays caused by the Government's failure to properly fund the project.

INTERROGATORY NO. 9:

Identify all other projects for which ATSIC performed work or was required to perform work from May 1, 2002 to July 15, 2002. For each project identified, briefly describe the project, when ATSIC started work on the project, when work was originally scheduled to be completed, and when the project was actually completed.

**RESPONSE:**

Subject to the General Objections previously served, after ATSIC stopped working on the AMC Project, the only project is was working on was the P & DC Project. It had not contracted for any new projects during May 1, 2002 through July 15, 2002.

INTERROGATORY NO. 10:

Identify any subsidiaries of ATSIC, any companies that have an ownership interest in ATSIC, and the companies under common ownership or control with ATSIC. The term "common ownership or control" includes companies in which Vincent J. Vento or a member of his immediate family directly or indirectly has more than a 10% ownership interest. For each company identified, state the relationship to ATSIC and the business that the company is engaged in.

**RESPONSE:**

ATSIC will respond only after the resolution of the specific and General Objections to this Interrogatory which were previously served.

INTERROGATORY NO. 11:

Identify all subcontractors who performed work on the Project or who entered into an agreement with ATSIC to perform work on the Project. For each subcontractor identified, describe the scope of work to be performed by the subcontractor, the date work was scheduled to commence, the date work was scheduled to be completed, and the date work by the subcontractor was actually completed.

**RESPONSE:**

Subject to the specific and General objections previously served, ATSIC responds that the following subcontractors were involved in the Project:

Doortech

GM Electric

Go For it Directional Drilling

Vicon Industries

Hirsch Electronics

By way of further response, ATSIC states that the answer to the remaining portions of this Interrogatory may be derived or ascertained from ATSIC's business records or from an examination, audit or inspection of such business records and the burden of deriving or ascertaining the answer is substantially the same for the Government as for ATSIC. Therefore, in accordance with Rule 33(d) of the Rules of the Court of Federal Claims, ATSIC shall make available for inspection and copying non-privileged business records responsive to this Interrogatory.

INTERROGATORY NO. 12:

Identify all loans or extensions of credit, including but not limited to lines of credit, to ATSIC that had a principal balance or available credit at any time between January 1, 2002 and July 31, 2002. In identifying each loan or extension of credit, state: (a) the name of the lender; (b) the amount of the loan or extension of credit; (c) the terms of the loan or extension of credit; (d) the loan date; (e) the maturity date; and (f) the purpose of the loan.

**RESPONSE:**

ATSIC will respond only after the resolution of the specific and General Objections to this Interrogatory which were previously served.

INTERROGATORY NO. 13:

Identify each person who drafted, participated in drafting, commented upon, or supplied information for use in any of the responses to these interrogatories; and for each such person, identify by number the particular interrogatory responses in which he or she was involved and the nature of his or her involvement.

**RESPONSE:**

Subjection to the specific and General objections previously served, in particular the attorney-client and work product privilege, ATSIC states Vincent Vento was involved in supplying information for each response. Counsel for ATSIC, Helen Albee, was involved in drafting the responses. William T. Stroop, Esq, separate counsel for ATSIC and Vincent Vento was involved in drafting the responses.

**Exhibit A** to Advanced Technology Systems Integrators, Corp.'s Response to Interrogatories

3/28/2005

Schedule of Payment Applications and Payments Made
USPS Process and Distribution Center
Miami, Florida

