**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP.<br><br>and<br><br>INTERNATIONAL FIDELITY INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 03-1953C<br>(Senior Judge Margolis) |

**PLAINTIFF ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP.'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

COMES NOW Plaintiff Advanced Technology Systems Integrators Corp. ("ATSIC"), by and through its undersigned counsel, files its Response to Defendant's Proposed Findings of Uncontroverted Fact, and states as follows:

Proposed Finding No. 1:

1. On September 8, 2000, Advanced Technologies Systems Integrators Corp. ("ATSIC") and the United States Postal Service ("USPS") entered into a fixed price construction contract, number 123125-00-B-3154, for the construction and installation of security improvements for the USPS's Processing and Distribution Center, Miami, Florida ("P&DC"). App. 1 (Goddard Aff. ¶ 2), App. 13. The P&DC facility is also sometimes referred to as the General Mail Facility ("GMF"). App. 1 (Goddard Aff. ¶ 2). The P&DC is the central distribution point for USPS mail in Miami, Florida. Id.

Response:

Defendant's proposed finding that P&DC is the central distribution point for USPS mail in Miami, Florida, contained in the last sentence of Defendant's Proposed Finding No. 1, is unknown to ATSIC, but, even if correct now, was not correct at the time that the events before the Court occurred, as the P&DC facility was not completed and open at that time. Dep. Ex. 12.[1]

Proposed Finding No. 2:

2. At or around the same time that ATSIC and USPS entered into the P&DC contract, ATSIC and USPS also entered into a similar contract for the construction and installation of security improvements for the Miami Air Mail Center ("AMC"), which is the USPS facility in Miami which handles mail being transported by air. App. 1 (Goddard Aff. ¶ 3) The AMC contract was terminated for default in January, 2002. Id.

Response:

Defendant's proposed finding that AMC "is the USPS facility in Miami which handles mail being transported by air," contained in the first sentence of Defendant's Proposed Finding No. 2, is unknown to ATSIC, but, even if correct now, was not correct at the time that the events before the Court occurred, as the AMC facility was not completed and open at that time. Dep. Ex. 29. The proposed finding that the AMC contract was terminated for default in January, 2002, is both misleading and prejudicial, as, within a matter of a few months, the Government corrected its decision and agreed with ATSIC that the termination was a mutual termination. *Id.* Defendant

---

[1] Deposition exhibits (Dep. Ex. ___) filed by ATSIC are located at Docket No. 58. Motion exhibits (Mot. Ex. ___) filed by ATSIC are located at Docket No. 57. The Contract, including the imported Facilities Department regulations (F.D. § ___), are located at Docket No. 57. The Deposition transcripts are located in the Joint Appendix at Docket No. 61.

admits as much in its own Paragraph 16 of Defendant's Proposed Findings of Uncontroverted Fact, to which this Response is directed, citing Goddard Aff. ¶14 and App. 96.

Proposed Finding No. 3:

3. The P&DC contract required that the work to be performed under the contract must be completed within 230 days. App. 2 (Goddard Aff. ¶ 5), App. 13. On October 3, 2000, USPS issued its Formal Notice to Proceed for the Project, with a start date of January 15, 2001. App. 2 (Goddard Aff. ¶ 5), App. 13. Based upon a 230-day period for completion, the required contract completion date was September 2, 2001. App. 2 (Goddard Aff. ¶ 5), App. 13.

Response:

The allegation in Defendant's Proposed Finding No. 3 that the start date of the contract was October 3, 2000, is misleading, because the Government prevented ATSIC from starting for months after the official start date, due to the Government's failure to timely complete and approve background checks on ATSIC's employees. Vento dep. 3:23-86:19. Therefore, the allegation in Defendant's Proposed Finding No. 3 that the completion date of September 2, 2001, was 230 days after commencement is likewise misleading, because the Government prevented ATSIC from commencing timely.

