SEC



By copy of this letter, I am requesting that Inspector Eugene Payton and Capt. Hanson advise us of any alternate method to obtain the ATC employee badges and the equipment which has been paid for by the U. S. Postal Service. It appears that ATC is again avoiding their responsibility by ignoring the directions issued during the above reference meeting. Even with the threat of federal prosecution, it would appear that ATC does not give serious consideration to the directions issued by the U. S. Postal Service. Our history with this contractor has been very difficult, at best, and it seems that ATC is responsive only when they are being paid money.

Very truly yours,

Joseph F. Stuhl, III
President
JFS/ash

CC: Captain Hanson - USPS
Inspector Payton - USPS
Jim Burney - USPS
Jerry Shoib - USPS
Jose' Zamora - ATC
Greg Warren - ATC

F:\OFFICE\DATA\U.S. POSTAL SERVICE\2001\0102\LETTER-28

**Vincent Vento**

From: JERRY GODDARD [JGODDARD@email.usps.gov]
Sent: Wednesday, November 21, 2001 5:38 AM
To: vvento
Subject: Time on modification 1 and 2

Have you reviewed the time you wish to request on mods 1 and 2 on the GMF.

I cannot process the modifications without the information.

Please provide it ASAP.

SEC

January 2, 2002

Mr. W. Jerry Goddard, R.A.
Architect/Project Manager
United States Postal Service
Facilities Service Office
Building 300 - Suite 300
4000 DeKalb Technology Parkway
Atlanta, Georgia 30340-2799

**REQUEST FOR INFORMATION**
(Contract Modifications No. 1 and No. 2)

Project: U. S. Postal Service - P&DC Facility Security Upgrades
City of Miami, Florida
SEC Project No. USPS-0101

Dear Mr. Goddard,

Please accept this letter as a request from Stuhl Engineering Consultants, Inc. (SEC) for your assistance in obtaining the information necessary for SEC to process and approve the above referenced contract modifications for this project. SEC has been provided with copies of the above referenced Contract Modifications as proposed by Advanced Technologies Systems Integrators Corp. (ATC), but the information is not complete and no justification has been provided to support the extension of time being requested by ATC for either modification. The information being requested in this letter has been requested by you, Mr. Jose' Blanco and SEC on numerous occasions. The following outlines the information needed to process these modifications properly.

SEC has reviewed a copy of Modification No. 1 from ATC for the above reference project. This modification is dated January 1, 2001; but the ATC support documentation, listed as Change Order No. 2, is dated August 20, 2001, and was not faxed to SEC until September 11, 2001. Modification No. 1 proposes an increase of nine thousand, eight hundred, fifty dollars and seventy-five cents ($9,850.75) to the P&DC contract. Modification No. 1 is for additional Closed-Circuit Television (CCTV) equipment that Vicon did not include in their price to ATC prior to the bid date. The CCTV equipment includes four (4) VCR recorders and seven (7) lenses and the amount shown in this modification appears reasonable. The Change Order No. 2 support documentation for Modification No. 1 requests a time extension of fourteen (14) days, which is not reasonable. SEC does not agree with a time extension for this modification. All of the equipment referenced above is shown on the construction documents and all of the time associated with installation of the CCTV system should have been included in the original ATC bid. We recommend that ATC correct their change order documentation to properly reflect Change Order No. 1 and to remove any request for an extension of time. Then SEC may approve this modification.

Stuhl Engineering Consultants, Inc.
1860 Anzle Avenue • Winter Park, Florida 32789 • Telephone (407) 645-5815 • Facsimile (407) 645-5812

SEC



SEC has reviewed a copy of Modification No. 2 from ATC for the above reference project. This modification is dated October 25, 2001; but the ATC support documentation, listed as Change Order's No. 2, 3 and 4; all have different dates and this package was not faxed to SEC until December 27, 2001. Modification No. 2 shows a credit of eight thousand, eight hundred, four dollars and no cents ($8,804.00) due the U. S. Postal Service for the P&DC contract. The following outlines each change order and its support documentation for Modification No. 2:

Change Order No. 2 (originally submitted to SEC on August 29, 2001, as Change Order No. 1 and dated February 28, 2001) is for the installation of new lighting along the north entrance of this facility. The total amount being proposed by ATC for this Change Order No. 2 is eighteen thousand, three hundred, ten dollars and forty-four cents ($18, 310.44) and is an increase in the contract amount for this project. ATC is also requesting a time extension of fourteen (14) days in their contract for the work involved in completing this change order. On August 31, 2001, SEC authored a letter to Mr. Jose' Blanco recommending that ATC not be used to perform this work, based on the cost submitted at that time. We still believe that the cost associated with this change order is excessive and recommend obtaining bids from other qualified electrical contractors to perform this work. If the U. S. Postal Service elects to use ATC to perform the work associated with this item, then SEC will need to receive information to justify the increase in time. ATC needs to show how the critical path of this project is impacted by the work associated with this change order.

