IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP. and INTERNATIONAL FIDELITY INSURANCE COMPANY, | ) | |
| Plaintiffs, | ) | No. 03-1953C |
| | ) | (Senior Judge Margolis) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF ATSIC'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

STEPHEN D. LOBAUGH
Attorney
Law Department – Civil Practice
Commercial & Appellate Litigation
United States Postal Service
475 L'Enfant Plaza SW
Washington, DC 20260

MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Class. Unit 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Phone: (202) 353-0536
Fax: (202) 305-7643

July 14, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S RESPONSE TO PLAINTIFF ATSIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . 1

ARGUMENT . . . . . 2

I. There Is No Material Dispute That The Parties Waived Claims Arising Prior To Modification No. 11 And Agreed To A Revised Completion Date Of July 15, 2002 . . . . . 2

A. The Parties Waived Claims Arising Prior To Modification No. 11 . . . . . 2

B. Modification No. 11 Established A Revised Completion Date Of July 15, 2002 . . . . . 3

1. The Government Did Not Modify The Contract Completion Date Through Its Second Show Cause Letter . . . . . 4

2. The Government Did Not Modify The Contract Completion Date Of The P&DC Project Through A Modification To The AMC Project . . . . . 6

II. The Government Did Not Waive Its Right To Terminate For Default . . . . . 6

A. The Government Did Not Waive Its Right To Terminate For Default Prior To Modification No. 11 . . . . . 6

B. Even If The Right To Terminate Had Been Waived, The Government's Second Show Cause Letter And Modification No. 11 Reestablished That Right . . . . . 12

III. Modification No. 11 Is Not Void Based Upon Duress . . . . . 15

IV. Plaintiffs Cannot Establish Excusable Delay After Modification No. 11 . . . . . 18

V. This Court Should Dismiss, Or In The Alternative, Grant Summary Judgment In Favor Of The Government As To Plaintiffs' Claim For Breach Of Duty Of Good Faith & Fair Dealing . . . . . 22

VI. This Court Should Grant Summary Judgment As To ATSIC's Miscellaneous Claims . . . . . 24

A. The Government Did Not Violate A Contractual Requirement For A 10-Day Cure Period . . . . . 24

**TABLE OF CONTENTS (CON'T)**

**PAGE(S)**

B. The Government Did Not Violate The Contract Disputes Act By Allegedly Failing To Respond In A Timely Fashion To A CDA Claim . . . . . 24

C. USPS Did Not Violate Section 6.9.3b7(c)(6) Of The USPS Purchasing Manual . . . . . 25

D. USPS Did Not Violate Section 6.9.3b7(a) Of The USPS Purchasing Manual . . . . . 26

E. ATSIC Is Not Entitled To Attorneys Fees . . . . . 27

F. ATSIC's Contention Regarding The Credit Modification In The Amount Of $ 52,137.10 Is Incorrect . . . . . 27

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

ABCON Assoc. v. United States,
44 Fed. Cl. 625 (1999) . . . . . . . . . . . . passim

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . . . 16, 17, 23

Appeals of Essential Constr. Co., Inc., ASBCA 18491,
1978 WL 2282 (1978) . . . . . . . . . . . . 20

Aptus Co. v. United States,
61 Fed. Cl. 638 (2004) . . . . . . . . . . . . 11, 12

Asco-Falcon II Shipping Co. v. United States,
32 Fed. Cl. 595 (1994) . . . . . . . . . . . . 23

Bernardi Brothers v. United States,
47 Fed. Cl. 708 (2000) . . . . . . . . . . . . 11, 12

Brent Sellick, ASBCA 21869,
1978 WL 2372 . . . . . . . . . . . . 11

Car Carriers, Inc. v. Ford Motor Co.,
745 F.2d 1101 (7th Cir. 1984) . . . . . . . . . . . . 15, 26

Centex Corp. v. United States,
395 F.3d 1283 (Fed. Cir. 2005) . . . . . . . . . . . . 23

Chambery v. United States,
54 Fed. Cl. 2 (2002) . . . . . . . . . . . . 23

Continental Collection & Disposal, Inc. v. United States,
29 Fed. Cl. 644 (1993) . . . . . . . . . . . . 23

Conway v. United States,
56 Fed. Cl. 572 (2003) . . . . . . . . . . . . 23

Crest A Apartments, Ltd. II v. United States,
52 Fed. Cl. 607 (2002) . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES (CON'T)

**CASES** **PAGE(S)**

D.V. Gonzalez Elec. & Gen. Contractors, Inc. v. United States,
55 Fed. Cl. 447 (2003) . . . . . . . . . . 23

Devito v. United States,
413 F.2d 1147 (Ct. Cl. 1969) . . . . . . . . . . 7, 8

Fru-Con Constr. Corp. v. United States,
44 Fed. Cl. 298 (1999) . . . . . . . . . . 20

Indemnity Ins. Co. of North Am. v. United States,
14 Cl. Ct. 219 (1988) . . . . . . . . . . 7, 8

Indemnity Ins. Co.,
14 Cl. Ct. at 222 (1988) . . . . . . . . . . 11

International Telephone & Telegraph Corp. v. United States,
206 Ct. C 509 F.2d 541 (1975) . . . . . . . . . . 14

Jackson v. United States,
12 Cl. Ct. 363, 366 (1987) . . . . . . . . . . 14

Johnson, Drake & Piper, Inc. v. United States,
209 Ct. C 531 F.2d 1037 (1976) . . . . . . . . . . 16

Lawmaster v. Ward,
125 F.3d 1341 (10th Cir. 1997) . . . . . . . . . . 15, 26

McDonnell Douglas Corp. v. United States,
323 F.3d 1006 (Fed. Cir. 2003) . . . . . . . . . . 13

Mega Constr. Co., Inc. v. United States,
29 Fed. Cl. 396 (1993) . . . . . . . . . . 27

Miller Elevator Co., Inc. v. United States,
30 Fed. Cl. 662 (1994) . . . . . . . . . . 27

Olson Plumbing & Heating Co. v. United States,
221 Ct. C 602 F.2d 950 (1979) . . . . . . . . . . passim

Pelliccia v. United States,
208 Ct. C 525 F.2d 1035 (1975) . . . . . . . . . . 14

## TABLE OF CONTENTS (CON'T)

**CASES** **PAGE(S)**

Sun Cal, Inc. v. United States, 21 Cl. Ct. 31, 39 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Precision Pine & Timber, Inc. v. United States,
62 Fed. Cl. 635 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Progressive Bros. Constr. Co., Inc. v. United States,
16 Cl. Ct. 549, 553-54 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rodriguez v. United States,
69 Fed. Cl. 487 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rumsfeld v. Freedom NY, Inc.,
329 F.3d 1320 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sun Cal, Inc. v. United States, 21 Cl. Ct. 31, 39 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Schweiger Contr. Co., Inc. v. United States,
49 Fed. Cl. 188 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Simmonds Precision Products, Inc. v. United States,
212 Ct. C 546 F.2d 886 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sun Cal, Inc. v. United States,
21 Cl. Ct. 31, 39 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tennessee Valley Authority v. United States,
60 Fed. Cl. 665 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**STATUTES**

41 U.S.C. § 605(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP. and INTERNATIONAL FIDELITY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 03-1953C<br>(Senior Judge Margolis) |

**DEFENDANT'S RESPONSE TO PLAINTIFF ATSIC'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, the United States, respectfully submits this response to plaintiff ATSIC's motion for partial summary judgment. As we demonstrated in our motion for partial summary judgment, the Court should grant summary judgment in favor of the Government as to count I (appeal of default termination), count II (affirmative damages based upon termination for convenience), and count III (breach of the covenant of good faith and fair dealing) of plaintiffs' complaint because there are no genuine issues of material fact and the Government is entitled to judgment as a matter of law.

