IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP. and INTERNATIONAL FIDELITY INSURANCE COMPANY,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No. 03-1953C
(Senior Judge Margolis)

**REPLY BRIEF**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Class. Unit 8th Floor
1100 L St., N.W.
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

STEPHEN D. LOBAUGH
Attorney
Law Department – Civil Practice
Commercial & Appellate Litigation
United States Postal Service
475 L'Enfant Plaza SW
Washington, DC 20260

July 31, 2006

# TABLE OF CONTENTS

**PAGE(S)**


I. International Should Be Dismissed For Lack Of Jurisdiction And For Failure To State A Claim Upon Which Relief May Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. International Cannot Assert Performance Bond Claims Because It Did Not Enter Into A Takeover Agreement Or Finance The Contract To Completion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. International Cannot Use Its Payment Bond To Assert Performance Bond Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. The Court Should Grant Defendant's Motion To Dismiss And Motion For Partial Summary Judgment With Respect To Counts I, II, And III Of The Complaint . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Admiralty Constr., Inc., ASBCA No. 48627,
96-2 BCA ¶ 28,280, 1996 WL 173349 (Apr. 4, 1996) . . . . . . . . 7

Admiralty Constr., Inc. v. Nat'l Am. Ins. Co.,
156 F.3d 1217 (Fed. Cir. 1998) . . . . . . . . passim

Aetna Casaulty & Surety Co. v. United States,
845 F.2d 971 (Fed. Cir. 1988) . . . . . . . . 7

American Ins. Co. v. United States,
62 Fed. Cl. 151 (2004) . . . . . . . . 6

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) . . . . . . . . 5

Capitol Indemnity Corp. v. United States,
71 Fed. Cl. 98 (2006) . . . . . . . . 6

Danzig v. AEC Corp.,
224 F.3d 1333 (Fed. Cir. 2000) . . . . . . . . 11

Dependable Ins. Co., Inc. v. United States,
846 F.2d 65 (Fed. Cir. 1988) . . . . . . . . 7

Empire Energy Mgmt. Sys., Inc. v. Roche,
362 F.3d 1343 (Fed. Cir. 2004) . . . . . . . . 11

Fidelity Deposit Co. of Maryland v. United States,
31 Fed. Cl. 540 (1994) . . . . . . . . 3, 4

Fireman's Fund Ins. Co. v. United States,
909 F.2d 495 (Fed. Cir. 1990) . . . . . . . . 6

Nova Casualty Co. v. United States,
69 Fed. Cl. 284 (2006) . . . . . . . . 5

PCL Constr. Serv., Inc. v. United States,
47 Fed. Cl. 745 (2000) . . . . . . . . 9

Preston-Brady, Co., Inc., VABCA Nos. 1892, 1991, 2555,
87-1 B.C.A. (CCH) ¶ 19,649 (1987) . . . . . . . . 9

## TABLE OF AUTHORITIES (con't)

**CASES** **PAGE(S)**

R. P. Wallace, Inc. v. United States,
63 Fed. Cl. 402 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

Ransom v. United States,
900 F.2d 242 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS INTEGRATORS CORP. and INTERNATIONAL FIDELITY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 03-1953C<br>(Senior Judge Margolis) |

**DEFENDANT'S REPLY BRIEF**

Defendant, the United States, respectfully submits this reply brief in support of its motion to dismiss and motion for partial summary judgment. As we demonstrated in our initial brief, the Court should dismiss International for lack of jurisdiction, and in the alternative, for failure to state a claim upon which relief may be granted. Def. Br. at 5-8. Furthermore, we demonstrated in our initial brief that this Court should grant summary judgment in favor of the Government as to counts I and II of the second amended complaint, and dismiss count III of the second amended complaint for failure to state a claim upon which relief may be granted, and in the alternative, grant summary judgment in favor of the Government as to count III. In their response briefs, International and ATSIC fail to demonstrate any basis for denying our motion to dismiss and motion for partial summary judgment.