| Pay App No. | Date of pay app | Work completed this period | Stored materials this period | Work completed and stored this period | Cumulative Total Completed & Stored | Amount due net of retainage | Amount paid | Date paid | Days |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 12/1/2000 | 16,590.00 | - | 16,590.00 | 16,590.00 | 16,590.00 | 16,590.00 | 1/3/2001 | 33 |
| 2R | 2/14/2001 | 35,450.00 | - | 35,450.00 | 52,040.00 | 33,677.50 | 33,677.50 | 3/12/2001 | 26 |
| 3 | 2/28/2001 | 34,670.00 | - | 34,670.00 | 86,710.00 | 32,936.50 | 32,936.50 | 3/21/2001 | 21 |
| 4 | 3/26/2001 | 19,855.00 | - | 19,855.00 | 106,565.00 | 18,862.25 | 18,862.25 | 4/17/2001 | 22 |
| 5 | 4/19/2001 | 58,432.50 | - | 58,432.50 | 164,997.50 | 55,510.88 | 55,510.88 | 5/15/2001 | 26 |
| 6 | 5/9/2001 | 15,300.00 | - | 15,300.00 | 180,297.50 | 14,535.00 | | | |
| 7 | 5/24/2001 | 19,845.00 | 298,000.00 | 317,845.00 | 498,142.50 | 301,952.75 | 301,952.75 | 6/26/2001 | 33 |
| 8 | 6/15/2001 | - | 40,000.00 | 40,000.00 | 538,142.50 | 38,000.00 | 38,000.00 | 7/9/2001 | 24 |
| 9 | 7/19/2001 | 1,682.00 | 33,645.00 | 35,327.00 | 573,469.50 | 33,560.65 | 33,560.65 | 8/20/2001 | 32 |
| 10R | 8/24/2001 | 70,642.50 | 47,115.00 | 117,757.50 | 691,227.00 | 111,869.63 | 111,040.12 | 10/1/2001 | 38 |
| 11 | 9/26/2001 | 122,255.80 | 27,900.00 | 150,155.80 | 841,382.80 | 142,648.01 | 142,648.01 | 10/2/2001 | 6 |
| 12 | 10/25/2001 | 104,771.50 | - | 104,771.50 | 946,154.30 | 99,532.93 | 99,532.74 | 11/23/2001 | 29 |
| 13R | 11/29/2001 | 43,860.00 | 30,229.00 | 74,089.00 | 1,020,243.30 | 70,384.55 | 70,384.55 | 12/31/2001 | 32 |
| 14R2 | 12/18/2001 | 34,375.00 | - | 34,375.00 | 1,054,618.30 | 32,656.25 | 33,031.50 | 1/25/2002 | 38 |
| 15 | 1/8/2002 | 14,550.00 | - | 14,550.00 | 1,069,168.30 | 13,822.50 | 3,463.43 | 3/1/2002 | 52 |
| 16R | 1/24/2002 | 27,250.00 | - | 27,250.00 | 1,096,418.30 | 25,887.50 | (Note) 24,518.82 | (Note) 6/20/2002 | 147 |
| 17 | 5/20/2002 | 98,693.79 | - | 98,693.79 | 1,195,112.09 | 93,759.10 | | | |
| 18 | 7/19/2002 | 38,250.00 | - | 38,250.00 | 1,233,362.09 | 36,337.50 | | | |
| | | | | | | | | | |
| Total Paid | | | | | | | 1,015,709.70 | | |
| | | | | | | | | | |
| Note: This particular amount and date are unverified. | | | | | | | | | |
| | | | | | | | | | |

**VERIFICATION**

I, Vincent Vento, a former officer of Advanced Technologies Systems Integrators Corp., a dissolved corporation, am duly authorized to execute these Responses to Interrogatories under oath on its behalf. The information set forth in these Responses was collected by others, and such information is not necessarily within my personal knowledge. However, on behalf of Advanced Technologies Systems Integrators Corp., I solemnly affirm under the penalties of perjury that the foregoing Responses to Interrogatories are true to the best of my knowledge, information and belief.

Advanced Technologies Systems Integrators Corp.

MARCH 21, 2005
Date

Vincent Vento
President

State of Florida
County of Dade

Subscribed and sworn before me, a notary public in and for the county and state aforesaid, this 21 day of March, 2005.

Notary Public
My Commission Expires:

NOTARY PUBLIC STATE OF FLORIDA
MARIANA KOENITZER
MY COMMISSION # DD 273087
EXPIRES: January 9, 2008
Bonded Thru Budget Notary Services

Respectfully submitted,

HENRICHSEN SIEGEL, P.L.L.C.

Date: 3/29/05

Helen H. Albee
1648 Osceola St.
Jacksonville, FL 32204
(904) 381-8183
(904) 381-8191 (fax)
HAlbee@hslawyers.com
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that on this 29th day of March, 2005, a copy of the foregoing Plaintiff's Amended Verified Responses to First Set of Interrogatories was faxed at (202) 307-0972 and sent by overnight delivery to the following:

Michael Dierberg, Esquire
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, NW, 8th Floor
Washington, DC 20530

Helen H. Albee