Proposed Finding No. 4:

4. The work required to be performed by ATSIC in connection with the P&DC facility ("Project") included the installation of a closed-circuit television system and cameras to provide remote monitoring of activities, exterior gates and vehicle barrier controls, exterior fencing, an access control system using proximity card readers to limit access to the P&DC building to authorized personnel, and turnstiles to limit access to, and egress from, the P&DC building. App.

2 (Goddard Aff. ¶ 6), App. 9-11A (Stuhl Aff. ¶ 4), App. 13.

Response:

This is essentially accurate, although summary in nature.

Proposed Finding No. 5:

5. By letter dated August 2, 2001, from Ronald Grzymala to ATSIC, Mr. Grzymala notified ATSIC of USPS's concerns regarding ATSIC's progress on the Project, and requested that ATSIC's deficiencies be cured. App. 2 (Goddard Aff. ¶ 7), App. 43. The letter states, in part,

> The Notice to Proceed on the above referenced project was issued on January 15, 2001, with a 230 day construction term and a contract completion date of September 2, 2001. As of your last pay request on June 25, 2001, you were at 38% complete.
>
> This letter is to notify you that the Postal Service considers your failing to adhere to the approved project schedule and not providing submittals on a timely basis, a condition that is endangering performance of the contract in accordance with its terms. Therefore, unless such condition is cured or you can provide information explaining how the project might be brought back on schedule, within ten (10) days after the receipt of this letter, the Postal Service may terminate subject contract for default under the provisions provided in h.6 Termination for Default (clause B-13).

App. 43.

Response:

No disagreement that such a letter was sent.

Proposed Finding No. 6:

6. ATSIC did not complete the project by the completion date of September 2, 2001. App. 2 (Goddard Aff. ¶ 8).

Response:

The allegation in Defendant's Proposed Finding No. 6 that ATSIC failed to complete the project by the initial completion date is misleading, because the Government prevented ATSIC from commencing timely, as set forth in Paragraph 3, above.

Proposed Finding No. 7:

7. The sole owner and Chief Executive Officer of ATSIC was Vincent Vento. Vento Tr. 11-12.[2] In late 2001, Mr. Vento decided that ATSIC was "no longer viable." Id. at 51. Because he believed that ATSIC was no longer viable, in 2002 ATSIC did not seek additional credit from any financial institution to support its financial needs. Id. at 50-52. In addition, after 2001, ATSIC did not seek any new business for the company. Id. at 48-49. Mr. Vento anticipated in late 2001 that the USPS P&DC Project would be ATSIC's last project. Id. Following ATSIC's termination from the AMC USPS project, ATSIC's last, and only, project was the P&DC Project. Id. at 49; App. 141-42.

Response:

The allegation in Defendant's Proposed Finding No. 7 that ATSIC "did not seek additional credit from any financial institution to support its financial needs" due to ATSIC's lack of viability misstates Mr. Vento's testimony and is misleading. Mr. Vento testified that, if the Postal Service had paid what it was contractually obligated to pay, had paid timely, had prepared reports correctly and honestly, had not waited more than 10 months to approve change orders, and had not delayed

---

[2] "__ Tr. __" refers to the transcript of a deposition taken in this matter, included as the parties joint appendix, filed concurrently with defendant's proposed findings of uncontroverted fact. The page references with respect to the transcripts are to the page numbering of the transcript itself.

completion of the work by placing stop work orders on portions of the work, he would have paid the remainder to complete the job from his own resources. Vento dep. 60:19-61:12.

Proposed Finding No. 8:

8. In February, 2002, Jerry Goddard was assigned as the contracting officer for the project in lieu of Mr. Grzymala. App. 2 (Goddard Aff. ¶ 9).

Response:

No disagreement that Mr. Goddard took over as contracting officer at some time in early 2002.