Change Order No. 3 is for the work associated with "Alternate No. 1" at Gate No. 1 as defined on sheets A-8A and E-18 of the construction documents. The total amount being proposed by ATC for Change Order No. 3 is seventeen thousand, four hundred dollars and no cents ($17,400.00) and is an increase in the contract amount for this project. SEC must defer to you for confirmation of this amount because we do not have a copy of the ATC original bid showing the amount. If the amount is acceptable, ATC must provide documentation to justify the extension of time. ATC needs to show how the critical path of this project is impacted by the work associated with this change order.

Change Order No. 4 is defined as "Reduction of CCTV Fiber Optic Conduit for 46 cameras" at the P&DC facility. ATC requested that they be allowed to combine the cables of different systems into a single (1) conduit. The request was conditionally granted based on a substantial savings to the U. S. Postal Service. The ATC support documentation for Change Order No. 4 is dated March 19, 2001. The ATC support documentation for Change Order No. 4 lists a credit of forty-three thousand, seven hundred, ninety-nine dollars and two cents ($43,799.02) due the U. S. Postal Service for the P&DC contract. The ATC support documentation for Change Order No. 4 does not identify any time reduction (credit) due the U. S. Postal Service. The ATC support documentation for Change Order No. 4 shows a reduction of two thousand, seventy three (2,073) hours and an increase of eight hundred, fifty-eight (858) hours as being required for the work associated with this change order. The net difference is a reduction of one thousand, two hundred, fifteen hours due the U. S. Postal Service for this contract. ATC needs to document this credit of time to the U. S. Postal Service in order for this change order to be processed.

In addition to the information transmitted to SEC with Modification No. 2, ATC has included a copy of Change Order's No. 5 and No. 6 for our review. SEC has reviewed these change orders and recommends the following:

SEC



Change Order No. 5 is defined as "Addition of conduit for PTZ cameras, PTZ-010, 014, 036, 039 and 040 not on Electrical Plans" at the P&DC facility. This change order was required due to changes in the Building Design Standards of the U. S. Postal Service which require a single power supply on a dedicated circuit for all exterior mounted pan-tilt-zoom cameras. The total amount proposed by ATC for Change Order No. 5 is fifteen thousand, three hundred, thirty-six dollars and sixty-one cents ($15,336.61) and is an increase to the P&DC contract. A previous version of this change order was presented to SEC, during my site inspection of November 29, 2001, by Mr. Jose' Zamora of ATC. At the time of the above referenced site inspection, the total amount of Change Order No. 5 was only ten thousand, one hundred, eleven dollars and ninety-six cents ($10,111.96) for a total of twelve (12) cameras. Now the same change order has returned with only five (5) cameras costing more money. I took considerable time to discuss this item with Mr. Zamora during our site inspection. We looked at the drawings and the work which was actually required to comply with the requirements of the U. S. Postal Service. It is the expressed opinion of SEC that the cost in the latest version of Change Order No. 5 is excessive and we recommend that this request be rejected. I have given consideration to a fair and reasonable amount for the materials and work required to comply and recommend that a total cost of, approximately, four thousand dollars ($4,000.00) would be acceptable. Additionally, ATC is requesting a time extension of twenty-three (23) days for the work associated with this change order. Again, ATC must show how this work impacted the critical path of this project in order to have any consideration given to their request for additional time. It is the opinion of SEC that this work did not impact their schedule and no additional time should be granted.

Change Order No. 6 is defined as "Repair for Poles Damaged by USPS at Gate #5" of the P&DC. This change order is required because ATC had completed work at this gate and a U. S. Postal Service vehicle backed into a pole and caused damage to the installation. The amount proposed by ATC for Change Order No. 6 is five hundred, forty dollars and sixty cents ($540.60) and is an increase to the P&DC contract. ATC also requests a one (1) day extension of their contract at this facility. We have no objection to the amount requested by ATC for this change order but request that ATC provide the proper documentation showing that the critical path of this project has been impacted by this accident.