In its motion for partial summary judgment, ATSIC moves for summary judgment primarily with respect to the same matters addressed in the Government's motion.[1] However, ATSIC fails to demonstrate that it is entitled to summary judgment as to these matters. Rather, ATSIC focuses its attention upon events and disputes that occurred prior to Modification No. 11

[1] ATSIC also moves for summary judgment with respect to two matters unrelated to the Government's motion: (1) its claims for attorneys fees; and (2) a credit modification to the P&DC contract, which decreased the contract amount by $ 52,137.10. Pl. Mot. at 4, 44-46.

to the contract. As we demonstrated in our motion for partial summary judgment, through Modification No. 11, the parties agreed to a revised completion date extending the required completion date by more than 300 days, and agreed to waive any claims that the parties might have had at that time. ATSIC now wishes to undo the agreement the parties reached through Modification No. 11, however, ATSIC has failed to provide a valid basis for voiding the parties' agreement. Consequently, the Government is entitled to summary judgment as to all claims arising prior to Modification No. 11. As to events subsequent to Modification No. 11, ATSIC fails to demonstrate facts upon which a reasonable fact-finder could find that ATSIC was entitled to excusable delay, or that the termination for default was improper for any other reason.

## ARGUMENT

### I. There Is No Material Dispute That The Parties Waived Claims Arising Prior To Modification No. 11 And Agreed To A Revised Completion Date Of July 15, 2002

#### A. The Parties Waived Claims Arising Prior To Modification No. 11

As we demonstrated in our motion for partial summary judgment, the parties agreed in Modification No. 11 to expressly waive claims arising prior to Modification No. 11 and agreed to a revised completion date of July 15, 2002. Def. Mot. at 8-9. ATSIC's motion for partial summary judgment does not raise any genuine issues of dispute regarding either the waiver of prior claims through Modification No. 11, or the revised completion date.

As we have previously demonstrated, Modification No. 11 was preceded by a variety of disputes, including a possible termination for default of the P&DC contract following USPS's second show cause letter dated May 1, 2002. Def. Prop. Finding No. 15. Through Modification No. 11, the parties expressly agreed to settle these disputes by establishing a revised completion date and by waiving prior claims. Modification No. 11 is described in the modification as a

"Settlement of issues through ATC proposed mod 9 and USPS mod 10 & 11." App. 100.[2] Modification No. 11 states, "By signing this mod, both parties agree that all issues through mod 11 and 5/29/02 are mutually agreed to and will not be made a part of any claim arising out of or related to either contract 123125-00-B-3153 or 123125-00-B-3154." Id. (underscoring in original). Therefore, as we demonstrated in our motion for partial summary judgment, ATSIC is barred from asserting any claims that arose prior to Modification No. 11, based upon the parties' express, and unambiguous, waiver of claims through Modification No. 11.

**B. Modification No. 11 Established A Revised Completion Date Of July 15, 2002**

ATSIC does not dispute that as part of Modification No. 11, the parties expressly agreed to a revised completion date of July 15, 2002. Compl. ¶ 13 ("On June 20, 2002, ATSIC and USPS compromised and settled their dispute by execution of Contract Modification No. 11, which established a new contract completion date of July 15, 2002 . . . .")[3]; see also Vento Tr. at 105-06 (stating his understanding that Modification No. 11 established a revised completion date of July 15, 2002). This revised completion date was established over the course of more than a month of negotiations leading up to the settlement embodied in Modification No. 11. The parties initially discussed a revised completion date of June 15, 2002, which was extended to June 30, 2002, and then July 15, 2002 based upon requests by ATSIC over the course of the negotiations. Supp. App. 32 (Memo dated May 21, 2002 from Jerry Goddard to Greg Warren (ATSIC)); Supp. App. 33 (letter dated May 23, 2002, from Mr. Warren to Jerry Goddard); Supp. App. 1 (Goddard 2nd Aff. ¶ 3).

---

[2] "App. __" refers to the Government's appendix, filed April 28, 2006. "Supp. App. __" refers to the Government's supplemental appendix, filed contemporaneously with this response brief.

[3] Unless otherwise indicated, "Compl." refers to plaintiffs' second amended complaint.

Although ATSIC recognizes in its complaint and elsewhere that Modification No. 11 established a revised completion date of July 15, 2002, ATSIC also contends that two prior or contemporaneous documents established different revised completion dates. Pl. Mot. 38-39. More specifically, ATSIC contends that USPS established a revised completion date for the P&DC project of September 10, 2002 through its second show cause letter, dated May 1, 2002, and established a revised completion date of December 19, 2002, through a modification to the AMC project executed at the same time Modification No. 11 was executed. Id. These contentions lack any merit and do not create a genuine dispute as to the revised completion date at the time USPS terminated ATSIC for default.

### 1. The Government Did Not Modify The Contract Completion Date Through Its Second Show Cause Letter

By letter dated May 1, 2002, USPS issued its second show cause letter to ATSIC, informing ATSIC that it was considering terminating ATSIC for default for failure to complete the P&DC project by the revised completion date, among other reasons. App. 63. ATSIC seizes upon a typographical error in this show cause letter to claim that USPS revised the completion date to be September 10, 2002, rather than September 10, 2001. While it is true that the show cause letter identifies the revised completion date at that time to be in 2002, rather than 2001, under no circumstances can this letter be interpreted as a modification of the completion date.

To begin, ATSIC agrees in its proposed findings of fact that as of May 1, 2002, the revised completion date was in September, 2001: "On May 1, 2002, two hundred thirty-three (233) says after the revised completion date . . . ." Pl. Prop. Findings ¶ 15. Furthermore, the Government's second show cause letter is not in the form of a contract modification, and nothing in the letter indicates that USPS intended to modify the contract. In addition, ATSIC's contention that the revised completion date was established to be September 10, 2002 through

the show cause letter is inconsistent with other portions of the show cause letter which state that the contract is in default for failure to complete by the completion date, and that ATSIC is currently accruing liquidated damages. App. 63. Both of those statements would be nonsensical if USPS had established a revised completion date four months in the future.