## I. International Should Be Dismissed For Lack Of Jurisdiction And For Failure To State A Claim Upon Which Relief May Be Granted

In its response brief, International fails to demonstrate that this Court possesses jurisdiction to entertain its claims, or that it states a claim upon which relief may be granted. Instead, International's response brief makes it clear that International is attempting to use

alleged payments to subcontractors under the payment bond as a jurisdictional hook with which to assert performance bond claims. As we demonstrated in our initial brief, this Court lacks jurisdiction to entertain performance bond claims when the surety does not enter into a takeover agreement or finance completion of the contract. International has not alleged that it entered into a takeover agreement or financed completion of the contract. Therefore, this Court lacks jurisdiction over its performance bond claims. Furthermore, while International cites recent cases in this Court holding that a payment bond surety possesses jurisdiction to assert payment bond claims, these cases would only be relevant if International had asserted a payment bond claim. International has not asserted a payment bond claim. Therefore, International should be dismissed from this action.

### A. International Cannot Assert Performance Bond Claims Because It Did Not Enter Into A Takeover Agreement Or Finance The Contract To Completion

In our initial brief, we demonstrated that this Court lacks jurisdiction over International's performance bond claims because International did not enter into a takeover agreement with the Government, or finance completion of the project. Def. Br. at 5-8. In support of this contention, we cited Admiralty Constr., Inc. v. Nat'l Am. Ins. Co., 156 F.3d 1217 (Fed. Cir. 1998), wherein the United States Court of Appeals for the Federal Circuit found that the surety could not rely upon the doctrine of equitable subrogation to assert claims against the Government when the surety did not enter into a takeover agreement or finance completion of the project. Id. at 1222. The court stated, "[T]o maintain a claim for equitable subrogation, a surety must either take over completion of the contract performance or finance the completion of the defaulted contract under its performance bond." Id.

International contends that our reliance upon Admiralty Construction is misplaced because Admiralty Construction turned upon the meaning of a "contractor" pursuant to the

Contract Disputes Act. Int'l Br. at 5. International is mistaken that Admiralty Construction turned solely upon the definition of "contractor" pursuant to the CDA. Rather, in a separate section of its opinion, the Federal Circuit concluded that the surety could not assert any claims based upon the doctrine of equitable subrogation, because it had not entered into a takeover agreement or financed completion of the project. 156 F.3d at 1222. The court's decision could not have been more clear: "In sum, because it did not finance the contract to completion nor take over completion itself, [the surety] cannot invoke the doctrine of equitable subrogation to maintain its claim in place of [the contractor]." Id.

The Federal Circuit's decision in Admiralty Construction is consistent with the Restatement (Third) of Suretyship and Guaranty. Section 27 of the Restatement provides: "Upon total satisfaction of the underlying obligation, the secondary obligor is subrogated to all right of the obligee with respect to the underlying obligation to the extent that performance of the secondary obligation contributed to the satisfaction." Rest. 3rd Suretyship and Guaranty, § 27 (emphasis added). International has not alleged that it satisfied its obligation under the performance bond by financing completion of the project. Therefore it cannot be subrogated with respect to the underlying obligation of the performance bond.

Furthermore, Admiralty Construction is consistent with decisions of this Court addressing claims brought directly in this Court. For example, in Fidelity Deposit Co. of Maryland v. United States, 31 Fed. Cl. 540 (1994), the Court dismissed a suit by a surety in which the surety had neither financed completion of the project nor entered into a takeover agreement. Id. at 542-44. The Court noted that plaintiff's position is nothing more than a "promisor owing a duty." Id. at 543.

Likewise, International's status is nothing more than a promisor owing a duty. While International is potentially liable for excess reprocurement costs in the event that the Court

determines that (1) ATSIC is liable for excess reprocurement costs; and (2) ATSIC fails to pay the excess reprocurement costs, this contingent liability does not provide the Court with jurisdiction to entertain International's claims.