Proposed Finding No. 9:

9. By letter dated March 12, 2002, Mr. Goddard, as contracting officer, responded to a request for information from plaintiff International Fidelity Insurance Company ("International") regarding the status of the project. App. 2 (Goddard Aff. ¶ 10), App. 49. Mr. Goddard indicated, among other things: (1) the work performed to date was not satisfactory, the job was not progressing on schedule, and "Project is in danger of being terminated if work does not proceed. We have ask[ed] for a new schedule but as usual have not been provided anything." App. 49.

Response:

The allegations in Defendant's Proposed Finding No. 9, regarding a letter from Mr. Goddard to International Fidelity Insurance Company, are irrelevant as to ATSIC.

Proposed Finding No. 10:

10. On March 21, 2002, Mr. Stuhl was present at the Project site to meet with members of ATSIC and to inspect the construction in progress. App. 11A (Stuhl Aff. ¶ 5), App. 51- 52. By letter dated March 25, 2002 from Mr. Stuhl to Jerry Goddard, entitled "Field Investigation Report,"

Mr. Stuhl stated, in part, " My inspection revealed that minimal progress has been made from the date of our last inspection report dated February 28, 2002." App. 52.

Response:

The allegations in Defendant's Proposed Findings No. 10 and 11 are misleading, in that (i) neither the letter nor the Proposed Findings include the information that Mr. Stuhl had required ATSIC to cease working in the control room while Stuhl completed working drawings (unrelated to ATSIC) that were never completed during the entire period of time prior to ATSIC's termination, Vento dep. 56:1-57:16, 116:8-117:11, 161:21-162:9; Dep. Ex. 23, and (ii) ATSIC had submitted change orders, generally at the direction of Mr. Stuhl, for work that had to be done prior to completion of the work, and the change orders had not been approved, even after many months. Vento dep. 157:8-159:5, 163:20-164:14, 164:21-165:19; Dep. Ex. 54, 57, 58.

In general, Mr. Stuhl:

(i) repeatedly made decisions that retarded the progress of the Project, Vento Dep. 157:8-159:5; Warren dep. 44:25-46:16; Dep. Ex. 54, 59;

(ii) failed to make timely decisions necessary to prosecute the work of the Project, including withholding change order approval for changes required by Stuhl for more than ten months after submittal, Vento dep. 157:8-159:5, 163:20-164:14, 164:21-165:19; Dep. Ex. 54, 57, 58;

(iii) repeatedly and consistently reduced and delayed ATSIC's payment requisitions, often after orally approving them on-site, Vento dep. 135:3-136:22; Warren dep. 32:23-34:15, 39:9-23, 114:16-115:10 (withholding of 75% of pay requisitions), 127:7-21, 131:24-132:16 (re 75% retainage); Zamora dep. 72:12-73:10, 83:11-84:9; Dep Ex. 20, 25, 40 (protesting 75% retainage),

54 (protesting SEC's arbitrary and contradictory reduction pay requisition based on how Mr. Stuhl "feels" on any given day, rather than on the approved progress on the Project), 59;

(iv) submitted false reports, Warren dep. 40:20-41:16, 45:25-47:5, 108:22-110:7; Zamora dep. 60:24-61:9, 77:1-78:22 (SEC dunning ATSIC for a Contract reduction despite previous approval by SEC); Dep. Ex. 36, 37; and

(v) repeatedly and consistently agreed to one method of Project implementation on-site, only to return to his office in Orlando and issue later reports requiring a different method of implementation than he had previously approved. Vento dep. 33:12-34:18, 78:11-22, 160:8-20, 164:21-165:19; Warren dep. 128:20-130:7; Ex. 23, 56, 58, 59.

<u>Proposed Finding No. 11:</u>

11. On April 10, 2002, Mr. Stuhl was present at the Project site to meet with members of ATSIC and to inspect the construction in progress. App. 11B (Stuhl Aff. ¶ 7), 60-61. By letter dated April 16, 2002 from Mr. Stuhl to Jerry Goddard, entitled "Field Investigation Report," Mr. Stuhl stated, in part,

> In general, my inspection revealed that some progress has been made but [ATSIC] does not appear to be increasing their effort at this facility. Our last inspection at this facility was on April 2, 2002, and this inspection shows minimal increase in activity and progress from that date.