I will provide you with the attachments in the package being mailed to you this afternoon. Please do not hesitate to contact me with any questions you may have regarding this letter or the information contained herein.

Very truly yours,

Joseph F. Stuhl, III
JFS/ash

Attachments: Copy of SEC "Letter of Response" - August 31, 2001
Copy of ATC fax transmitted to SEC - January 2, 2002

F:\OFFICE\DATA\U. S. POSTAL SERVICE\2001\0101\LETTER-4

SEC

January 28, 2002

Mr. W. Jerry Goddard, R.A.
Architect/Project Manager
United States Postal Service
Facilities Service Office
Building 300 - Suite 300
4000 DeKalb Technology Parkway
Atlanta, Georgia 30340-2799

# FIELD INVESTIGATION REPORT

Project: U. S. Postal Service - Process and Distribution Center (P&DC)
Facility and Employee Security Upgrades
City of Miami, Florida
SEC Project No. USPS-0101

Dear Mr. Goddard,

Please accept this letter as confirmation that Stuhl Engineering Consultants, Inc. (SEC) perform an interim inspection of the construction at the above referenced project site. As requested by Advanced Technologies Systems Integrators, Corp. (ATC), I was present at the site on Thursday, January 24, 2002, to inspect the construction in progress. The following is offered to document my observations and to forward our recommendations for your consideration.

In general, the contractor has made moderate progress at this facility since our last inspection of January 11, 2002. The contractor appears to be taking an interest in completing the work required on the construction documents. We estimate that ATC will require, at least, two (2) more months to complete the work.

*Electrical Observations and Recommendations:*

Item #1 During our inspection of this facility, it was observed that the concrete pads have not been formed or poured for the cantilevered gates as shown on the architectural enlarged plans (Sheets A-7 and A-8A) of the construction documents. I reminded Mr. Costanzo about this issue and he informed me that the required concrete pads will be provided. In general, all six (6) of the gates are nearing completion with regard to the concrete and bollard work. None of the gates have had the pavement replaced and none of the electrically operated gates have been shipped to the site or installed. This item was also referenced in our January 11, 2002, "Field Investigation Report" as Item #1.



Stuhl Engineering Consultants, Inc.
1860 Anzle Avenue • Winter Park, Florida 32789 • Telephone (407) 645-5815 • Facsimile (407) 645-5812

SEC



Item #2 During our inspection of this facility, it was observed that the exterior conduits at the loading docks have not been painted to match the color of the surface on which they are attached. Additionally, the holes which were made for these conduits have not been patched. This item was also referenced in our January 11, 2002, "Field Investigation Report" as Item #2. Refer to notes No. 1 and No. 2 of the "General Electrical Notes" located on sheet E-1 of the construction documents for this requirement.

Item #3 During our inspection of this facility, it was observed that five (5) sections of the proposed console have been installed in the new control room for the Postal Police at this facility. The contractor requested assistance from SEC in determining where the two (2) fiber optic cabinets are to be installed within this room. It was determined that the fiber optic cabinets may be located along the west wall of the control room if they do not interfere with an inspector's exiting through the "Break-out" door. SEC required that ATC temporarily locate the fiber optic cabinets, then contact Inspector Eugene Payton to have him determine if the cabinets will be in the way of the "Break-out" door. During our discussion of the CCTV console, SEC again requested that ATC provide a drawing showing their proposed floor plan, elevation and assembly for the console. This request has been made on two (2) previous occasions. It should be noted that ATC has reconfigured the equipment shown on the construction documents and reduced the number of console sections from eight (8) sections to seven (7) sections. It should also be noted that, if ATC installs the console and it's components without submitting the required drawings, they run the risk of the installation's being rejected by SEC, the Postal Police and/or the U. S. Postal Service. We, again, stress the need for the drawings and remind ATC of the advice from Mr. Goddard that, "If it does not look good in your living room, don't install it without the approval of SEC and the Postal Service." Mr. Jose' Zamora of ATC informed me that all of the console sections have not been received by ATC for this project. SEC recommended that ATC consider using a half (low profile) section below the bullet-proof window. This suggestion is made to allow for the entire console to run straight across the wall without having to be broken up or turned.