Furthermore, any suggestion that the second show cause letter modified the contract to establish a September 10, 2002 completion date is belied by bilateral modifications signed by ATSIC prior to the Government's issuance of the second show cause letter. The original completion date was September 2, 2001. Def. Prop. Finding No. 3; Pl. Prop. Finding No. 4. Through three modifications approved on March 12, 2002, USPS and ATSIC agreed to contract extensions totaling eight days, resulting in a revised completion date of September 10, 2001. Def. Resp. to Pl. Prop. Finding No. 11; Supp. App. 12 (Modification No. 1, extending the contract completion date by two days, to September 4, 2001); Supp. App. 21 (Modification No. 6, extending the contract completion date by one day, to September 5, 2001); Supp. App. 25 (Modification No. 7, extending the contract completion date by five days, to September 10, 2001). Modification No. 7 and Modification No. 8, signed by USPS in March, 2002, recited a revised completion date of September 10, 2001. Supp. App. 25; Pl. Mot. Ex. 4. Furthermore, Modification Nos. 9 & 10, agreed to by the parties after USPS's second show cause letter, recited that the revised contract completion date as of those modifications was still September 10, 2001. Supp. App. 35; App. 96. Vincent Vento, on behalf of ATSIC, signed each modification which indicated the revised dates at the bottom of each page. Supp. App. 21, 25, 35; Pl. Mot. Ex. 4; App. 96.

Finally, ATSIC has not cited any testimony which supports its position that prior to Modification No. 11 USPS had extended the contract completion date through September 10,

2002. In the portion of Mr. Warren's testimony cited by ATSIC, Mr. Warren merely refers to the date as erroneously stated in the May 1, 2002 show cause letter. Warren Tr. 121.

### 2. The Government Did Not Modify The Contract Completion Date Of The P&DC Project Through A Modification To The AMC Project

ATSIC also contradictorily asserts that, through a modification to the AMC contract, the parties agreed to a revised completion date for the P&DC contract of December 10, 2002. Pl. Mot. at 38-39. This assertion has no merit given that the modification cited by ATSIC was to the AMC contract, not the P&DC contract. App. 98. Furthermore, the terms of this modification cannot reasonably be interpreted as establishing a new completion date for the P&DC project. Id. Lastly, on the same dates that the parties signed this modification to the AMC contract, the parties also signed Modification Nos 9 and 10 to the P&DC project, showing that the completion date for the P&DC project, as of those modifications, was September 10, 2001. Supp. App. 35; App. 96. On the same dates, the parties also signed Modification No. 11, which modified the contract to establish the revised completion date of July 15, 2002, and waived any claims existing at that time. App. 100.

## II. The Government Did Not Waive Its Right To Terminate For Default

ATSIC contends that USPS waived its right to terminate for default prior to entering into Modification No. 11. Pl. Mot. at 18-21. ATSIC also contends that USPS failed to reinstate its right to terminate for default through Modification No. 11. Pl. Mot. at 18-21. Both contentions are incorrect.

### A. The Government Did Not Waive Its Right To Terminate For Default Prior To Modification No. 11

Contrary to ATSIC's contention, USPS did not waive its right to terminate for default prior to the parties' settlement of outstanding claims through Modification No. 11. Although it

is possible for the Government to waive its right to terminate for default for failure to complete a project by the required completion date, no such waiver occurred in this case.

ATSIC relies in part upon Devito v. United States, 413 F.2d 1147 (Ct. Cl. 1969), a case which does not support ATSIC's position. Pl. Mot. at 18-19. In Devito, the Government entered into a contract to provide wire-splicing kits. 413 F.2d at 1149. The Government indicated that it would extend the required delivery dates by three months, so that 1000 units would be delivered by November 29, 1960, and 2,000 units each month thereafter. Id. at 1150. Due to an abrupt shutdown of a key supplier, the contractor was only able to deliver 420 units between November 30, 1960, and December 30, 1960, and the contractor had accelerated production to provide further deliveries when the Government terminated the contract on January 16, 1961. Id.

The court identified the requirements of waiver of termination for default:

> The necessary elements of an election by the non-defaulting party to waive default in delivery under a contract are (1) failure to terminate within a reasonable time after the default under circumstances indicating forbearance, and (2) reliance by the contractor on the failure to terminate and continued performance by him under the contract, with the Government's knowledge and implied or express consent.

Id. at 1154.

The court held that, under the circumstances in that case, the necessary elements for waiver had been met. Id. at 1155. In reaching this conclusion, the Court found it noteworthy that the Government had given no indication it was considering termination between the time that the contractor missed the first delivery date and the date of termination. Id. at 1154-55.

The Court of Claims' decision in Devito is distinguishable for several reasons. First, Devito involved a supply contract, rather than a construction contract. In Indemnity Ins. Co. of North Am. v. United States, 14 Cl. Ct. 219 (1988), the Claims Court considered whether the Devito rule could apply to construction contracts. Id. at 222-25. After examining precedent

from the Court of Claims and boards of contract appeals, as well as the rationale behind the waiver rule, the Claims Court held that the Devito rule could apply to a construction case, but only in exceptional circumstances. Id. at 224. The court in Indemnity Ins. Co. held that exceptional circumstances were not present, and that the lapse of almost three months from the required completion date to termination for default did not result in a waiver of the completion date. Id. at 222, 227.

Second, the Court of Claims has held, "[w]here the right to terminate has been expressly reserved or when liquidated damages have been imposed by the non-breaching party, the other party has a heavier burden of proving that the right to terminate for failure to deliver on time has been waived." Olson Plumbing & Heating Co. v. United States, 221 Ct. Cl. 197, 602 F.2d 950, 955 (1979). In Olson Plumbing, the Government did not terminate for default until more than one year after the revised completion date. Id. at 953-954.[4] However, during the time period between the revised completion date and the termination for default, the Government had expressly reserved its rights to terminate for default and had assessed liquidated damages against the contractor. Id. at 953-55. Under these circumstances, the Court held that there was no waiver of the completion date and that the Government could terminate for failure to meet the completion date. Id. at 955. Therefore, the Court granted summary judgment in favor of the Government. Id. at 959.

Similarly, in ABCON Assoc. v. United States, this Court held that a lapse of more than one year between the required completion date and termination for default did not result in a waiver of the completion date in a contract with USPS. ABCON Assoc., 44 Fed. Cl. at 626-28,

[4] The revised completion date in Olson Plumbing was September 8, 1971, and the contract was terminated for default on October 17, 1972. Id.

631.[5] The Court stated that the Government can retain its rights with respect to the completion date by "expressly indicating as much to the other party or by assessing liquidated damages." Id. at 629. In that case, there was no waiver because the Government had expressly reserved its right to terminate for default in a show cause letter issued ten months prior to termination. Id. at 631. Furthermore, USPS assessed liquidated damages against the contractor, although USPS refunded the liquidated damages two months prior to termination. Id. at 627-30. The Court found that there was no waiver of the completion date. Id. at 631.

In addition, the Court held that, even if the completion date had been extended by approximately eleven months, as the contractor contended, there had been no showing of reliance to support a claim of waiver after the allegedly extended completion date. Id. at 631, n.5. With respect to reliance, the Court noted that "Plaintiff's simply continuing performance does not suffice to demonstrate reliance." Id. Therefore, the Court granted the Government's motion for summary judgment. Id. at 633.