**B. International Cannot Use Its Payment Bond To Assert Performance Bond Claims**

Because International did not enter into a takeover agreement and did not finance the contract to completion, International attempts to use its payment bond to establish this Court's jurisdiction. International's brief cites several recent cases in this Court which have held that this Court possesses jurisdiction to entertain payment bond claims against the Government asserted by a payment bond surety. Int'l Br. at 3-4, 6-7. While we believe that these cases are wrongly decided, and contrary to the Federal Circuit's holding in International Company of the West, International's argument would only be relevant if International had asserted a payment bond claim. International has not done so, and instead has asserted solely performance bond claims. This Court should reject International's attempt to use its payment bond as a jurisdictional basis to assert claims under the performance bond.

In our initial brief, we demonstrated that International's claims all arise under the performance bond. Def. Br. at 7-8. As International recognizes in its response brief, counts I and IV of the complaint are appeals of the Government's final decisions regarding termination for default and excess reprocurement costs. These are performance bond claims for which this Court lacks jurisdiction unless the performance bond surety finances completion of the contract or enters into a takeover agreement with the Government.

Even when this Court has held that this Court may exercise jurisdiction to entertain payment bond claims against the Government, the Court has dismissed similar performance bond

claims. Nova Casualty Co. v. United States, 69 Fed. Cl. 284 (2006).[1] In Nova Casualty Co. v. United States, 69 Fed. Cl. 284 (2006), the Court concluded that it possesses jurisdiction to entertain a surety's payment bond claims. Id. at 292-98 (holding that there was jurisdiction to entertain a claim by the surety that the Government made a payment to the contractor that it should not have made). However, the Court dismissed the surety's appeal of the contracting officer's final decision regarding excess reprocurement costs for lack of standing to challenge that decision. Id. at 290-92.

Count III of the complaint is a claim of a breach of the duty of good faith and fair dealing. There is nothing in count III to suggest that it relates in any way to International's payment bond. Furthermore, as we demonstrated in our initial brief, the breach of the duty of good faith and fair dealing only applies to parties to a contract. Def. Br. at 6. International was not a party to any contract with the United States.[2] Therefore, International cannot assert a claim of a breach of the duty of good faith and fair dealing. See also Ransom v. United States, 900 F.2d 242, 244-45 (Fed. Cir. 1990) (affirming dismissal of surety's claim of breach of the duty of good faith and fair dealing because the surety did not possess a contractual relationship with the Government).

---

[1] As stated above, we disagree that this Court possesses jurisdiction to entertain payment bond claims against the Government. However, in light of the fact that International has not asserted any payment bond claims, we do not add to the analysis provided in our initial brief regarding this issue. Def. Br. at 7-8.

[2] International cites Balboa Ins. Co. v. United States, 775 F.2d 1158, 1160 (Fed. Cir. 1985), for the proposition that surety bonds create a tri-partite relationship. Int'l Br. at 3. Contrary to this assertion, more recent cases in the United States Court of Federal Claims have clarified that the surety does not become a party to any contract with the United States through a performance or payment bond. Ransom v. United States, 900 F.2d 242, 245 (Fed. Cir. 1990); Admiralty Contr., 156 F.3d at 1221.

It is clear from a comparison with cases actually addressing payment bond claims that what International has asserted in the complaint are not payment bond claims. These cases demonstrate that a payment bond claim is generally based upon an assertion that the Government made payments to the contractor that it shouldn't have made. See, e.g., American Ins. Co. v. United States, 62 Fed. Cl. 151, 153-54 (2004) (alleging that progress payments by the Government resulted in overpayment to the contractor); Capitol Indemnity Corp. v. United States 71 Fed. Cl. 98, 100 (2006) (same); Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 496-97 (Fed. Cir. 1990) (alleging that the Government prematurely released the retainage to the contractor). These cases typically address whether proper notice was given to the Government of the contractor's default on the payment bond. E.g. American Ins. Co., 62 Fed. Cl. at 156 ("Under the undisputed facts of this case, American's right to equitable subrogation never attached because it not only failed to notify the Air Force to stop making payments to the contractor, but instead asked the Air Force to continue making such payments."); Capitol Indemnity Corp., 71 Fed. Cl. at 104; Fireman's Fund Ins. Co. v. United States, 909 F.2d at 499.