App. 60.

<u>Response:</u>

See response to Proposed Finding No. 10, above.

<u>Proposed Finding No. 12:</u>

12. By letter dated May 1, 2002, entitled "2nd Show Cause: Miami, FL – GMF –

Security and Access control System Contract No. 12315-00-B-3154," from Mr. Goddard to Vincent Vento ("Second Show Cause"), Mr. Goddard stated, in part,

> Since you have failed to perform on contract 123125-00-B-3154 with respect to:
> * Failure to complete project per contract completion date
> * Failure to provide submittals
> * Failure to provide back-up documentation for change requests
> * Failure to provide updated construction completion schedule
> * Failure to adequately man the project
> * Failure to supply required equipment / materials
>
> Therefore the US Postal Service is considering terminating said contract pursuant to Clause B-13 (TERMINATION FOR DEFAULT).

App. 3 (Goddard Aff. ¶ 11), App. 63. Mr. Goddard also indicated that ATSIC would have 10 days within which to provide a written response addressing whether ATSIC's failure to perform "arose out of causes beyond your control and without fault or negligence on your part." App. 63. This letter was sent by USPS to ATSIC on or about May 1, 2002. App. 3 (Goddard Aff. ¶ 11).

<u>Response:</u>

No disagreement that Mr. Goddard provided such a letter.

<u>Proposed Finding No. 13:</u>

13. By letter dated May 13, 2002, ATSIC provided to USPS a revised completion schedule showing the tasks on the Project that still needed to be completed and the estimated amount of time that each task would require to be completed. App. 65-68. According to the completion schedule, the Project would be completed by June 14, 2002. App. 68.

<u>Response:</u> The allegations in Defendant's Proposed Finding No. 13 are substantially and materially misleading, in that the schedule was an attachment to a letter dated May 13, 2002, from

Gregory W. Warren of ATSIC to Mr. Goddard explicitly specifying that six additional conditions be approved in order to settle the issues. Dep. Ex. 17. The conditions included that the Postal Service pay for "100% of all materials on future applications for P&DC," that Hirsch (the security system processing software) performances be accepted (which was a precondition for the system to be accepted), and that substantial completion of the system be by June 21, 2002.

Proposed Finding No. 14:

14. On or after May 29, 2002, ATSIC submitted payment authorization No. 17 for approval by USPS. App. 3 (Goddard Aff. ¶ 12), App. 79. The amount of the payment authorization was later reduced to $63,000, and payment authorization No. 17 was approved by USPS on June 12, 2002. App. 3 (Goddard Aff. ¶ 12), App. 79. Payment authorization No. 17 was the last certified request for payment authorization submitted by ATSIC to USPS. App. 3 (Goddard Aff. ¶ 12). Payment authorization No. 17 was also the last payment authorization approved by USPS. Id.

Response:

The allegation in Defendant's Proposed Finding No.14 that ATSIC never submitted a payment authorization after Payment Authorization No. 17 is not correct. Payment authorization No. 18 was submitted with the July 19, 2002, letter from Gregory W. Warren to Jerry Goddard. Dep. Ex. 21; Warren Dep. 116:8-117:2.

Proposed Finding No. 15:

15. Prior to June 11, 2002, representatives of ATSIC and USPS disputed a variety of items regarding the Project, including, but not limited to: (1) ATSIC's failure to complete the Project by the completion date of September 2, 2001; (2) the adequacy of ATSIC's staffing of the Project; (3) the lack of regularly updated construction schedules provided to USPS; (4) the amount of excess

reprocurement costs from the AMC project and the manner in which excess reprocurement costs from the AMC project would be paid by ATSIC; (5) the timing of approval of requested contract modifications by USPS; and (6) the timing of approval of payment authorizations by USPS. App. 3 (Goddard Aff. ¶ 13).