Item #4 During our inspection of this facility, it was observed that all of the required lightning protection has not been installed. Refer to Amendment No. 1, Item #5 for the required lightning protection. Mr. Jose' Zamora of ATC stated that they are aware of this requirement and will provide the lightning protection. This item was also referenced in our January 11, 2002, "Field Investigation Report" as Item #6.

Item #5 During our inspection of this facility, SEC gave three (3) copies of the new air conditioning system drawing to Mr. John Costanzo of ATC. SEC gave direction to Mr. Costanzo that ATC is to provide a proposal to the U. S. Postal Service, via SEC, for the air conditioning. This proposal shall be labeled Modification No. 3 to the P&DC contract. SEC will review the proposal from ATC and will notify Mr. Jerry Goddard if we agree with the price. Mr. Goddard will then notify ATC if they are to proceed with the work. SEC informed ATC that they will be allowed to tap the side

SEC



of the existing ductwork in lieu of the top as shown on the drawing.

Item #6 During our inspection of this facility, SEC requested a manufacturer's cut sheet for the proposed flashing light to be installed at each end of the gate islands. Mr. Jose' Zamora of ATC requested that SEC provide him with a manufacturer's catalogue number. SEC referenced the description given in Item #6 of Amendment No. 1 to the contract documents. ATC shall provide SEC with a cut sheet for this item as soon as possible to allow us to review and approve or reject the light.

Item #7 During our inspection of this facility, SEC noted that the chamfer is missing around the concrete work at the gates and curbs. We informed ATC of this item and I was told that the chamfer would be provided.

Item #8 During our inspection of this facility, ATC requested clarification about the support for the fence to be installed. The construction documents require that the fencing be supported at the top and bottom. Mr. Zamora of ATC requested that they be allowed to support the fencing in the same manner as the existing fencing has been supported. SEC rejected this request and required the contractor to provide the support as shown on the construction documents for this project.

Item #9 During our inspection of this facility, SEC was provided with a manufacturer's cut sheet for the bullet-proof window to be installed in the new control room. SEC will forward the cut sheet along with this report for Mr. Goddard to review and approve or reject.

Item #10 During our inspection of this facility, it was observed that the new wall in the control room has been completed. SEC observed that the contractor needs to patch the wall around the conduits which ATC installed.

Item #11 During our inspection of this facility, it was observed that some of the proximity card readers for the Access Control System (ACS) have not been installed flush in the wall as required by the construction documents for this project. Specifically, along the south wall of the workroom, we observed three (3) card readers which were installed in a cast outlet box and surface mounted on the wall. The contractor will need to remove any assembly which has been surface mounted and which is required by the construction documents to be flushed.

Item #12 During our inspection of this facility, it was observed that the batteries have not been installed in the Altronics control cabinets. The Altronics controller are used to operate the maglocks at the various doors. These batteries must be provided as required by the construction documents prior to energizing the ACS components.

Item #13 During our inspection of this facility, Mr. John Costanzo of ATC brought up a very valid point regarding the installation of Gate No. 6. The existing fence between the employee parking lot and the truckers service road has been partially pushed over by employee cars backing into the parking spaces along the fence.

SEC



During our inspection of this facility, I was presented with the contractor's pay request (Application No. 15) which has been corrected to show the percentages identified in our "Field Investigation Report" dated January 11, 2002. I have signed one (1) copy of Application No. 15 and it is included with this report. During our inspection of this facility, I was presented with the contractor's pay request (Application No. 16) and Mr. Costanzo requested that we discuss the amounts during our inspection. After my inspection of the construction at this facility, I contacted Mr. Jose' Zamora of ATC and recommend that he completely revise the percentages for Application No. 16 before he submits it to SEC for approval.

In general, the work which was observed at this facility is beginning to accelerate. We are pleased to see that the work is progressing. Please do not hesitate to contact me with any questions you may have regarding this report or the items contained herein.

Very truly yours,

Joseph F. Stuhl, III
JFS/ash

Attachments: Pay Application No. 15
Manufacturer's cut sheet for control room window for Mr. Goddard review.

CC: John Costanzo, ATC

PROJECT MANAGER
FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

January 17, 2002

Advanced Technology Systems Integrators Corp.
Attn: Vince Vento
3500 N Miami Ave
Miami Fl 33127-3112

RE: Payment rejection, Pay request no.15 dated 1-8-02, Miami GMF Security and Access Control System, Contract no. 123125-00-B-3154.