The facts in this case present as strong, if not stronger, a basis for rejecting a waiver of termination claim as the facts in Olson Plumbing and ABCON Assoc.. Like Olson Plumbing and ABCON Assoc., in this case USPS expressly reserved its right to terminate the contract. App. 46 (first show cause letter from USPS to ATSIC, dated January 4, 2002). In fact, this case involves an express reservation of termination rights that is identical to the reservation of rights in ABCON Assoc.. Compare ABCON Assoc., 44 Fed. Cl. at 631, with App. 46. Furthermore, like Olson Plumbing and ABCON Assoc., USPS indicated that it was assessing liquidated damages for failure to complete by the revised completion date. Supp. App. 6 (letter dated

[5] In ABCON Assoc., there were three applicable completion dates. The earliest completion date, for phase 1b work, was December 1, 1996. Id. at 626. Phase 1b work was not complete at the time of termination for default on December 31, 1997. Id. at 628, 632.

January 3, 2002 from USPS to ATSIC: "The current contract completion date is 9-02-01. Liquidated damages are accruing at $100/day, since that date."); App. 46 (first show cause letter from USPS to ATSIC, dated January 4, 2002: "At this time the Project is in liquidated damages of $100/day."); Supp. App. 7 (e-mail dated January 28, 2002 from USPS to ATSIC: "Your contract remains in liquidated damages of $100/day."); Supp. App. 30 (letter dated March 12, 2002 from USPS to International: "Liquidated damages are being assessed."). Based upon these facts alone, this Court should hold, as the courts did in Olson Plumbing and ABCON Assoc., that the Government is entitled to summary judgment as to the alleged waiver.

Even if the above were insufficient to establish that there was no waiver of the Government's right to terminate, other facts in this case further support an entry of summary judgment as to ATSIC's waiver claim. First, USPS repeatedly informed ATSIC that it was subject to termination for default for failure to complete the project by the completion date. See, e.g., App. 46 (first show cause letter from USPS to ATSIC, dated January 4, 2002); Supp. App. 9 (letter dated February 21, 2002 from USPS to ATSIC: "Failure to perform on the contract gives USPS the right to terminate the contract should we choose to do so in the future."); Supp. App. 30 (letter dated March 12, 2002 from USPS to International: "Project is in danger of being terminated if work does not proceed."); App. 63 (second show cause letter, dated May 1, 2002, from USPS to ATSIC, indicating that USPS is considering terminating for default for failure to complete by the revised completion date). Second, given the events of September 11, 2001 and the anthrax attacks through the mail shortly after September 11, it would have been impossible for ATSIC to have believed that USPS did not consider time to be of the essence in completing the security for the postal facility, even if USPS had not made this explicit in its correspondence. See, e.g., Supp. App. 13 (letter dated March 13, 2002 from Stuhl Engineering to Zamora, referring to the importance of completing the security for the facility in light of the events of

September 11, 2001). Third, in the spring of 2002, ATSIC acknowledged the continuing applicability of a September, 2001 completion date by agreeing to modifications which extended the completion from September 2, 2001 to September 10, 2001. Supp. App. 21, 25, 35; Pl. Mot. Ex. 4; App. 96.

Fourth, ATSIC cannot demonstrate that it relied upon any alleged waiver of the right to terminate for default. Merely continuing performance does not constitute detrimental reliance in the construction context. See ABCON Assoc. v. United States, 44 Fed. Cl. 625, 629 (1999) ("For construction contracts, 'continued performance alone will not ordinarily support a claim of waiver.'"), quoting Indemnity Ins. Co., 14 Cl. Ct. at 222 (1988); Brent Sellick, ASBCA 21869, 1978 WL 2372 (stating that when the contract has typical construction contract provisions such as liquidated damages for failure to complete by the completion date, "detrimental reliance on the contractor's part cannot be found merely from a period of Government forbearance coupled with continued contractor performance in reliance thereon."). In this case, ATSIC cannot show detrimental reliance because it cannot show anything more than continued performance after the completion date.[6]

ATSIC also relies upon Bernardi Brothers v. United States, 47 Fed. Cl. 708 (2000), and Aptus Co. v. United States, 61 Fed. Cl. 638 (2004), to support its contention that USPS waived the completion date prior to entering into Modification No. 11. Pl. Mot. at 18-19. Neither of these cases supports ATSIC's position. Bernardi Brothers was not a construction case, and this Court held that the Government had never intended time to be of the essence in the contract. 47 Fed. Cl. at 712-13 (applying Virginia law to a contract for the sale of land). The discussion of

[6] Although ATSIC suggests in passing that it relied upon the alleged forbearance by the Government by incurring "increased, exaggerated overhead," Pl. Mot. at 19, ATSIC does not identify any document or testimony to support this contention.

waiver of the completion date was therefore dicta, and in any event there is no indication that the Government in that case expressly reserved its termination rights or assessed liquidated damages. Id. Therefore, Bernardi Brothers is distinguishable from cases such as Olson Plumbing, ABCON Assoc., and this case.

Aptus involved allegedly fraudulent statements regarding the qualifications of the contractor's principal officer and the contractor's staffing, rather than the completion date. 61 Fed. Cl. at 649. Unlike Olson Plumbing, ABCON Assoc., and this case, there is no indication in Aptus of a reservation of rights by the Government or liquidated damages. Id. Therefore Aptus does not support ATSIC's position regarding waiver.

Lastly, ATSIC relies upon the FAR and USPS purchasing manual to support its position. Pl. Mot. at 10, 19-21. As we demonstrated in our motion for summary judgment, the FAR does not apply to USPS contracts. Def. Mot. at 21. Furthermore, this Court in ABCON Assoc. considered the same provision of the USPS purchasing manual, § 6.9.3.b.4, and concluded based upon similar facts that there was no waiver and that the Government was entitled to summary judgment as to the alleged waiver. ABCON Assoc., 44 Fed. Cl. at 631, n. 5.

### B. Even If The Right To Terminate Had Been Waived, The Government's Second Show Cause Letter And Modification No. 11 Reestablished That Right

Even if, prior to May, 2002, the Government had waived its right to terminate for default, the Government reinstated its right to terminate for default by issuing its second show cause letter, dated May 1, 2002, and by establishing a revised completion date of July 15, 2002 through Modification No. 11. As ATSIC recognizes, if a completion date is waived, then the Government can establish a new contract completion date which will serve as a basis for default termination, either through a bilateral agreement with the contractor or by unilateral action. Pl. Mot. at 19; McDonnell Douglas Corp. v. United States, 323 F.3d 1006, 1019 (Fed. Cir. 2003).

As demonstrated above, through USPS's second show cause letter, dated May 1, 2002, USPS indicated that it was considering terminating for failure to complete by the required completion date. App. 63. Then, through Modification No. 11, the parties entered into a settlement which established July 15, 2002 as the revised completion date. App. 100. Thus, ATSIC's contention that the Government waived the September, 2001 completion date prior to May, 2002 is irrelevant; even if that were the case, the Government reestablished its right to terminate for default for failure to complete by July 15, 2002 through the second show cause letter and Modification No. 11.