In this case, International has not made any such allegations. In fact, International has not made any allegations against the Government related to the payment bond. The only paragraph in the complaint which refers to the payment bond is paragraph 6, in which plaintiffs assert that International is within the Court's jurisdiction through the payment bond and asserts that International made payments pursuant to the payment bond. Compl. ¶ 6.

International's request for relief further demonstrates that International is asserting performance bond claims for which this Court lacks jurisdiction. In its request for relief following Counts I, III, and IV, International asks that this Court declare that the termination for default was improper and declare that International shall not be liable for any excess reprocurement costs or liquidated damages. Compl. at 15, 17, 20. International does not request

any relief with respect to its alleged payments under the payment bond. Rather, the relief sought by International is directly tied to its contingent liability under the performance bond.

Furthermore, the Armed Services Board of Contract Appeal's decision in Admiralty Construction, affirmed by the Federal Circuit, explicitly rejected the surety's attempt to use its payment bond as a basis to assert a challenge to the contracting officer's final decision assessing liquidated damages and excess reprocurement costs. Admiralty Constr., Inc., ASBCA No. 48627, 96-2 BCA ¶ 28,280, 1996 WL 173349 (Apr. 4, 1996). In dismissing the surety's claims, the board stated: "In short, appellant has not cited, and we have not found, any decision in which a surety, by virtue of payment under a payment bond, was held to be subrogated to a position through which it could appeal from a final decision asserting a Government claim such as the one at issue here." Id. (quoted in Admiralty Constr., 156 F.3d at 1218). The board's decision was affirmed by the Federal Circuit. 156 F.3d at 1223.

Moreover, International's assertion that its claim is within the Court's jurisdiction is premised upon the faulty theory that performance bonds and payment bonds are indistinguishable, and that a payment bond surety could assert the same claims against the Government that a performance bond surety could assert, and vice versa. This is simply not the case. The rights and obligations of a payment bond surety are distinct from the rights and obligations of a performance bond surety. See e.g. Aetna Casaulty & Surety Co. v. United States, 845 F.2d 971, 973-74 (Fed. Cir. 1988) (contrasting the rights and obligations under performance bonds with the rights and obligations under payment bonds); Dependable Ins. Co., Inc. v. United States, 846 F.2d 65, 67-68 (Fed. Cir. 1988). A performance bond surety only has a right to sue in this Court to challenge a termination for default and excess reprocurement costs if the surety has met its obligation by financing the contract to completion or has entered into a takeover agreement. Admiralty Constr., 156 F.3d at 1222. International has not done so.

Therefore, International should be dismissed from this action for lack of jurisdiction and for failure to state a claim upon which relief may be granted.

## II. The Court Should Grant Defendant's Motion To Dismiss And Motion For Partial Summary Judgment With Respect To Counts I, II, And III Of The Complaint

In our initial brief, we demonstrated that this Court should grant summary judgment in favor of the Government as to counts I and II of the second amended complaint and dismiss count III of the second amended complaint for failure to state a claim upon which relief may be granted, and in the alternative, grant summary judgment in favor of the Government as to count III. In its response brief, ATSIC fails to demonstrate any basis for denying our motion to dismiss and motion for partial summary judgment. International, which did not respond to the motion for summary judgment except to join in ATSIC's response, likewise fails to demonstrate any basis for denying the motion to dismiss and fails to demonstrate that there are genuine issues of material fact precluding summary judgment in favor of the Government.