Response:

The allegations in Defendant's Proposed Finding No. 14 are incorrect as to one item and materially misleading as to another item, in addition to the vast pool of disputed items not mentioned. *See, e.g.*, the items mentioned in ATSIC's Motion for Partial Summary Judgment ¶5.1 (Docket No. 56). Defendant asserts that there was a dispute over the timing of requested contract modifications (subparagraph 5) and the timing of payment authorizations by USPS (subparagraph 6). The dispute as to the contract modifications was not the timing, but the complete lack of USPS action. Prior to Modification No. 11 executed by USPS on June 20, 2002, USPS had not approved the requested contract modifications, in some cases for more than one year. With regard to the timing of payment authorizations, there was not only a substantial dispute as to the timing, but also as to the complete and utter failure to approve payment for the modifications and other completed work (such as the work detailed in Payment Requisition No. 17). Dep. Ex. 20; Warren Dep. 132:19-137:22.

Proposed Finding No. 16:

16. The parties entered into a settlement agreement regarding the excess reprocurement costs for the AMC project. App. 3 (Goddard Aff. ¶ 14), App. 94. This settlement agreement was signed by Vincent Vento, CEO of ATSIC, and Jerry Goddard on behalf of USPS. App. 94. Mr. Vento's signature is dated June 11, 2002, and Jerry Goddard signed the settlement agreement on

June 19, 2002. Id. The settlement agreement provides, in part, that the termination for default of the AMC project would be converted to a mutual termination, that ATSIC and USPS "agree that [ATSIC] will not be due any compensation and will in fact owe the Postal Service the sum of $52,137.10 which will be withheld from" the P&DC Project. Id. In addition, the parties memorialized the $52,137 offset to the P&DC contract in Modification No. 10 to the P&DC contract. App. 3 (Goddard Aff. ¶ 14), App. 96. The parties also memorialized the amount of the offset in Modification No. 2 to the AMC contract. App. 4 (Goddard Aff. ¶ 14), App. 98.

Response:

No disagreement that the parties entered into the settlement agreement and that the $52,137.10 was to be withheld from the P&DC Project.

Proposed Finding No. 17:

17. In June, 2002, ATSIC and USPS executed Modification No. 11 to the P&DC contract, which was described as "Settlement of Issues through ATC proposed mod 9 and USPS issued mod 10 & 11." (underscoring in original). App. 4 (Goddard Aff. ¶ 15), 100. This modification established a revised completion date for the contract of July 15, 2002. App. 4 (Goddard Aff. ¶ 15), 100. The typed portion of Modification No. 11, showing a revised completion date of June 30, 2002, was based upon the date ATSIC had earlier requested as the revised completion date. App. 4 (Goddard Aff. ¶ 15). Some time prior to the execution of Modification No. 11, ATSIC requested that the revised completion date be changed to July 15, 2002. Id. Thereafter, the parties struck the June 30, 2002 revised completion date and instead agreed to make the revised completion date July 15, 2002. Id. Modification No. 11 also states, "By signing this mod, both parties agree that all issues through mod 11 and 5/29/02 are mutually agreed to and will not be made

a part of any claim arising out of or related to either contract 123125-00-B-3153 or 123125-00-B-3154." App. 100. Jerry Goddard signed Modification No. 11 on behalf of USPS on June 20, 2002. App. 4 (Goddard Aff. ¶ 15), 100. Mr. Vento signed Modification No. 11 on behalf of ATSIC, and his signature is dated June 11, 2002. App. 4 (Goddard Aff. ¶ 15), App. 100. ATSIC did not make any requests to USPS for modification, other than the request for an extension of time submitted on July 17, 2002, after Modification No. 11. App. 4 (Goddard Aff. ¶ 15).