Payment Request No. 15 as submitted to SEC on 1-8-02 is hereby rejected.

The pay request was reviewed by SEC. The amount requested was found to be greater than the actual work in place and stored materials would support.

I have included a letter from SEC indicating the amounts that we feel are justified by the actual work in place and for materials stored on site.

You may amend this payment to the suggested sums and re-submit or you can re-submit the original pay request when you have sufficient work and stored materials in place, to support the request.

If you have questions regarding this matter, you may contact me at 770-454-0629.

Sincerely,

Jerry Goddard
Project Manager

4000 DEKALB TECHNOLOGY PARKWAY BLDG 300 - SUITE 300
ATLANTA GA 30340-2799
770-454-0629
FAX: (770)454-0608

UNITED STATES POSTAL SERVICE.

# Facility and Fixed Mechanization Project Contract Payment Authorization

4211B (15)

Date 1-8-20

Control Number

...n Name
AMI - GMF (115851-G21)
AMI, FL 33152-9998

...cription of Work
...curity and Access Control System

| ...ject Authorization Number | Contract Number | Change Code | B/A Finance Number | FMS Project Number |
|---|---|---|---|---|
| ...H-115851-C-586 | 123125-00-B-3154 | | 115854 | H54096 |

| Item Description | Account Number | Index Code | Payment Amount (From Summary Line 8) |
|---|---|---|---|
| ... Bldg Constr (5BC | 86125 | 5BC | |

**Progress Payment Summary**

| | |
|---|---|
| 1. Initial Contract Amount | $ 1,308,990.00 |
| 2. Approved Change Amount | $ 853.00 |
| 3. Total Contract Amount to Date (Lines 1 + 2) | $ 1,309,843.60 |
| 4. Value of Work Completed to Date (Attach supporting data - incl. value of material received this period. Attach invoices) | $ 1,095,063.10 |
| 5. Amount of Retainage | $ 54,753.16 |
| 6. Sub Total (Line 4-5) | $ 1,040,309.95 |
| 7. Previous Payment Amount | $ 1,002,262.45 |
| 8. Amount of this payment (Lines 6 - 7) | $ 38,047.50 |

...ee Name and Address:
...VANCED TECHNOLOGY
...TEMS INTEGRATORS CORP
... MIAMI AVE
... FL 33127-3112

...ice Description:

| PPA Applies to This Payment | Invoice Received/Acceptance Date | ☐ Final Payment | PDC Use Only: VDR Code: |
|---|---|---|---|

**Contractor Certification**

...reby certify, to the best of my knowledge and belief, that -
The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;
The current payment shown herein is now due and has not been previously paid;
If this is a one time payment, subcontractors or suppliers will be paid within 30 calendar days after receipt of this payment, or
If this is not a one-time payment, payments to subcontractors and suppliers have been made from previous payments for payment, timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of Chapter 39 of title 31, United States Code; and
This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.
Penalty for making a false statement is prescribed by 18 USC1001

[signature] V J Veto — Date Signed 1/8/02

**Architect-Engineer Representative**

For Construction Contracts; in accordance with the contract and the Request for Payment the Contractor is entitled to payment in the amount shown above.

By [signature] — Date Signed 01/08/02

A-E Representative Title, Company, Address
President
Stuhl Engineering
1860 Anzle Ave
Winter Park, Florida 32789

REJECTED
SEE AUDIT REVIEW!

**Design/Construction Management Representative**

| Recommended For Payment | Date Signed |
|---|---|
| | |

| ...tracting Officer Name and Signature | Date Signed | Prepared By |
|---|---|---|
| ...RY GODDARD | | LESLIE L MARTIN (770) 454-0660 |

...roving Official Title, Address, and Phone Number (770)454-0629
...ECT MANAGER
... FSO
...EKALB TECH PKWY #300
...LANTA GA 30340-2799

Contact Person
LESLIE L MARTIN
ATLANTA FSO
4000 DEKALB TECH PKWY 300
ATLANTA GA 30340-2799

...orm 4211B, October 1995 - 20260-6425, Rev 8.00



ATSIC document production - March 4, 2005
0001515

**Continuation Sheet**

containing Contractor's signed Certification is attached.