ATSIC contends in one portion of its motion for partial summary judgment that, assuming that there was a prior waiver of the right to terminate, the Government did not validly reinstate its right to terminate because July 15, 2002 was not a reasonable completion date. Pl. Mot. at 20. ATSIC's contention is misplaced for at least two reasons. First, ATSIC contends elsewhere in its brief and in its proposed findings of fact just the opposite: "Based on the undisputed facts that (i) the extension was negotiated in May of 2002 and gave ATSIC through July 15, 2002, and (ii) ATSIC's own Project Close-Out Schedule (prepared at the USPS Contracting Officer's request) showed that the remaining work would take approximately five weeks once ATSIC was freed to do the work, it is impossible for the Contracting Officer to have reasonably concluded that the work could not be done timely." Pl. Mot. at 25.

Second, the requirement that the revised date be reasonable only applies when the date is <u>unilaterally</u> established by the Government following a waiver. <u>McDonnell Douglas Corp.</u>, 323 F.3d at 1019; <u>Simmonds Precision Products, Inc. v. United States</u>, 212 Ct. Cl. 305, 546 F.2d 886, 890 (1976); <u>Pelliccia v. United States</u>, 208 Ct. Cl. 278, 525 F.2d 1035, 1043 (1975); <u>International Telephone & Telegraph Corp. v. United States</u>, 206 Ct. Cl. 37, 509 F.2d 541, 547-48 (1975); <u>Sun Cal, Inc. v. United States</u>, 21 Cl. Ct. 31, 39 (1990); <u>Jackson v. United States</u>, 12

Cl. Ct. 363, 366 (1987). In this case, even assuming there had been a waiver, the revised completion date was established through a bilateral modification, based upon a date suggested by ATSIC. Def. Resp. to Prop. Finding No. 43; App. 100; Supp. App. 1-2.

ATSIC also contends that, through Modification No. 11, the parties agreed to modify the contract so as to make liquidated damages the exclusive remedy for failure to complete by the revised completion date. Contrary to this contention, there is nothing in Modification No. 11 that indicated that the parties were agreeing to delete section H.6 ("Termination for Default") from the lease, or otherwise modify that section. Section H.6 provides, "The Postal Service may . . . terminate the contract in whole or in part if the supplier fails to: (a) Complete the requirements of this contract within the time specified in the contract or any extension." App. 40. ATSIC can point to nothing in Modification No. 11 which deletes or otherwise modifies this provision. See also Def. Resp. to Pl. Prop. Finding No. 34 (discussing the reference to liquidated damages in the modification in light of prior correspondence). Furthermore, Modification No. 11 expressly states, "Except as provided herein, all terms and conditions of the [P&DC Contract], as heretofore changed, remain unchanged and in full force and effect." App. 100. Consequently, after entering into Modification No. 11, USPS had the right to terminate the contract for default if ATSIC was unable to complete the project by the revised completion date of July 15, 2002.

## III. Modification No. 11 Is Not Void Based Upon Duress

ATSIC suggests that Modification No. 11 is void because ATSIC entered into that modification through duress.[7] Pl. Mot. at 12, 20. ATSIC did not allege in its second amended complaint that Modification No. 11 was void due to duress, and in fact indicated that Modification No. 11 was binding upon the parties: "On June 20, 2002, ATSIC and USPS compromised and settled their dispute by execution of Contract Modification No. 11, which established a new contract completion date of July 15, 2002, thereby extending the original contract completion date by 316 calendar days." Compl. ¶ 13; see also Compl. ¶ 14 ("By entering into Contract Modification No. 11, the parties agreed, *inter alia* . . ."); Compl. ¶ 39 ("Pursuant to Contract Modification No. 11, the parties modified the Contract . . .").

Furthermore, plaintiff's answer to defendant's counterclaim likewise does not contain any allegation that Modification No. 11 was entered into by duress. Pl. Ans. Because ATSIC failed to allege duress in its complaint or in response to defendant's counterclaim, ATSIC is barred from asserting duress for the first time as part of a summary judgment motion. See Lawmaster v. Ward, 125 F.3d 1341, 1345 n.2 (10th Cir. 1997) (refusing to consider claim not raised in complaint); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); Crest A Apartments, Ltd. II v. United States, 52 Fed. Cl. 607, 613 (2002) (refusing to consider claim asserted in summary judgment motion but not in complaint).

---

[7] Although ATSIC does not explicitly state that duress renders Modification No. 11 void, ATSIC states that Modification No. 11 was entered into under duress. Presumably, ATSIC is not contending that based upon duress it can pick and choose which portions of a settlement agreement (Modification No. 11) the Court should enforce, and which portions the Court should not enforce. Therefore, if Modification No. 11 had been entered into through duress, that would render the entire modification void, including the extension of the completion date by more than 300 days.

Even if ATSIC were not barred from asserting duress in the first instance through a summary judgment motion, the Government would be entitled to summary judgment as to ATSIC's duress allegation. In order to invalidate an agreement based upon duress, "it must be shown that the party's manifestation of assent was induced by an improper threat which left the recipient with no reasonable alternative save to agree." Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320, 1330 (Fed. Cir. 2003). ATSIC has not identified any specific threat which could support a claim of duress. See Progressive Bros. Constr. Co., Inc. v. United States, 16 Cl. Ct. 549, 553-54 (1989) (Margolis, J.) (granting summary judgment as to plaintiff's duress claim based upon a lack of a showing of a threat which could support duress).[8] ATSIC's contention that it was under financial stress at the time it entered into Modification No. 11 is insufficient because financial stress alone will not establish duress. Progressive Bros. 16 Cl. Ct. at 554. As the Federal Circuit has found, "economic pressure and even the threat of considerable financial loss are not duress." Rumsfeld, 329 F.3d at 1330; accord Johnson, Drake & Piper, Inc. v. United States, 209 Ct. Cl. 313, 531 F.2d 1037, 1043 (1976).

Duress further requires either (1) an illegal act; (2) a breach of the contract by the Government without a good-faith belief by the Government that its actions are justified, or (3) a violation of the covenant of good faith and fair dealing. Rumsfeld, 329 F.3d at 1330. In order to demonstrate a lack of good faith by the Government, the Federal Circuit has indicated that the plaintiff must meet a high burden. Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002). In Am-Pro, the Federal Circuit considered the requisite degree of proof for overcoming the presumption that Government officials act in good faith. Examining

[8] To the extent that ATSIC vaguely suggests that USPS threatened to withhold payments, Pl. Br. at 12, ATSIC does not identify specific facts to support this assertion, which in any event are belied by the Government's approval of payment request number 17 prior to entering into Modification No. 11.

precedent regarding the presumption of good faith, the court noted, "for almost 50 years this court and its predecessor have repeated that we are 'loath to find to the contrary [of good faith], and it takes, and should take, well-nigh irrefragable proof to induce us to do so." Id. (citations omitted). The court went on to equate the "well-nigh irrefragable proof" with clear and convincing evidence and a requirement that plaintiff show that the Government had some specific intent to injure the plaintiff, was motivated by malice, or had some animus toward the plaintiff. Id. at 1240.