Most of the contentions in ATSIC's response brief have been addressed in our motion to dismiss, response to ATSIC's motion for partial summary judgment, and response to ATSIC's proposed findings of uncontroverted fact. Thus, we will reply to just a few of the erroneous legal or factual assertions made by ATSIC in its response brief. First, ATSIC contends that it need not possess information regarding the status of the project on particular days to defeat the Government's motion for partial summary judgment. ATSIC Resp. Br. at 16. ATSIC's assertion is misplaced because the Government is not just relying upon the lack of any information reflecting daily activities or progress on the project, but rather the lack of evidence generally regarding the progress and activities. As we demonstrated in our initial brief, without this evidence, ATSIC cannot establish (1) that rain affected work on a particular task; (2) assuming rain affected work on a particular task, that the rain "proximately caused a delay to the

overall completion of the contract, i.e., that the delay affected activities on the critical path;" and (3) "the extent to which completion of the contract work as a whole was delayed thereby." R. P. Wallace, Inc. v. United States, 63 Fed. Cl. 402, 409 (2004). ATSIC lacks evidence showing not only daily activities and progress, but also lacks evidence showing what activities took place in any given week or even larger time periods. See PCL Constr. Serv., Inc. v. United States, 47 Fed. Cl. 745, 802 (2000) (quoting Preston-Brady, Co., Inc., VABCA Nos. 1892, 1991, 2555, 87-1 B.C.A. (CCH) ¶ 19,649 at 99,520 (1987): "A general statement that disruption or impact occurred, absent any showing through use of updated CPM schedules, Logs or credible and specific data or testimony, will not suffice to meet the plaintiff's burden.").

For example, ATSIC contends that "much of the work" to be completed after Modification No. 11 was outdoor work. ATSIC Reply Br. at 11. ATSIC provides no support for this vague assertion, and cannot find any support for it given the lack of documentation of progress and activities on the project. Furthermore, while ATSIC has alleged delay with respect to some items like trenching and gates, ATSIC has not pointed to any evidence that would demonstrate (1) what work remained as to trenching and gates; (2) that any delay in this work caused a delay in the critical path of the project at that time; nor (3) the amount of delay allegedly caused to the critical path by whatever work remained as to these items.

Even if there were some amount of delay caused by rain prior to the revised completion date, ATSIC indicates that it did not perform any work on the project between the revised completion date of July 15, 2002 and the termination for default. ATSIC Mot. at 23, 34; ATSIC Prop. Finding Nos. 53, 56; Compl. ¶ 19. However, ATSIC does not contend that it was prevented from completing whatever work that remained during this time period due to rain. Rather, ATSIC erroneously asserts that the stop work order was issued on July 15. As we have demonstrated previously, this assertion is contrary to contemporaneous documents, the affidavits

of the contracting officer and project engineer, and the deposition testimony of two of ATSIC's former employees. Def. Mot. at 15-16; Def. Prop. Finding No. 22; Def. Resp. Br. at 19; App. 4-5 (Goddard Aff.), 11B-11C (Stuhl Aff.), 104-09, 111, 118; Supp. App. 42; Zamora Tr. at 50-51; Warren Tr. at 147. The fact that the stop work order was dated July 15, 2002 is not any evidence of when the order was delivered to, or received by, ATSIC. Likewise, Mr. Vento's testimony that "on July 15th or whatever that date was that he sent us that notice, they . . . would not allow us to enter that site any longer" does not create a genuine issue of fact with regard to when the Government issued the stop work order. Vento Tr. at 111 (emphasis added). Therefore, ATSIC was given more than two weeks beyond the required completion date to complete the project, but hasn't even alleged that it was prevented during that time from completing the work due to rain.