Response:

The allegation in Defendant's Proposed Finding No. 17 that "ATSIC did not make any requests to USPS for modification, other than the request for an extension of time submitted on July 17, 2002, after Modification No. 11," is false. Defendant admits as much in Paragraph 20 of its own Proposed Findings, in which, in addition to the July 17 letter, Defendant describes "ATSIC's July 19, 2002, letter from Gregory Warren on behalf of ATSIC to Jerry Goddard . . . in which ATSIC requested an extension of time to complete the project to August 16, 2002. ATSIC claimed that it was delayed 37 days due to rain on 37 of the past 48 days. In addition, ATSIC claimed that it was delayed 24 days due to cash flow." Defendant's Proposed Findings of Uncontroverted Fact ¶20 (citations omitted). In addition to these written solicitations for extension, ATSIC made oral solicitations for extension. Warren Dep. 88:17-89:1; Dep Ex. 21, 22, 33.

Proposed Finding No. 18:

18. As of July 15, 2002, ATSIC had not completed the Project. App. 4 (Goddard Aff. ¶ 16), App. 11B (Stuhl Aff. ¶ 11).

Response: The allegation in Defendant's Proposed Finding No.18 is misleading, in that the project was substantially complete, and the principal items that remained were either

significantly hampered by the Postal Service's actions, specifically prevented by the Postal Service, or legitimately and contractually delayed due to rain or the Postal Service's failure to pay for approved work and change orders. See Paragraph 7, above; Warren dep. 89:13-90:13, 95:24-96:5; Dep. Ex. 21 (showing delays of 37 days for rain and 24 days for late payment and including, *inter alia*, National Weather Service records showing rain on 37 of the previous 48 days, Zamora dep. 55:14-23; Dep. Ex. 21.

<u>Proposed Finding No. 19:</u>

19. By letter dated July 15, 2002, from Jerry Goddard to Vincent Vento, USPS issued its third show cause to ATSIC ("Third Show Cause"). App. 4 (Goddard Aff. ¶ 17), App. 102. The Third Show Cause states, in part,

> The Notice to Proceed on the above referenced project was issued on January 15, 2001, with a 230-day construction term. The revised completion date is now July 15, 2002.
>
> Since you have failed to perform on contract 123125-00-B-3154 with respect to:
> * Failure to compete project per revised completion date
>
> Therefore the US Postal Service is considering terminating said contract pursuant to Clause B-13 (TERMINATION FOR DEFAULT). Pending a decision in this matter, it will be necessary to determine whether your failure to perform arose out of causes beyond your control and without fault or negligence on your part.

App. 102. The Third Show Cause further states that ATSIC would have ten days to respond. ATSIC received this letter on or before July 19, 2002. <u>Id.</u>

<u>Response:</u> The allegation in Defendant's Proposed Finding No.19 is misleading, in that, on May 1, 2002, the Postal Service had listed six bases for termination, and on July 15, 2002, with rain on 37 of the prior 48 days, ATSIC had cleared five of the six bases for termination previously

listed. Defendant's Proposed Findings of Uncontroverted Fact ¶12; Dep. Ex. 5, 21.

Proposed Finding No. 20:

20. ATSIC responded to the Third Show Cause by letter dated July 19, 2002, from Gregory Warren on behalf of ATSIC to Jerry Goddard. App. 104-09. In ATSIC's July 19, 2002 letter, ATSIC requested an extension of time to complete the project to August 16, 2002. App. 104. ATSIC claimed that it was delayed 37 days due to rain on 37 of the past 48 days. Id. In addition, ATSIC claimed that it was delayed 24 days for lack of cash flow. Id.

Response: Defendant's Proposed Finding No. 20 is not disputed. However, as set forth in Paragraph 17, above, the cited letter was not ATSIC's only response to the Third Show Cause letter.

Proposed Finding No. 21:

21. On July 24, 2002, Jerry Goddard and Joseph Stuhl met with Jose Zamora to inspect the construction in progress for the Project. App. 11B (Stuhl Aff. ¶ 12). By letter dated July 25, 2002, from Joseph Stuhl to Jerry Goddard, Mr. Stuhl provided a Field Investigation Report covering the 49-day period from June 6, 2002, through July 25, 2002. App. 11B (Stuhl Aff. ¶ 12), App. 113-16. The letter states, in part, "In general, both of my inspections revealed that very little progress has been made by ATC during the period covered by this report." App. 113. The letter also estimates that the access control system is only 75 percent complete and that the CCTV system is only 80 percent complete. App. 114.