To: United States Postal Service
Miami-P & DC

From: ATC Systems Integrators
3500 N. Miami Ave..

**AIA DOCUMENT G703**

APPLICATION #: 15
PERIOD FROM: 19-Dec-01
PERIOD TO: 7-Jan-02
PROJECT NO: H54096-GMF
CONTRACT DATE: 1/15/2001

| Item No. | Description of Work | Scheduled Value | Work Completed | | Stored Materials | Total Completed And | | Balance To Complete (C-G) | Retainage |
|---|---|---|---|---|---|---|---|---|---|
| | | | Q Applications | This Application | | Stored To Date (D+E+F) | % (G/C) | | |
| A | B | C | D | E | F | G | H | I | J |
| 1 | Mobilization | 65,450.00 | 65,450.00 | | | 65,450.00 | 100% | 0.00 | 3,272.50 |
| 2 | Bonds & Insurance | 16,590.00 | 16,590.00 | | | 16,590.00 | 100% | 0.00 | 829.50 |
| 3 | Bldg. Permits | 2,000.00 | 2,000.00 | | | 2,000.00 | 100% | 0.00 | 100.00 |
| 4 | O & M manuals | 1,900.00 | | | | 0.00 | 0% | 1,900.00 | 0.00 |
| 5 | Training | 3,000.00 | | | | 0.00 | 0% | 3,000.00 | 0.00 |
| 6 | CCTV System | 287,560.00 | 283,515.00 | | | 283,515.00 | 99% | 4,045.00 | 14,175.75 |
| 7 | CCTV System Labor | 45,200.00 | 31,765.00 | 2,000.00 | | 33,765.00 | 75% | 11,435.00 | 1,688.25 |
| 8 | Access Control System | 131,670.00 | 118,503.00 | | | 118,503.00 | 90% | 13,167.00 | 5,925.15 |
| 9 | Access Control System Labor | 32,900.00 | 16,500.00 | 6,500.00 | | 23,000.00 | 70% | 9,900.00 | 1,150.00 |
| 10 | Intercommunication System | 26,600.00 | 26,600.00 | | | 26,600.00 | 100% | 0.00 | 1,330.00 |
| 11 | Intercommunication System Labor | 8,500.00 | | 1,250.00 | | 1,250.00 | 15% | 7,250.00 | 62.50 |
| 12 | Console Configuration/Calibration | 3,500.00 | | 1,400.00 | | 1,400.00 | 40% | 2,100.00 | 70.00 |
| 13 | Trenching, patching, concrete | 59,000.00 | 47,350.00 | 4,000.00 | | 51,350.00 | 87% | 7,650.00 | 2,567.50 |
| 14 | Gates, Fencing, Bollards | 136,400.00 | 81,840.00 | 9,500.00 | | 91,340.00 | 67% | 45,060.00 | 4,567.00 |
| 15 | Turnstiles and Handicap Gate | 72,620.00 | | | | 0.00 | 0% | 72,620.00 | 0.00 |
| 16 | Switchgear, Conduit, Fittings | 128,000.00 | 121,600.00 | | | 121,600.00 | 95% | 6,400.00 | 6,080.00 |
| 17 | Lighting and Poles | 18,600.00 | 16,830.00 | 850.00 | | 17,680.00 | 95% | 920.00 | 884.00 |
| 18 | Cable and Installation | | | | | | | | |
| a | Materials - Cable | 56,250.00 | 50,625.00 | | | 50,625.00 | 90% | 5,625.00 | 2,531.25 |
| b | Cable Instalation Labor | 33,750.00 | 15,187.50 | 6,750.00 | | 21,937.50 | 65% | 11,812.50 | 1,096.88 |
| c | Switchgear, Conduit, Fittings - Labor | 135,000.00 | 114,750.00 | 6,900.00 | | 121,650.00 | 90% | 13,350.00 | 6,082.50 |
| 19 | Project Management | 44,500.00 | 36,250.00 | 900.00 | | 37,150.00 | 83% | 7,350.00 | 1,857.50 |
| 21 | Mod #1 - Additional Vicon Equipment | 9,657.60 | 9,657.60 | | | 9,657.60 | 100% | 0.00 | 482.88 |
| 22 | Mod # 2 (CO# 2,3 & 4) | -8,804.00 | | | | 0.00 | 0% | (8,804.00) | 0.00 |
| | | | | | | | | | |
| | | | | | | | | | |
| | SUB TOTAL OR TOTAL | $1,309,843.60 | $1,055,013.10 | $40,050.00 | $0.00 | $1,095,063.10 | 84% | $214,780.50 | $54,753.16 |