Applying this high standard to plaintiff's duress claim, the court in Am-Pro determined that summary judgment as to the duress claim was appropriate. Id. at 1243. The plaintiff alleged that the Government threatened to cancel the contract if the plaintiff "continued to have its Contract rights protected by appealing her interpretation of the Contract," and threatened to "adversely impact [plaintiff's] ability to contract with other agencies of government." Id. at 1237. In finding that summary judgment in favor of the Government was appropriate as to the duress claim, the court found, among other things, that plaintiff had not identified any evidence that suggested that the Government had a specific intent to injure plaintiff, was motivated by malice, or otherwise demonstrated animus toward plaintiff. Id. at 1241.

Likewise, even assuming ATSIC could allege duress in its summary judgment motion without first alleging duress in its complaint or response to the Government's counterclaim, summary judgment would be appropriate as to ATSIC's allegation of duress. ATSIC's vague and conclusory assertion of duress fails to establish any wrongful conduct by the Government in connection with Modification No. 11. Given the lack of support for plaintiff's duress claim and the high hurdle that ATSIC must overcome, summary judgment in favor of the Government is appropriate as to ATSIC's duress claim.

**IV. Plaintiffs Cannot Establish Excusable Delay After Modification No. 11**

Because ATSIC cannot demonstrate that Modification No. 11 is void for any reason, the only claims that ATSIC may assert are those arising after Modification No. 11. However, ATSIC has failed to demonstrate any viable claim that arose after Modification No. 11.

ATSIC identifies three things that USPS allegedly did or didn't do after Mod. 11 which caused delay: (1) suspending work on the contract; (2) failing to resolve continuing design deficiencies that suspended work on the computer operations room; and (3) failing to pay ATSIC in a timely fashion. Pl. Mot. at 33-34. As to the first item, suspending work, we demonstrated in our motion for summary judgment and our proposed findings of fact that the stop work order did not occur until July 31, 2002. Def. Mot. at 15-16; Def. Prop. Finding No. 22. Given that so many contemporaneous documents establish that the stop work order did not occur until July 31, 2002, and the numerous participants who recognized that the stop work order was not issued until July 31, 2002, no reasonable fact finder could conclude that the stop work order was issued on July 15, 2002. Def. Mot. at 15-16 (citing App. 104-09, 118); Def. Prop. Finding No. 22 (citing App. 4-5, 11B-11C, 111, 118, Zamora Tr. at 50-51); see also Warren Tr. at 147 (referring to Dep. Ex. 32; stating that Jerry Goddard showed Greg Warren the stop work order on July 31, 2002); Supp. App. 42 (letter dated August 6, 2002 from Joseph Stuhl to Jerry Goddard discussing the issuance of the stop work order on July 31, 2002). The only things that ATSIC has identified to support its claim that the stop work order was issued prior to July 31, 2002 are the date of the USPS's letter, and Mr. Vento's testimony. Pl. Mot. at 23. Mr. Vento testified that "on July 15th or whatever that date was that he sent us that notice, they . . . would not allow us to enter that site any longer." Vento Tr. at 111 (emphasis added). This is not sufficient to create a genuine issue of fact with respect to when the stop work order was issued. To the extent that ATSIC contends that delay after Modification No. 11 was due to alleged orders by the

Government to suspend work as to certain matters only, we demonstrate in our response to ATSIC's proposed findings of fact that ATSIC failed to demonstrate any order by the Government to suspend work as to certain matters which was not resolved prior to Modification No. 11. Def. Resp. to Pl. Prop. Finding No. 25.

As to alleged design deficiencies, while ATSIC claims that there were "numerous defects and deficiencies" in the plans for the project, ATSIC fails to identify in its motion a single deficiency. Pl. Mot. at 32. Rather, ATSIC merely refers to a single document, deposition exhibit 56, which in turn refers to a single design deficiency. Dep. Ex. 56 (letter dated February 8, 2002, from Joseph Stuhl to Jerry Goddard). While Mr. Stuhl recognizes in item No. 1 of this letter a certain deficiency with respect to conduit, this deficiency was addressed through a letter dated March 12, 2002 from USPS to ATSIC, instructing ATSIC to proceed immediately with the changes with respect to the conduit on a price-to-be-determined later basis ("PDL"). Supp. App. 29. This PDL was later replaced by a bilateral contract modification, signed by the parties at the same time they signed Modification No. 11, in which the parties agreed to no extension of the contract completion date for that item. Supp. App. 35 (Modification No. 9). ATSIC cannot assert a claim based upon this issue after agreeing to a specific modification addressing this issue and after agreeing to the general waiver of claims in Modification No. 11.

As to failing to pay ATSIC in a timely fashion, we demonstrated in our motion for summary judgment that ATSIC had failed to identify any payment request submitted after Modification No. 11 which could form the basis for a claim of excusable delay. Def. Mot. at 14. Plaintiff's motion for summary judgment does not overcome this deficiency. See Def. Resp. to Pl. Prop. Finding No. 46.

As to the only issue to arise, at least in part, after Modification No. 11, we demonstrated in our motion for partial summary judgment that the Government is entitled to summary

judgment as to ATSIC's claim for delay based upon rain because plaintiffs lack competent evidence upon which they could establish: (1) that unforeseeable rain caused ATSIC to be unable to complete work on project tasks; (2) that the failure to complete these tasks as scheduled caused an overall delay based upon the critical path of the project; and (3) even if unforeseeable rain caused some amount of delay, the number of days of delay. Def. Mot. at 11-13 (citing Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 314 (1999), Appeals of Essential Constr. Co., Inc., ASBCA 18491, 1978 WL 2282 (1978)). We noted that plaintiffs had not produced: any documents from which ATSIC might be able to establish a daily or weekly record of activities on the Project in June and July of 2002; any construction schedules updated in June and July of 2002; nor any other documents from which one could establish that a particular activity was scheduled to take place on a certain day, but could not be completed due to unforeseeable weather conditions. Def. Mot. at 12-13. Furthermore, representatives of ATSIC, including the project manager, could not recall specifically when tasks were to be performed, or what activity occurred on each day. Zamora Tr. 51, 55-57; Warren Tr. 86, 91-96; Vento Tr. 115-16.

In ATSIC's cross-motion for partial summary judgment, ATSIC does not demonstrate a factual predicate upon which the Court could find that ATSIC was entitled to an equitable extension of the contract based upon unforeseeable rain. The only documents that ATSIC cites to support its delay claim based upon rain are deposition exhibits 17, 21, 33, 42, and 43. Pl. Mot. at 35; Pl. Prop. Findings ¶ 52. While one of these documents, deposition exhibit 21, purports to show that it rained 0.01 inches of rain or more on 37 days between June 1, 2002 and July 18, 2002, this and the other documents cited by ATSIC are not competent evidence to establish: (1) that unforeseeable rain caused ATSIC to be unable to complete work on project tasks; (2) that the failure to complete these tasks as scheduled caused an overall delay based upon the critical

path of the project; and (3) even if unforeseeable rain caused some amount of delay, the number of days of delay.