ATSIC also erroneously contends, with respect to Modification No. 11, that "on June 20, 2002, [USPS] asserted a July 15, 2002, completion date, which it knew from the construction schedule was inadequate to complete the five weeks of work remaining." ATSIC Resp. Br. at 34. This contention is incorrect for several reasons. Contrary to this statement, the Government did not "assert" any completion date. Rather, like every other modification to the contract in this case, the terms of Modification No. 11 were mutually agreed to by the parties. Furthermore, the revised completion date of July 15, 2002 was suggested by ATSIC. App. 4. Lastly, ATSIC does not provide any support for its contention that five weeks of work were remaining as of June 20, 2002. The only document cited by ATSIC is a document created a month earlier showing that the contract would be completed before June 20, 2002. Dep. Ex. 17.[3]

---

[3] Elsewhere in ATSIC's response brief, ATSIC also suggests that USPS unreasonably delayed signing Modification No. 11. ATSIC Resp. Br. at 12-13. This is incorrect. While Mr. Vento's signature is dated June 11, 2002, Modification No. 11 was forwarded to USPS for the contracting officer's signature by letter dated June 17, 2002, sent by overnight mail. Supp. App. 34.

ATSIC also adopts a position regarding the effect of Modification No. 11 that is so nuanced that it is impossible to make sense of ATSIC's contention. ATSIC suggests that, by virtue of Modification No. 11, it waived only "financial" claims. ATSIC Resp. Br. at 8-9, 18. Whatever the meaning of ATSIC's distinction between "financial" claims and "non-financial" claims, there is nothing in the unambiguous language of Modification No. 11 to support this distinction.[4]

In addition, ATSIC erroneously cites Danzig v. AEC Corp., 224 F.3d 1333, 1336 (Fed. Cir. 2000), for the proposition that the burden of proof is on the Government to show that ATSIC would be unable to complete the project by the required completion date. ATSIC Resp. Br. at 26. This contention is incorrect because the statement in Danzig applied to the contractor's failure to make progress, not a failure to complete by the required completion date. Id. at 1336; see Empire Energy Mgmt. Sys., Inc. v. Roche, 362 F.3d 1343, 1357 (Fed. Cir. 2004). In this case, ATSIC failed to complete the project by the required completion date of July 15, 2002. ATSIC does not dispute that it had not completed the project by that date. ATSIC Resp. to Def. Prop. Finding No. 18. Therefore, the burden was upon ATSIC to show that its failure to perform was excused. R. P. Wallace, 63 Fed. Cl. at 409. This requires proof of excusable delay, and the number of days to which ATSIC was allegedly entitled. Id.

Lastly, ATSIC contends with respect to our motion to dismiss count III of the second amended complaint that it is improper for the Government to bring a motion to dismiss at this time because "the parties are not before the Court on a motion to dismiss." ATSIC Resp. Br. at 35-36. Contrary to this assertion, the Court's order dated October 7, 2005 specifically

---

[4] As for ATSIC's erroneous contention regarding the effect that Modification No. 11 has upon the Government's counterclaim for excess reprocurement costs, Resp. Br. at 8, which is not a subject of any party's motion, we will address that argument at the appropriate time.

contemplates motions to dismiss. Order at 1. In any event, given that ATSIC has amended its complaint twice, and amended the complaint as recently as October, 2005, ATSIC fails to demonstrate any prejudice to its rights that would result even if the Court's order did not contemplate the motion to dismiss Count III for failure to state a claim.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court: (1) dismiss International for lack of jurisdiction and failure to state a claim; (2) grant summary judgment in favor of the Government as to counts I and II of the second amended complaint; (3) dismiss count III of the second amended complaint for failure to state a claim, and in the alternative, grant summary judgment in favor of the Government as to count III; (4) dismiss the claims raised by ATSIC in its motion for partial summary judgment which were not identified in the complaint, or in the alternative grant summary judgment as to those claims.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Michael J. Dierberg
MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Class. Unit 8th Floor
1100 L St., N.W.
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

STEPHEN D. LOBAUGH
Attorney
Law Department – Civil Practice
Commercial & Appellate Litigation
United States Postal Service
475 L'Enfant Plaza SW
Washington, DC 20260

July 31, 2006