Response: Defendant's Proposed Finding No. 21 is disputed only in that it is at such wide variance with the letters from the contracting officer and Mr. Stuhl's own other documents and

approvals. The contracting officer, Mr. Goddard, issued his Show Cause letter with six items on it on May 1, 2002, and then issued his Third Show Cause letter with one item on it on July 15, 2002, undermining Mr. Stuhl's report that "very little progress has been made." See Paragraph 19, above. Mr. Stuhl had previously approved payment of 91% of the project due to work completed. Vento Dep. 132:17-133:3. Only after the fact, when ATSIC is terminated, does he indicate lower levels of completion, when it will serve the Government's purpose of seeking recovery from Plaintiffs.

Proposed Finding No. 22:

22. At a meeting held at approximately 1:00 pm at the Project site on July 31, 2002, Jerry Goddard, on behalf of USPS, issued a stop work order to representatives of ATSIC, including Greg Warren and Jose Zamora. App. 4-5 (Goddard Aff. ¶ 19), App. 11B-11C (Stuhl Aff. ¶ 13), App. 111, 118. Other individuals present at this meeting included the project engineer, Joseph Stuhl, and Sgt. Perry P. Puglisi of the Postal Police Department. App. 4-5 (Goddard Aff. ¶ 19), App. 11B-11C (Stuhl Aff. ¶ 13), App. 118. Mr. Warren refused to sign receipt of the stop work order, therefore Sgt. Puglisi wrote on the stop work order that Mr. Warren refused to sign for receipt. App. 4-5 (Goddard Aff. ¶ 19), App. 11B-11C (Stuhl Aff. ¶ 13), App. 111. ATSIC was not told by USPS to stop work prior to being given this stop work order on July 31, 2002. App. 4-5 (Goddard Aff. ¶ 19), Zamora Tr. 50-51. ATSIC had not completed the Project by July 31, 2002. App. 5 (Goddard Aff. ¶ 19), App. 11C (Stuhl Aff. ¶ 13).

Response: Defendant's Proposed Finding No. 22 is patently false, as follows:

22.1. The stop work order says on its face that it was issued on July 15, 2002, Dep. Ex. 10, which was before the contract completion date had elapsed and before the time for the Postal Service to evaluate the reasons for delay, including rain delays, that the Postal Service was required

by contract to afford to ATSIC. Dep. Ex. 31A, 9; Mot. Ex. 1. Postal Service Facilities Department (F.D.) Regulation §C.3a (requiring the Contract Officer (i) to extend the delivery schedule accordingly, and (ii) to recognize that, in the event of termination, "the supplier will not be in default."); Warren dep. 146:16-147:7, 148:25-150:4; Zamora dep. 26:24-27:14, 73:15-74:11; Dep. Ex. 33, 42 (detailing persistent rain in June 2002), 43; F.D. §C.4a (requiring the Contracting Officer to consider the fact that ATSIC was delayed by the USPS's delays in making payment in violation of the payment provisions under the Contract).

22.2. There is no basis to use or assert parol evidence to contradict the plain terms of the document. Mr. Goddard may have sought to give a copy of the stop work letter to Mr. Warren at the specified meeting, but the letter was not "issued" on that date. ATSIC was prevented from working on the Project after the issuance of the "Stop Work" letter on July 15, 2002.

<u>Proposed Finding No. 23:</u>

23. By letter dated August 16, 2002, from Jerry Goddard to Vincent Vento, USPS terminated ATSIC for default. App. 5 (Goddard Aff. ¶ 20), 121-22. The letter states that the termination is based upon, but not limited to the following:

* Contract is delinquent; Contract completion date is July 15, 2002.
* The progress on the project is not satisfactory.
* The project is not adequately manned.