Contractor:
Secure Technologies
Integrators, Inc.
P.O. Box 1451
Miami, FL 33157

| Employee | Classification | week ended 12/23/2001 | week ended 12/30/2001 | week ended 1/6/2002 | week ended 1/13/2002 | week ended 1/20/2002 |
|---|---|---|---|---|---|---|
| Osvaldo Lima | Electrician | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Jose Munoz | Electrician | 1,336.35 | 1,653.45 | 1,359.00 | 0.00 | 0.00 |
| Elvira Vidal | Laborer | 441.00 | 495.00 | 432.00 | 0.00 | 0.00 |
| Nelly Silva | Laborer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Bolivar Moscosa Sr. | Laborer | 360.00 | 432.00 | 504.00 | 0.00 | 0.00 |
| Luis Perez | Electrician | 1,359.00 | 1,359.00 | 1,245.75 | 0.00 | 0.00 |
| Lorenzo McDowell | Electrician | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Kama Jackson | Laborer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Nelva Albisa | Laborer | 369.00 | 405.00 | 288.00 | 0.00 | 0.00 |
| Bolivar Moscoso | Laborer | 480.00 | 576.00 | 672.00 | 0.00 | 0.00 |
| Osvaldo Rimada | Electrician | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Diego Valez | Laborer | 486.00 | 468.00 | 288.00 | 0.00 | 0.00 |
| Ceasar Gonzalez | Laborer | 360.00 | 360.00 | 288.00 | 0.00 | 0.00 |
| Jorge Gomez | Laborer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Jose Garcia | Laborer | 360.00 | 432.00 | 288.00 | 0.00 | 0.00 |
| Rublela Norena | Laborer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Luis Rodriguez | Laborer | 440.00 | 440.00 | 528.00 | 0.00 | 0.00 |
| Alexander Gonzalez | Laborer | 0.00 | 72.00 | 0.00 | 0.00 | 0.00 |
| Nick Monresino | Laborer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Efrain Freire | Laborer | 792.00 | 660.00 | 768.00 | 0.00 | 0.00 |
| Alonso Libardo | Laborer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Rollee Venson | Laborer | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Armando Allegretti | Laborer | 504.00 | 504.00 | 504.00 | 0.00 | 0.00 |
| Column Totals: | | 7,287.35 | 7,856.45 | 7,164.75 | 0.00 | 0.00 |
| | | | | total | | 22,308.55 |

I hereby certify that these hours are true and correct: [signature]

SEC

January 11, 2002

Mr. W. Jerry Goddard, R.A.
Architect/Project Manager
United States Postal Service
Facilities Service Office
Building 300 - Suite 300
4000 DeKalb Technology Parkway
Atlanta, Georgia 30340-2799

## FIELD INVESTIGATION REPORT

Project: U. S. Postal Service - Process and Distribution Center (P&DC)
Facility and Employee Security Upgrades
City of Miami, Florida
SEC Project No. USPS-0101

Dear Mr. Goddard,

Please accept this letter as confirmation that Stuhl Engineering Consultants, Inc. (SEC) was requested by Mr. John Costanzo, of Advanced Technologies Systems Integrators, Corp. (ATC) to performed and did perform an interim inspection of the construction at the above referenced project site. As requested by Mr. Costanzo, I was present at the site on Tuesday, January 8, 2002, to inspect the construction in progress. The following is offered to document my observations and to forward our recommendations for your consideration.

In general, this facility has progressed very well from our last inspection of December 18, 2001. The contractor appears to be taking an interest in completing the work required on the construction documents. We estimate that ATC will require, at least, two (2) more months to complete the work.

*Electrical Observations and Recommendations:*

Item #1 During our inspection of this facility, it was observed that the concrete pads have not been formed or poured for the cantilevered gates as shown on the architectural enlarged plans (Sheets A-7 and A-8A) of the construction documents. I reminded Mr. Costanzo about this issue and he informed me that the required concrete pads will be provided. In general, five (5) of the gates are nearing completion with regard to the concrete and bollard work. None of the gates have had the pavement replaced and none of the electrically operated gates have been installed.