Furthermore, ATSIC cannot establish a delay claim based upon rain through the testimony of any of its former employees. As we demonstrated in our motion for partial summary judgment, the former employees of ATSIC could not remember when activities were to take place and failed to provide details regarding what work was affected by rain. Def. Mot. at 12. Jose Zamora, ATSIC's project engineer, did not recall what the status of the project was during this time period. Zamora Tr. 51-57. Furthermore, when asked what outside work needed to be completed as of the date of ATSIC's request for an extension (July 17, 2002), Mr. Zamora stated: "I believe it was like the gate work and work out in the parking lot. Couldn't say specifically exactly what was left out there." None of the portions of Mr. Zamora's deposition cited by ATSIC provide any further information regarding the alleged basis for delay. See Pl. Mot. at 35 (citing Zamora Tr. 26-27, 73-74, and 70-77).

Greg Warren, another ATSIC representative, likewise could not recall what work specifically was affected by the rain or the status of the project during various points of time prior to the expiration of the revised completion date of July 15, 2002. Warren Tr. at 88-94. When asked how ATSIC arrived at a claimed delay of 37 days of delay based upon rain, Mr. Warren indicated that for every day that it rained, ATSIC believed that it was entitled to a one day extension. Warren Tr. at 88-89. Mr. Warren's testimony reflects the lack of support for ATSIC's delay claim: merely pointing to days in which it rained cannot establish an excusable delay based upon rain because it does not address: (1) that unforeseeable rain caused ATSIC to

be unable to complete work on project tasks;[9] (2) that the failure to complete these tasks as scheduled caused an overall delay based upon the critical path of the project; and (3) even if unforeseeable rain caused some amount of delay, the number of days of delay.

Likewise, Vincent Vento could not recall the status of the project at various times. Vento Tr. at 115-17. This is not surprising given the lapse of time, the lack of documentation of daily progress, and that Mr. Vento testified that he was "not very active" with ATSIC from January, 2002 to August, 2002, and only visited the construction site once or twice during this period. Vento Tr. at 14-15.

## V. This Court Should Dismiss, Or In The Alternative, Grant Summary Judgment In Favor Of The Government As To Plaintiffs' Claim For Breach Of The Duty Of Good Faith & Fair Dealing

As we demonstrated in our motion to dismiss and motion for partial summary judgment, this Court should dismiss plaintiffs' allegation of a breach of the duty of good faith and fair dealing because plaintiffs failed to allege in the complaint specific acts of bad faith on the part of the Government. In the alternative, this Court should grant summary judgment as to plaintiffs' good faith and fair dealing allegation.

ATSIC suggests in its motion that it need not prove bad faith to establish a breach of the duty of good faith and fair dealing. Pl. Mot. at 40. While it is true that some judges on the Court of Federal Claims have stated that bad faith and a showing of malice or intent to injure are not required, the majority of judges on the Court of Federal Claims who have addressed this issue have held that bad faith and a showing of malice or intent to injure are required. E.g. Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994) (Gibson, J.);

[9] Mr. Warren referred to that time of year in Florida as "the rainy season," and the weather information submitted by ATSIC indicates that the average rainfall for June is more than eight inches. Warren Tr. at 89; App. 107.

Chambery v. United States, 54 Fed. Cl. 2, 7-8 (2002) (Margolis, J.); Continental Collection & Disposal, Inc. v. United States, 29 Fed. Cl. 644, 652 (1993) (Horn, J.); D.V. Gonzalez Elec. & Gen. Contractors, Inc. v. United States, 55 Fed. Cl. 447, 457 (2003) (Smith, J.); Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635, 652 (2004) (Miller, George W., J); Conway v. United States, 56 Fed. Cl. 572, 578 (2003) (Merow, J.); Schweiger Contr. Co., Inc. v. United States, 49 Fed. Cl. 188, 204 (2001) (Bush, J.); Tennessee Valley Authority v. United States, 60 Fed. Cl. 665, 671-72 (2004) (Lettow, J.); see also Am-Pro, 281 F.3d at 1239.[10]

Even if ATSIC were not required to demonstrate bad faith to prove a breach of the duty of good faith and fair dealing, ATSIC's good faith and fair dealing claims essentially restate other allegations made by ATSIC. Pl. Mot. at 40. Therefore, these claims also fail for the same reason as ATSIC's other claims: (1) claims before Modification No. 11 are barred; and (2) ATSIC has not demonstrated any misconduct on the part of the Government or any other basis for invalidating the termination for default after the parties agreed to the settlement embodied by Modification No. 11.

[10] Centex Corp. v. United States, 395 F.3d 1283 (Fed. Cir. 2005), does not support ATSIC's position. In that case, the Government intentionally harmed the plaintiff through targeted legislation to deprive the plaintiff of the fruits of the contract. Id. at 1304-1305; see also Rodriguez v. United States, 69 Fed. Cl. 487, 498-99 (2006) (stating that plaintiff must allege and prove facts constituting an intent to injure the plaintiff, and that the "intended injury can be as simple and straightforward as elimination of tax benefits previously granted.").

## VI. This Court Should Grant Summary Judgment As To ATSIC's Miscellaneous Claims

### A. The Government Did Not Violate A Contractual Requirement For A 10-Day Cure Period

ATSIC incorrectly asserts that the Government violated an alleged obligation to provide a 10-day cure period. Pl. Mot. at 36-37. As we demonstrated in our motion for summary judgment, a cure notice was not required pursuant to the Contract. Def. Mot. at 19-20. In any event, ATSIC provided notice that it was considering terminating for default more than 10 days prior to termination. Id. at 20-21. The only thing to add in response to ATSIC's cross motion is that ATSIC's argument was explicitly rejected by this Court in a case involving a contract with USPS in ABCON Assoc., Inc. v. United States, 44 Fed. Cl. 625, 633 (1999).

### B. The Government Did Not Violate The Contract Disputes Act By Allegedly Failing To Respond In A Timely Fashion To A CDA Claim

ATSIC alleges that USPS violated section 605(c)(5) of the Contracts Disputes Act ("CDA") by failing to respond in a timely fashion to CDA claims regarding contract modifications and payment requests. Pl. Mot. at 11. Section 605(c)(5) provides that "any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim . . . ." 41 U.S.C. § 605(c)(5). ATSIC's contention that the Government violated section 605(c)(5) is misplaced for two primary reasons. First, the only effect of not issuing a decision on a CDA claim pursuant to section 605(c)(5) is that the claim may be deemed denied. 41 U.S.C. § 605(c)(5). Second, all of the payment requests and proposed modifications submitted to USPS before the contract completion date were resolved by mutual agreement prior to, or by, Modification No. 11. Therefore, any claims that ATSIC could have previously asserted with respect to those payment requests and modifications were waived either prior to, or by, Modification No. 11.

Given that the consequence of not responding to a CDA claim is merely that the claim may be deemed denied, and that every purported CDA claim before the July 15, 2002 completion date was resolved and waived prior to, or through, Modification No. 11, it is irrelevant whether such claims were in fact CDA claims or whether, assuming that they were CDA claims, the contracting officer in fact responded within the 60-day time frame set forth in section 605(c).