App. 121.

<u>Response:</u> Defendant's Proposed Finding No. 23 is not disputed. However, it confirms that the Postal Service improperly terminated ATSIC for items that were not included in the July 15, 2002, Third Show Cause letter in which ATSIC was given the contractually-required 10 days to show cause or cure. Dep. Ex. 9, 12; Mot. Ex. 1.

Proposed Finding No. 24:

24. By letter dated July 31, 2003, from Jerry Goddard to ATSIC, USPS informed ATSIC that USPS calculated excess reprocurement costs to be $683,404.69. App. 5 (Goddard Aff. ¶ 21), App. 124-26.

Response: Defendant's Proposed Findings Nos. 24 and 25 are misleading. After the issuance of the final demand for excess reprocurement costs cited in those Proposed Findings, and after this suit was filed in order to protect the Plaintiffs from the Government's extraordinarily inflated figures, the Government admitted errors by issuing a new letter reducing the amount of the alleged excess reprocurement costs by $276,489.50. See Exhibit 1 attached to this Response.

Proposed Finding No. 25:

25. By letter dated September 26, 2003, from Jerry Goddard to Vincent Vento, USPS issued its final decision with respect to excess reprocurement costs for the project, demanding payment in the amount of $683,404.69 for excess reprocurement costs. App. 5 (Goddard Aff. ¶ 22), App. 128-30.

Response: See Response to Proposed Finding No. 24.

Proposed Finding No. 26:

26. International is not a party to any agreement with USPS regarding the Project. App. 6 (Goddard Aff. ¶ 23). International did not enter into a take over agreement with respect to the Project, and International did not otherwise take over completion of the project. Id. International has not financed the completion of the project under any performance bond. Id. International did not request that USPS withhold payment from ATSIC prior to USPS's approval and payment of any progress payments or other payments to ATSIC. Id.

Response: Defendant's Proposed Finding No. 26 should not by considered by the Court because Defendant has filed a Motion to Dismiss International on jurisdictional grounds. On a Motion to Dismiss, the Court makes its ruling based on the factual allegations contained in the complaint which must be taken as true. RCFC 12(b)(6). It is not proper for the Defendant to interpose facts outside the pleadings regarding International's involvement with the Project in support of its Motion to Dismiss. Furthermore, International has asserted its claims against the Government based on its rights of equitable subrogation due to its performance of its obligations under the payment bond issued for the Project. Second Amended Complaint ¶ 6. As a result, the factual allegations in Proposed Finding No. 26 are irrelevant to the determination of the jurisdictional issue affecting International's claims before the Court..

Proposed Finding No. 27:

27. "Clause B-80 of the USPS Purchasing Manual," identified by plaintiffs in paragraph 18.3 of the second amended complaint, is not a part of the P&DC contract. App. 6 (Goddard Aff. ¶ 24). A true and correct copy of relevant portions of the P&DC contract is provided as exhibit A. Id., App. 13-41.

Response: Because the Purchasing Manual is imported into all USPS contracts, ATSIC does not agree with Defendant's Proposed Finding No. 27.

Respectfully submitted on this 14 day of July, 2006.

E. SCOTT GOLDEN & ASSOCIATES
Attorneys for Plaintiff Advanced
Technology Systems Integrators Corp.
644 S.E. Fourth Avenue
Fort Lauderdale, FL 33301
Tel.: (954) 764-6766 ext. 2
Fax: (954) 764-6789
Email: esglaw@bellsouth.net

s/E. Scott Golden
E. Scott Golden

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic transmission to the following persons as of this 14 day of July, 2006.

Michael J. Dierberg, Esquire
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
1100 L. Street NW, Room 12116
Washington, D.C. 20530

Helen H. Albee, Esquire
HENRICHSEN SIEGEL, P.L.L.C.
1648 Osceola St.
Jacksonville, FL 32204

s/E. Scott Golden
E. Scott Golden