Stuhl Engineering Consultants, Inc.
1860 Anzle Avenue • Winter Park, Florida 32789 • Telephone (407) 645-5815 • Facsimile (407) 645-5812

SEC



Item #2 During our inspection of this facility, it was observed that the exterior conduits at the loading docks have not been painted to match the color of the surface on which they are attached. I spoke with Mr. Costanzo about this item and showed him where this is required in notes No. 1 and No. 2 of the "General Electrical Notes" located on sheet E-1 of the construction documents. Mr. Costanzo informed me that the conduits will be painted as required. In a further discussion regarding the exposed conduits inside of the building, it was agreed that, if the new conduit is installed on a wall which has existing, unpainted exposed conduits, the new conduit does not need to be painted. If the new conduit is installed on a wall which does not have existing, unpainted exposed conduits, the new conduit will need to be painted.

Item #3 During our inspection of this facility, Mr. Costanzo requested that SEC assist in determining how to install the water-proof fiber optic cables in the underground conduits which have been installed. After further discussion it was discovered that ATC has begun to install a substitute cable which was not submitted to SEC for our review and approval. The cable which was submitted to SEC for our review and was approved in our "Shop Drawing Review" letter, dated July 2, 2001, was not used. We recommend that ATC remove the cable which has been installed and provide the cable which was approved for use at the AMC and this facility.

Item #4 During our inspection of this facility, it was observed that some of the components for the proposed console have been installed. The contractor showed SEC the type of casters which they intended to use under the console. SEC pointed out that the specified casters are to be metal and not plastic. SEC will attempt to locate a manufacturer for the casters and supply that information to the contractor.

Item #5 During our inspection of this facility, it was observed that the contractor has installed the walls of the proposed control room at this facility. SEC observed the installation and it was decided that we will provide ATC with a design for installation of new air conditioning for the control room. SEC will forward our drawing for the contractor to price as soon as it has been completed.

Item #6 During our inspection of this facility, it was observed that the lightning protection has not been provided on the existing light poles which are provided with a new CCTV camera, as required by Item No. 5 of Amendment No. 1. SEC provided a copy of the amendment to the contractor during this inspection. The lightning protection is required to be provided on both the new and existing poles where a CCTV camera is to be installed.

During our inspection of this facility, I was presented with the contractor's pay request (Application No. 15) and Mr. Costanzo requested that we discuss the amounts. After my inspection of the construction at this facility I recommend the following percentages for Application No. 15:

Item No. 1 100% as submitted.
Item No. 2 100% as submitted.
Item No. 3 100% as submitted.
Item No. 4 0% as submitted.

SEC

U. S. Postal Service - Security Upgrades - P&DC
City of Miami, Florida
SEC Project No. USPS-0101 - Page 3

| | |
|---|---|
| Item No. 5 | 0% as submitted. |
| Item No. 6 | 99% as submitted. |
| Item No. 7 | ATC requests 75% - SEC recommends 70% be approved. |
| Item No. 8 | 90% as submitted. |
| Item No. 9 | ATC requests 70% - SEC recommends 55% be approved. |
| Item No. 10 | 100% as submitted. |
| Item No. 11 | 15% as submitted. |
| Item No. 12 | ATC requests 40% - SEC recommends 20% be approved. |
| Item No. 13 | ATC requests 87% - SEC recommends 80% be approved. |
| Item No. 14 | 67% as submitted. |
| Item No. 15 | 0% as submitted. |
| Item No. 16 | 95% as submitted. |
| Item No. 17 | ATC requests 95% - SEC recommends 90% be approved. |
| Item No. 18a | 90% as submitted. |
| Item No. 18b | ATC requests 65% - SEC recommends 45% be approved. |
| Item No. 18c | ATC requests 90% - SEC recommends 85% be approved. |
| Item No. 19 | this item will need to be adjusted to be concurrent with the approved amounts. |
| Item No. 21 | 100% as submitted. These items need to be provided to the U. S. Postal Service. |

In general the work which was observed at this facility is beginning to accelerate. We are pleased to see that the work is progressing. Please do not hesitate to contact me with any questions you may have regarding this report or the items contained herein.

Very truly yours,

Joseph F. Stuhl, III
JFS/ash

CC: John Costanzo ATC

F:\OFFICE\DATA\U. S. POSTAL SERVICE\2001\0101\INSPECTION-3