Even if it were relevant whether the payment requests and proposed change orders were CDA claims, ATSIC fails to demonstrate that it submitted claims within the meaning of the Contracts Disputes Act or the contract. Rather, ATSIC suggests that every payment request that it ever submitted and every requested change order was a CDA claim. Contrary to this suggestion, "a voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act." App. 39 (P&DC Contract § H.3.c). A blanket assertion that every payment request and proposed change order was a CDA claim does not establish that any of the payment requests or proposed change orders represented CDA claims. Furthermore, ATSIC has failed to demonstrate that the Government did not act upon any alleged claims within 60 days of ATSIC submitting a valid claim pursuant to the CDA. See Def. Resp. to Pl. Prop. Finding Nos. 9(iv), 10, 46 (addressing the timing of payment requests and approvals); Def. Resp. to Pl. Prop. Finding Nos. ¶ 7, 16 (addressing the timing of proposed contract modifications and approvals).

**C. USPS Did Not Violate Section 6.9.3b7(c)(6) Of The USPS Purchasing Manual**

ATSIC contends that USPS was required to inform ATSIC that the termination was subject to Clause B-9, *Claims and Disputes*." Pl. Mot. at 43 (citing section 6.9.3b7(c)(6) of the USPS Purchasing Manual). Plaintiffs failed to allege this in the complaint, and they are barred from raising a claim that is not identified in the complaint. See Lawmaster v. Ward, 125 F.3d at

1345; Car Carriers, Inc. v. Ford Motor Co., 745 F.2d at 1107. Furthermore, USPS informed ATSIC that the termination for default was subject to appeal pursuant to the Contract Disputes Act procedures referred to in Clause B-9, App. 121, and ATSIC has exercised its appeal rights pursuant to Clause B-9 and the CDA by filing this suit. ATISC has not demonstrated that the lack of a specific reference to clause B-9 in the process of outlining ATSIC's rights to appeal USPS's decision constitutes a violation of § 6.9.3b7(c)(6) of the USPS Purchasing Manual, nor that it would affect the validity of the termination for default decision assuming it were a violation of that section.[11]

**D. USPS Did Not Violate Section 6.9.3b7(a) Of The USPS Purchasing Manual**

ATSIC contends that the Government violated section 6.9.3b7(a) of the USPS Purchasing Manual by not terminating "immediately upon determining that termination is proper." Pl. Mot. at 43. Like ATSIC's other claim related to section 6.9.3b7, plaintiffs failed to assert this claim in the complaint, and they are barred from raising a claim that is not identified in the complaint. Furthermore, as a matter of law, USPS did not violate section 6.9.3b7(a). USPS issued its third show cause by letter dated July 15, 2002. App. 102. ATSIC responded by letter dated July 17, 2002, App. 104-09. Following receipt of ATSIC's response, the contracting officer and the project engineer visited the construction site on July 24, 2002 to meet with ATSIC's project manager and to inspect the progress of construction. App. 113. Based in part upon information obtained from that site visit, the contracting officer determined that terminating the project for default was appropriate. He issued a stop work order on July 31, 2002, Def. Prop. Finding No.

[11] Section 6.9.3b7(d) makes it clear that the purpose of the requirement is merely to inform the contractor of its appeal rights. USPS Purch. Man. § 6.9.3b7(d) ("When the contracting officer has determined that the failure to perform is not excusable, the termination notice must also state that it reflects that decision, and that the supplier has the right to appeal as specified in Clause B-9, Claims and Disputes.").

22, and submitted a request for concurrence to terminate the contract by letter dated July 31, 2002. Supp. App. 36. Keith Strange, Vice President Purchasing and Materials, approved the termination for default on August 12, 2002. Id. Therefore, USPS's termination on August 16, 2002 complied with section 6.9.3b7(a).[12]

**E. ATSIC Is Not Entitled To Attorneys Fees**

ATSIC contends that it is entitled to attorneys fees pursuant to the Equal Access to Justice Act ("EAJA"). Pl. Mot. at 44. Because we have demonstrated that the Government is entitled to partial summary judgment as to all of ATSIC's claims, ATSIC's request for attorney fees and costs is misguided. In any event, ATSIC's request is also premature. See Miller Elevator Co., Inc. v. United States, 30 Fed. Cl. 662, 708 (1994) ("[T]his Court will entertain such a request only after compliance with the submission requirement *following* final disposition."); Mega Constr. Co., Inc. v. United States, 29 Fed. Cl. 396, 479 (1993) ("Congress has limited such awards under § 2412(d)(1)(A) to situations where, after litigation is concluded, and plaintiff is the 'prevailing party,' the court can find that the litigation position of defendant 'was not substantially justified.'").

**F. ATSIC's Contention Regarding The Credit Modification In The Amount of $ 52,137.10 Is Incorrect**

ATSIC contends that, if the Government prevails as to liability, the Court should discount a credit modification to the P&DC project in the amount of $ 52,137.10 when calculating excess reprocurement costs. Pl. Mot. at 46. This argument is premature due to the fact that neither party has moved for summary judgment as to excess reprocurement costs. In

[12] Even if the lapse of approximately two weeks could be considered a violation of section 6.9.3b7(a), ATSIC has failed to demonstrate that such a violation would invalidate the termination for default, particularly when there was a stop work order in effect during this time period.

any event, ATSIC is incorrect. The parties settled their dispute regarding money owed by ATSIC for excess reprocurement costs from the AMC project through a settlement agreement on the AMC project and two contract modifications. Dep. Ex. 29, 30, 53. The settlement agreement states that ATSIC will owe the Postal Service the sum of $ 52,137.10. Dep. Ex. 29. Through a "credit modification" to the P&DC project, Modification No. 10, the parties agreed to decrease the contract amount on the P&DC project by that same amount. Dep. Ex. 30; see also Def. Resp. to Pl. Prop. Finding No. 27 (explaining the impact of Modification No. 10 upon the contract amount and the balance remaining under the contract at the time of termination). This reduction in the contract amount reduced the balance remaining under the contract, which in turn affects the amount of excess reprocurement costs payable to the Government in the event that the Government prevails as to liability.

## CONCLUSION

For the foregoing reasons, we respectfully request that the court deny ATSIC's request for partial summary judgment. Furthermore, we request that the Court: (1) grant summary judgment in favor of the Government as to counts I and II of the second amended complaint; (2) dismiss count III of the second amended complaint, and in the alternative, grant summary judgment in favor of the Government as to count III; (3) dismiss the claims raised by ATSIC in its motion for partial summary judgment which were not identified in the complaint, or in the alternative grant summary judgment as to those claims.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Michael J. Dierberg
MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Class. Unit 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Phone: (202) 353-0536

Attorneys for Defendant

OF COUNSEL:

STEPHEN D. LOBAUGH
Attorney
Law Department – Civil Practice
Commercial & Appellate Litigation
United States Postal Service
475 L'Enfant Plaza SW
Washington, DC 20260

July 14, 2006